UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Case No.: 6:20-bk-3355 |
| | Chapter 11 |
| First Choice Healthcare Solutions, Inc. | |
| | [Joint Administration Pending] |
| Debtor. | |
| _____/ | |
| In re: | Case No.: 6:20-bk-3356 |
| | Chapter 11 |
| First Choice Medical Group of Brevard, LLC | |
| Debtor. | |
| _____/ | |
| In re: | Case No.: 6:20-bk-3357 |
| | Chapter 11 |
| FCID Medical, Inc. | |
| Debtor. | |
| _____/ | |

**DEBTORS' AMENDED[1] EMERGENCY MOTION FOR ENTRY OF
ORDER (I) AUTHORIZING DEBTORS TO (A) PAY PRE-PETITION
WAGES AND EMPLOYEE BENEFITS, AND (B) CONTINUE EXISTING
EMPLOYEE BENEFIT PLANS AND PROGRAMS,
AND (II) GRANTING RELATED RELIEF**

The debtors and debtors-in-possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases") (each a "Debtor" and collectively, the "Debtors"), by and through their undersigned counsel, hereby file this motion (the "Motion") seeking entry of an order pursuant to sections 105, 363, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i)

---

[1] Amended solely to attach exhibits A, B, and C, which were inadvertently not previously attached.

1

53538883;1

authorizing the Debtors, in their sole discretion, to (a) pay pre-petition and post-petition wages and employee benefits, and (b) continue existing employee benefit plans and programs, (ii) granting such other and further relief as requested herein or as the Court (defined herein) otherwise deems necessary or appropriate. In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION

1. The United States Bankruptcy Court for the Middle District of Florida (the "Court") has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue in the Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105, 363, and 507 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 6003 and 6004 and Local Rule 2081-1.

## BACKGROUND

4. The Debtors have historically been one of the largest physical therapy providers in Brevard County, Florida and provides orthopedic medicine specializing in orthopedics, spine surgery, neurology interventional pain management and related diagnostics.[2] The Debtors' main office is located at 709 South Harbor City Blvd. Suite 530, Melbourne Florida 32901. The Debtors have satellite locations throughout Brevard County for providing care to patients.

5. The Debtors via its employees are currently providing medical care and physical therapy to patients, as well as handling the administrative side of a medical practice such as processing the necessary insurance, Medicare and VA billing, etc.

---

[2] Including but not limited to treatment relating to arthritis, arthroscopic knee surgery, carpal tunnel, fractures, herniated discs, hip replacement, joint injections, joint pain, knee replacement, knee surgery, rotator cuff repair, shoulder pain, sports injury and sports medicine.

6. Additional details regarding the Debtors' business, assets, and the circumstances leading to the filing of the Chapter 11 Cases are set forth in the Case Management Summary (Doc. No. 2).

## WAGE AND BENEFIT OBLIGATIONS

### A. Wages and Salaries

7. The Debtors' success in their restructuring efforts will be highly dependent on the continued support and performance of its workforce allowing continued care of its patients.

8. Debtor First Choice Healthcare Solutions, Inc. has three (3) employees.[3] Debtor First Choice Medical Group of Brevard, LLC has seventeen (17) employees. Debtor FCID Medical, Inc. has fourteen (14) employees.[4] Debtor Marina Towers, LLC has no employees. Hereinafter the Debtors' employees are collectively referred to as "Employees".

9. The Debtors do not owe any pre-petition payroll taxes and/or unemployment compensation obligations of the date of filing the Petitions. There were no sales tax obligations as of the date of the Petitions, except those obligations relating to the last pending payroll.

10. In connection with the salaries and wages paid to the employees, Paylocity Corporation ("Paylocity") handles as required by law withholding from the employees' wages amounts related to federal, state, and local income taxes, as well as social security and Medicare Taxes (collectively, the "Employee Withholding Taxes") and remit same to the applicable taxing authorities. Paylocity also handles deduction of certain amounts from Employees' paychecks, including, without limitation, garnishments, child support and service charges, and similar deductions.

---

[3] Phillip J. Keller, the Interim Chief Executive and Chief Financial Officer is one of the three employees. He is an insider as defined in 11 U.S.C. § 101(31). The Debtors are not seeking relief to pay him by virtue of this motion and will be filing a separate motion.

[4] Christian C. Romandetti, Jr. is a facilities manager. He is an insider as defined in 11 U.S.C. § 101(31). The Debtors are not seeking relief to pay him by virtue of this motion and will be filing a separate motion.

11. Paylocity withdraws the amount needed to cover the Debtors' payroll and taxes to pay the Employees from the bank account of First Choice Medical Group of Brevard, LLC and First Choice Healthcare Solutions, Inc. and FCID Medical, Inc. journal the payments to the correct debtor entity.

12. Payroll is paid in arrears. The next payday is Friday, June 20, 2020 for the period of June 1, 2020 – June 14, 2020. In order for Paylocity to initiate payment to the Employees on Friday, June 20, 2020, *the Debtors must authorize no later than 4:30p.m. on Wednesday, June 17 the processing of payroll*.

13. The following payroll is owed for the period of June 1, 2020 – June 14, 2020:

   a. First Choice Health Care Solutions, Inc. – See **Exhibit A**

   W-2 Employee Wages[5] - $5,590.57
   SS - $331.13
   Medicare - $77.44
   State and Fed. Withholding - $594.78

   b. First Choice Medical Group of Brevard, LLC – See **Exhibit B**

   W-2 Employee Wages[6] - $53,584.02
   SS - $2,879.89
   Medicare - $762.15
   State and Fed. Withholding - $5,979.39

   c. FCID Medical, Inc. – See **Exhibit C**

   W-2 Employee Wages[7] - $20,662.56
   SS - $1,171.00
   Medicare - $273.85
   State and Fed. Withholding - $1,516.07

14. A vast majority of the employees rely exclusively on the payments and other benefits they receive from the Debtors for their basic living necessities. If the Debtors do not pay

---

[5] Includes 401k match, medical, vision, PTO, etc.
[6] Includes 401k match, medical, vision, PTO, etc.
[7] Includes 401k match, medical, vision, PTO, etc.

the obligations for compensation, benefits and reimbursable expenses, the Employees will face significant financial difficulties. Moreover, employee morale and loyalty will be jeopardized at a time when the support of the Employees is critical to the Debtors' success. In the absence of honoring the Debtors' pre-petition obligations to the Employees, the Employees may seek alternative employment opportunities. Accordingly, it is essential to pay and honor obligations to Employees.

15. By this Motion, the Debtors request authority to pay all Unpaid Wages to the Employees in the ordinary course of business. The Debtors have made careful inquiries and have taken diligent steps to ensure that none of the Employees are owed more than $13,650 for Unpaid Wages as of the Petition Date.

**B.  Health Care Programs**

16. The Debtors the Employees receive health insurance through Florida Blue and dental and vision insurance through Guardian ("Health Insurance Program").

17. Both the Debtors and the employees contribute to the premium payment requirements for these plans, however, Debtors pay approximately $15,900 a month for their portions of the medical, dental and vision premiums.

18. By this Motion, the Debtors seek authority to: (a) continue to provide the Health Insurance Program for the Employees in the ordinary course of business; (b) continue to honor obligations under such benefit programs, including any premiums and administrative fees; and (c) pay any amounts owed under the Health Insurance Program to the extent that they remain unpaid as of the Petition Date.

**RELIEF REQUESTED**

19. By this Motion, the Debtors request entry of an Order (a) authorizing the Debtors to pay, in their sole discretion, all payments required under or related to Employee Wages,

Unpaid Wages, Payroll Taxes, and Deductions; and (b) authorizing the Debtors to continue to satisfy or honor, in their sole discretion, the Health Insurance Program (collectively, the "Employee Benefits" and, together with the Employee Compensation, the "Employee Obligations")[8] and all costs incident to the foregoing, and to continue to honor their practices, programs and policies for their Employees, as those practices, programs and policies were in effect as of the Petition Date and as such practices, programs and policies may be modified, amended, or supplemented from time to time in the ordinary course of the Debtors' business.

## BASIS FOR RELIEF

20.     To maintain the Debtors' operations and preserve the value of their estates, it is essential that the Debtors continue to operate, to the extent possible, in the ordinary course of business. To achieve that result, the Debtors must retain the uninterrupted service and loyalty of its lifeline, which is the Employees. Payment of the Employee Compensation and continuation or satisfaction of the Employee Obligations and related arrangements is essential to this goal. Accordingly, the Debtors submit that the relief requested herein is critical to their ability to operate effectively and to preserve the value of the estates throughout this Chapter 11 Cases and, therefore, is in the best interests of the Debtors and their estates. Moreover, this relief is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

    **A.**     **The Court Should Authorize the Debtors to Honor Its Employee Obligations**

        **1.**     **Certain of the Employee Obligations are Entitled to Priority Treatment**

21.     Pursuant to sections 507(a)(4) and (a)(5) of the Bankruptcy Code, certain of the unpaid Employee Obligations are entitled to priority treatment in an amount up to $13,650 for

---

[8] The Debtors believe that the Employee Obligations described herein constitute a comprehensive list of such obligations. To the extent any plan, program or other obligation was inadvertently omitted, however, the term "Employee Obligations" includes such plan, program or other obligation.

each individual Employee (the "Statutory Cap"). *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims for (i) wages, salaries, or commissions, including vacation, severance and sick leave pay earned by an individual, and (ii) contributions to an employee benefit plan); 11 U.S.C. § 507(a)(4) (providing that allowed unsecured claims for "(A) wages, salaries, or commissions, including vacation severance, and sick leave pay earned by an individual; or (B) sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor . . ." up to $13,650 per individual are entitled to a fourth priority ahead of general unsecured claims); 11 U.S.C.§ 507(a)(5) (providing that "allowed unsecured claims for contributions to an employee benefit plan . . .," with offsets for payments made under section 507(a)(4), are entitled to a fifth priority).

22.     The Debtors are not seeking to satisfy the Employee Obligations in amounts that exceed the Statutory Cap in the aggregate per Employee, as calculated under sections 507(a)(4) and (a)(5) of the Bankruptcy Code. Accordingly, granting the relief sought with respect to compensation affects only the timing of payments to Employees. Indeed, the Debtors submit that payment of Employee Obligations up to the Statutory Cap per individual will enhance value for the benefit of the Debtors' estates because it will help ensure that the Employees--the lifeblood of the Debtors' business operations--will continue to provide vital services to the Debtors at this critical juncture. In addition, to the extent that the Debtors are authorized, in a reasonable exercise of their business judgment, to honor or satisfy the Employee Obligations on a postpetition basis in the ordinary course of business, such payments will enhance the value of the Debtors' estate by preserving the going-concern value of the Debtors' business.

### 2.     Payment of Certain of the Employee Obligations is Required by Law

23.     The Debtors also seek authority to pay Payroll Taxes and other Deductions to the appropriate entities, including but not limited to Paylocity. These amounts principally represent

Employee earnings that Employees, governments and judicial authorities have designated for withholding from Employees' paychecks. Indeed, certain withholdings, including child support and alimony payments, are not property of the Debtors' estate because the Debtors thru Paylocity have withheld such amounts from Employees' paychecks on another party's behalf. *See* 11 U.S.C. §§ 541(b)(7) and (d) (amounts withheld from employee paychecks by employer for contribution to employee benefit plan are not property of the estate). In addition to causing undue hardship to certain Employees, the failure to pay such Payroll Taxes and Deductions may result in the Debtors being inundated with inquiries from taxing authorities and garnishors regarding its failure to submit, among other things, taxes and child support and alimony payments, which are not the Debtors' property but have been withheld from Employee paychecks. Moreover, if the Debtors cannot remit these amounts, the affected Employees may face legal action and/or imprisonment due to the Debtors' failure to submit these payments.

24. Further, applicable federal and state laws require the Debtors to withhold certain tax payments from Employees' paychecks and to pay such amounts to the appropriate taxing authority. *See* 26 U.S.C. §§ 6672 and 7501(a); *see also City of Farrell v. Sharon Steel Corp.,* 41 F.3d 92, 95-96 (3rd. Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *DuCharmes & Co. v. State of Michigan (In re DuCharmes & Co.),* 852 F.2d 194, 195-96 (6th Cir. 1988) (per curiam) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). Moreover, because the Payroll Taxes are not property of the Debtors' estates, the Debtors request that the Court authorize the Debtors to transmit the Payroll Taxes to the proper parties in the ordinary course of business.

### B. Satisfaction of the Employee Obligations is Warranted Under the Doctrine of Necessity

25. Courts generally acknowledge that, under appropriate circumstances, a court may authorize a debtor to pay (or provide special treatment for) certain prepetition obligations. *See, e.g., In re Lehigh & New England Ry. Co.,* 657 F.2d 570, 581 (3d Cir. 1981) (recognizing that "[i]f payment of a pre- petition claim 'is essential to the continued operation of [the debtor], payment may be authorized."); *In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding sound business justification for payment of certain pre-petition claims); *In re Tropical Sportswear Int'l Corp.,* 320 B.R. 15, 20 (Bankr. M.D. Fla. 2005) (holding that "[Bankruptcy Code] section 363 is a source for authority to make critical vendor payments, and section 105 is used to fill in the blanks."). When authorizing such payments, courts have relied upon several legal theories rooted in Bankruptcy Code sections 1107(a), 1108, 363(b), and 105(a).

26. Courts have also authorized payment of prepetition claims in appropriate circumstances pursuant to section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C.§ 105(a). Under section 105(a) of the Bankruptcy Code, courts may permit pre-plan payments of prepetition obligations when such payments are essential to the continued operation of the debtor's business. *See In re UNR Indus., Inc.,* B.R. 506, 520 (Bankr. N.D. Ill. 1992), *rev'd on other grounds, sub nom. Rohn, Inc. v. Bloomington Factory Workers (In re UNR Indus., Inc.),* 173 B.R. 149 (N.D. Ill. 1994) (permitting the debtor to pay prepetition claims of suppliers or employees whose continued cooperation is essential to the debtors' successful reorganization); *In re Ionosphere Clubs, Inc.,*

9

98 B.R. at 177 (finding that section 105 of the Bankruptcy Code empowers bankruptcy courts to authorize payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor).

27.    The Debtors submit that the relief requested herein will benefit the Debtors' estates and creditors by allowing the Debtors' business operations to continue without interruption while the Debtors seek to consummate their proposed restructuring. Absent such payments, the Employees may seek alternative employment opportunities. Such a development will deplete the Debtors' workforce, hinder or preclude the Debtors' ability to meet its customer obligations at a time when the Debtors seek to conduct operations in a "business as usual" manner.

## **RESERVATION OF RIGHTS**

28.    To the extent that any contract or agreement in connection with any of the Employee Obligations is based upon or deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, the Debtors do not at this time intend to assume or reject such contract or agreement. As such, the Court's authorization of payment shall not be deemed to constitute an assumption of such contract or agreement pursuant to section 365 of the Bankruptcy Code. The Debtors are currently in the process of reviewing all of its contracts and agreements and reserve all of its rights with respect thereto. Nothing herein shall acknowledge, grant, or otherwise permit any right of offset or recoupment by a non-debtor with respect to any claim asserted against the Debtors. If the Court grants the relief sought herein, any payments made pursuant to the Court's order are not intended and should not be construed as an admission to the validity of any claim or a waiver of the rights of the Debtors to dispute such claim subsequently.

29. Additionally, except as expressly stated herein, nothing contained herein is intended or should be construed as (a) an agreement or admission by the Debtors as to the validity of any claim against its estate, (b) a waiver or impairment of the Debtors' right to dispute any claim on any grounds, (c) a promise by the Debtors to pay any claim, or (d) an implication or admission by the Debtors that such claim is payable pursuant to an Order granting the relief requested in this Motion.

### DEBTORS SATISFY BANKRUPTCY RULE 6003

30. Bankruptcy Rule 6003 provides that, "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate . . .." Fed. R. Bankr. P. 6003(b). The Debtors submit that, because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied.

### WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

31. To implement the foregoing successfully, the Debtors respectfully request a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, the payments proposed herein are essential to prevent potentially irreparable damage to the Debtors' operations, value, and ability to reorganize. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004 (h), to the extent it applies.

53538883;1

**NOTICE**

32. The Debtors will provide notice of this Motion to: (a) the Office of the U.S. Trustee; (b) the holders of the 20 largest unsecured claims against the Debtors; (c) the United States Attorney's Office for the Middle District of Florida; (d) the Internal Revenue Service; and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**REPRESENTATIONS REQUIRED UNDER LOCAL RULE 2018**

33. None of the Employees seeking to be paid herein are insiders as defined in 11 U.S.C. § 101(31).

34. The Debtors further represent that all applicable payroll taxes and related benefits due to the Debtors' employees will be paid concurrently with payment of the wages.

WHEREFORE, for the reasons set forth above, the Debtors respectfully request that the Court enter (i) authorize the Debtors, in their sole discretion, to (a) pay pre-petition and post-petition wages and employee benefits, and (b) continue existing employee benefit plans and programs, and (ii) granting such other and further relief.

Dated: June 16, 2020
/s/ Esther McKean
Esther McKean, Esquire
Florida Bar No. 028124
AKERMAN LLP
420 S. Orange Ave., Suite 1200
Orlando, FL 32801
Phone: (407) 423-4000
Fax: (407) 843-6610
Email: esther.mckean@akerman.com

Proposed Counsel for Debtors and
Debtors-in-Possession

53538883;1

CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of June, 2020, this document was filed and served through the Court's CM/ECF system and I caused the foregoing document to be served by first class mail, postage prepaid, on the following persons: Debtors c/o Phil Keller, 709 S. Harbor City Blvd., Suite 530, Melbourne, FL 32901, United States Trustee's Office, 400 W. Washington St., Ste. 1120, Orlando, FL 32801, CT Corp., c/o Ellsworth Summers, Esq., Burr & Forman LLP, 50 North Laura Street, Suite 3000, Jacksonville, FL 32202, Internal Revenue Service, P.O. Box 21126, Philadelphia, PA 19114, U.S. Attorney's Office for the Middle District of Florida, 400 W. Washington Street, Suite 3100, Orlando, FL 32801 and each Debtor (with employees) twenty largest unsecured creditors as shown on the attached matrix.

                                                     s/ Esther McKean
                                                     Esther A. McKean, Esquire

53538883;1