UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
**www.flmb.uscourts.gov**

| | |
|---|---|
| In re: | Case No.: 6:20-bk-3355-LVV |
| | Chapter 11 |
| First Choice Healthcare Solutions, Inc. *et al.*[1] | |
| | (Jointly Administered) |
| Debtors. | |
| _____/ | |

### DEBTORS' EXPEDITED MOTION FOR ENTRY OF ORDER AUTHORIZING DEBTORS IN THE ORDINARY COURSE TO USE CASH MANAGEMENT SYSTEM AND MAINTAIN USE OF A PRE-PETITION BANK ACCOUNT AND PERFORM INTERCOMPANY TRANSACTIONS

First Choice Healthcare Solutions, Inc., *et al* (collectively, the "Debtors"), debtors and debtors-in-possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases" or "Cases"), by and through their undersigned counsel, hereby file this motion (the "Motion") seeking entry of an order, substantially in the form attached hereto (the "Order"), pursuant to sections 105(a), 345, 363, 1107, and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), and Local Rule 2081, authorizing the Debtors to, in the ordinary course of business to use an existing cash management system which requires use of an existing pre-petition bank account and perform intercompany transactions and granting such other and further relief as requested herein or as the Court otherwise deems necessary or appropriate. In further support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these cases are: First Choice Healthcare Solutions, Inc., First Choice Medical Group of Brevard, LLC, FDIC Medical, Inc, and Marina Towers, LLC. The address of all the Debtors are 709 S. Harbor City Blvd., Suite 530, Melbourne, FL 32901.

**JURISDICTION**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 157 and 1334. This is a core matter pursuant to 28 U.S.C. § 157. Venue is proper in this district pursuant to 28 U.S.C. § 1408 and 1409.

**BACKGROUND**

2. On June 15, 2020 (the "Petition Date"), the Debtors filed a voluntary petition for relief under Chapter 11, title 11, United States Code, 11 U.S.C. § 101-1532 (the "Bankruptcy Code").

3. The Debtors are operating their business and managing their affairs as debtor-in-possession under 11 U.S.C. § 1107(a) and 1108.

4. Aaron Cohen has been appointed the Subchapter V trustee.

5. The Debtors have historically been one of the largest physical therapy providers in Brevard County, Florida and provide orthopedic medicine specializing in orthopedics, spine surgery, neurology interventional pain management and related diagnostics.[2]

6. First Choice Healthcare Solutions, Inc. is a Delaware corporation and is the parent company of the affiliate debtors.

7. Medical care to patients is provided by First Choice Medical Group of Brevard, LLC. This Debtor employees those individuals that hold proper medical licenses and are authorized to have a billing number for the services provided to patients. First Choice Medical Group of Brevard, LLC relies on payments from commercial insurance companies, Workers Compensation carriers, Medicare and Veteran's Administration ("VA").

---

[2] Including but not limited to treatment relating to arthritis, arthroscopic knee surgery, carpal tunnel, fractures, herniated discs, hip replacement, joint injections, joint pain, knee replacement, knee surgery, rotator cuff repair, shoulder pain, sports injury and sports medicine.

8. FCID Medical, Inc. employees all non-licensed / non-biller medical staff such as front desk staff and medical billing specialists and owns fixed assets.

9. Marina Towers, LLC is a Florida limited liability company created in 2003. Marina Towers, LLC is the master lessee for the Debtors' location at 709 South Harbor City Blvd., Melbourne Florida 32901.

10. Additional details regarding the Debtors' business, assets, and the circumstances leading to the filing of the Chapter 11 cases are set forth in the Case Management Summary (Doc. No. 2).

**MEDICAL BILLING / REVENUE / RECORD CLOUD BASED SERVICES**

11. First Choice Medical Group of Brevard, LLC relies on Athena cloud-based services ("Athena") for its operations and patient care.

12. Athena electronically handles from beginning to end a patient's care, including but not limited to, scheduling and calendaring of medical appointments, reminders and follow-up care appointments, collects and logs patients' payments at time of office visit, verifies insurance eligibility, maintains patient information, handles claim management, prepares insurance claims, assists with storing and processing electronic health records ("EHR") and accounts receivable management and reporting.

13. Athena is integrated with US Bank with respect to all payments for medical services, excluding in-person payments made by a patient at the time of an office visit. This integration allows Athena to keep track of payments and assign payments to specific claims (i.e. accounts receivable) in the Athena system. As a result, US Bank receives electronic fund transfers ("EFT") and checks from third parties such as insurance, Medicare and VA, plus

merchant services, on a daily basis. These funds are placed in a lockbox at US Bank Account 9470.

14. The only available banking option when using Athena is US Bank.

## CASH MANAGEMENT SYSTEM, BANK ACCOUNTS AND BUSINESS FORMS

A.  **Overview of The Debtors' Cash Management System**

15. The Debtors have an established cash management system they utilize to collect, manage, and disburse funds used in the Debtors' operations in the ordinary course of business (the "Cash Management System"). A chart depicting the Cash Management System (the "Cash Management Banks") and related banks is attached hereto as Exhibit A.

16. The Cash Management System enables the Debtors to facilitate their cash forecasting and reporting, monitor the collection and disbursement of funds, and maintain control over the administration of their bank accounts.

17. As discussed in greater detail below, as of the Petition Date, the Debtors maintain all of their bank accounts with Truist Bank f/k/a BB&T Bank ("Truist"), except for the Athena integrated US Bank account.

B.  **The Debtors' Bank Accounts**

18. In connection with the Cash Management System, the Debtors maintain seven (7) bank accounts in their name (the "Bank Accounts"). A summary of the Bank Accounts is attached hereto as Exhibit B. In the ordinary course of business, the Debtors routinely transfer money between the Bank Accounts via electronic funds transfers. The number of intercompany transfers amongst the network of Bank Accounts, excluding the sweeps from US Bank, can be once to twice a week since the cash is consolidated at the First Choice Health Care Solutions, Inc. level.

19. As of the Petition Date, there are three (3) non-debtor sources of active cash flow as follows:

    a. <u>Cash and Check Payments by Patients.</u>

    When a patient visits the medical office and makes a payment by cash or check, typically a copay or coinsurance, it is deposited daily into First Choice Medical Group of Brevard, LLC's Truist 5387 Account.

    b. <u>EFT & Checks Mailed to Lockbox from Third Payors and Plus Merchant Services</u>

    Payments from insurance companies, Medicare and VA and merchant services are mailed to a lockbox account. The funds in the lockbox account are deposited every bank business day into US Bank Account 9470.

    Every bank business day the US Bank Account 9470 is swept to Truist Account 5387.

    c. <u>Third Party Sublessors and First Choice Healthcare Solutions, Inc.</u>

    Marina Towers, LLC receives rental payments from subtenants which funds are deposited into Marina Towers Truist Account No. 1596. Marina Towers also receives a management fee from First Choice Healthcare Solutions, Inc. in an amount equal to the total master lease payment less rents received from subtenants. Amounts are transferred from Truist Account 5308 into Truist Account 1596

20. The funds in Truist Account 5387 are in turn transferred to two different accounts:

    a. <u>Trust Account 5393</u>

    This account receives a transfer of funds one time a month to pay the contractual fees of Athena for the services it provides. Around the 10th of the month, First Choice Medical Group of Brevard, LLC receives a bill from Athena. On the day prior to the payment deadline, funds are transferred to the account in an amount to cover the invoice. Athena auto debits the account on the due date.

b.  Truist Account 4611

This account receives funds to cover the labor and operating costs of the services provided to First Choice Medical Group of Brevard, LLC and also transfers funds to First Choice Healthcare Solutions, Inc.

21. Ultimately the funds are received at the parent level of First Choice Healthcare Solutions, Inc. at Truist Account 5308. First Choice Healthcare Solutions, Inc. also has a money market account, Truist Account 3694, which earns interest. Funds are moved in and out of Truist Account 3694 as monies are needed. The Debtor tries to maintain as much cash as possible in the money market account to earn interest.

22. US Bank is currently not an approved depository in the Middle District of Florida or in Region 21,[3] but is a federally insured bank.

23. Debtors' counsel discussed the current status of US Bank with counsel for the United States Trustee and agreed that (1) Debtors will attempt to have US Bank apply to be an approved depository in the Middle District of Florida and (2) if US Bank does not become an approved depository the Debtors will maintain use of the US Bank Account only to accept deposits and will every bank business day sweep proceeds from that account to a new Debtor-in-Possession Account. The Debtors will attach copies of bank statements to the monthly operating reports filed with the Court for all open accounts, including the US Bank Account.

24. Undersigned counsel prior to the filing of the Chapter 11 Cases started communications with the United States Trustee's office regarding the list of approved financial institutions noting the Debtors' business circumstances surrounding US Bank and further

---

[3] It is an approved depository in other region(s).

53578493;2

inquiring if the US Trustee's office was aware of any issues with Truist Bank[4] since SunTrust Banks, Inc. is listed on Middle District of Florida's – Approved Depository List.

25.     After the Petition Date, the Debtors began working with complying with the United States Trustee Operating Guidelines and Reporting Requirements for Debtors in Possession and Chapter 11 Trustees to close and open new debtor-in-possession accounts with Truist.

26.     The Debtors have maintained a banking relationship since 2011 with Truist Bank's predecessor.  However, the Debtors were advised that Truist Bank will not open debtor-in-possession accounts for the Debtors and were not provided an explanation.  The Debtors with the help of undersigned counsel and in conjunction with communications with the U.S. Trustee's office contemporaneous with filing of this motion are working with Wells Fargo on opening debtor-in-possession accounts.

27.     Ultimately, the Debtors will maintain the same cash management structure with the financial instruction that ultimately holds their debtor-in-possession accounts.

C.     **The Debtors' Intercompany Transactions**

28.     As reflected in Exhibit A hereto, all receipts generated by the Debtors' operations are swept initially to First Choice Medical Group of Brevard, LLC Truist Account 5387.  The Debtors then utilize a series of transfers (collectively, the "Intercompany Transactions") amongst the Debtors in order to fund the payment of the Debtors' operating and administrative expenses, including, but not limited to, direct obligations of the applicable Debtors. The Debtors maintain current and accurate accounting records of the Intercompany Transactions principally through journal entries that are used to track and record the intercompany balances that exist across the

---

[4] Is the resulting financial institution after BB&T and SunTrust merged.

Debtors' corporate structure. The Debtors will continue to maintain accurate records of the Intercompany Transactions and resulting intercompany claims during these Chapter 11 Cases.

**D.     Bank Fees and Charges**

29.     In the ordinary course, the Debtors' Cash Management Banks charge, and the Debtors pay, honor, or allow the deduction from the appropriate account, certain service and other fees, costs, charges, and expenses (collectively, the "Bank Fees"). In the six months preceding the Petition Date, the Bank Fees averaged approximately $778 per month across all bank accounts.

## RELIEF REQUESTED

30.     By this Motion, the Debtors respectfully request entry of the Order, substantially in the form attached hereto as Exhibit C, pursuant to sections 105(a), 345, 363, 1107, and 1108 of the Bankruptcy Code, authorizing the Debtors to, in the ordinary course of their businesses, use the Cash Management System, maintain a pre-petition Bank Account with US Bank subject to the terms and conditions set forth in this Motion, perform Intercompany Transactions and granting such other and further relief as requested herein or as the Court otherwise deems necessary or appropriate.

## BASIS FOR RELIEF

**A.     The Debtors Should be Authorized to Use Their Cash Management System and Existing Bank Account at US Bank**

31.     Allowing the Debtors to maintain uninterrupted used of the Cash Management System and Bank Account at US Bank will accomplish the dual goals of minimizing the disruption to the Debtors' operations and satisfying the United States Trustee's Operating Guidelines.  To ensure that all transfers and transactions will be documented in its books and records, the Debtors will maintain records of all transfers within the Cash Management System.

32. The US Bank account is the lynchpin of the Debtor's Cash Management System. If the Debtors are forced to change this account they will no longer be able to use the Athena software program which operates all essential parts of the Debtors' business. Furthermore, historically changing depository accounts linked to commercial insurance payors, Medicare and the VA results in payment delays of three to six months on average with longer delays possible. Thus, if the Debtors are not able to use the Athena system it would cause the demise of the Debtors' business.

33. Bankruptcy courts therefore treat requests for authority to utilize existing cash management systems as a relatively "simple matter." *In re Baldwin-United Corp.,* 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). In *In re Charter Co.,* 778 F.2d 617 (11th Cir. 1985), for example, the bankruptcy court entered an order authorizing the debtor and 43 of its subsidiaries "to continue to consolidate the management of its cash as has been usual and customary in the past, and to transfer monies from affiliated entity to entity, including operating entities that are not debtors." *Id.* at 620. The Court of Appeals for the Eleventh Circuit then affirmed a subsequent district court decision denying a creditor's motion for leave to appeal the bankruptcy court's cash management order, holding that authorizing the debtors to utilize their pre-petition "routine cash management system" was "entirely consistent" with applicable provisions of the Bankruptcy Code. *Id.* at 621.

34. Here, the Debtors have utilized the Cash Management System as part of their ordinary and usual business practices and as such, the Debtors believe that use of the Cash Management System falls within the purview of ordinary course transactions permitted under section 363(c)(1) of the Bankruptcy Code. Moreover, appropriate circumstances exist for the

9

Courts to authorize the Debtors' use of the Cash Management System under sections 363(b)(1) and section 105(a) of the Bankruptcy Code.

35. As an initial matter, the relief requested in this Motion will help minimize any disruption in the Debtors' business operations during the period between the Petition Date and the Debtors' emergence from Chapter 11 and preserve the value of the Debtors' estates.

**B.  The Debtors Should Be Authorized To Continue Performing Intercompany Transactions in the Ordinary Course**

36. The continued performance of the ordinary course Intercompany Transactions is integral to ensure the Debtors' ability to operate their businesses and preserve and maintain the Debtors' going-concern value for the benefit of all parties in interest.[5] Because the Debtors' businesses are operationally and functionally interconnected to their affiliates, they maintain the centralized Cash Management System described above that necessarily requires numerous Intercompany Transactions. Altering this system would require the Debtors to divert attention from their restructuring efforts and the desired smooth transition into operating as a debtors-in-possession. In contrast, the continuation of the Intercompany Transactions helps preserve the "business as usual" atmosphere and avoids the unnecessary distractions that inevitably would be associated with any substantial disruption in the Cash Management System. Accordingly, the Debtors should be expressly authorized to continue performing the Intercompany Transactions consistent with the Debtors' customary practice.

37. Based on the foregoing, the Debtors submit that the relief requested herein is necessary and appropriate, is in the best interests of their estates, creditors, and other

---

[5] Because the Debtors engage in Intercompany Transactions on a regular basis, and such transactions are common among enterprises similar to the Debtors, the Debtors believe that the Intercompany Transactions are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code that do not require the Court's approval. Nonetheless, out of an abundance of caution, the Debtors are seeking express authority to engage in such transactions after the Petition Date.

parties-in-interest, and should be granted in all respects. Moreover, this relief is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

## NOTICE

38.     The Debtors have provided notice of this Motion to: (a) the Office of the U.S. Trustee; (b) the holders of the 20 largest unsecured claims against the Debtors; (c) the Internal Revenue Service; (d) the Cash Management Banks; and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### Confirmation of Pre-Filing Conference Per Local Rule 2081-1(f)(4)(v)

On June 16, 2020, as well as prior dates, counsel for the Debtors consulted with counsel from the Office of the United States Trustee regarding the relief requested in the Motion.  The office of the United States Trustee indicated that Debtors should (1) attempt to have US Bank apply to be an approved depository in the Middle District of Florida and (2) if US Bank does not become an approved depository the Debtors may maintain use of the US Bank Account only to accept deposits and will every bank business day sweep proceeds from that account to a new Debtor-in-Possession Account.  Undersigned counsel has also communicated with the Office of the United States Trustee regarding Debtors' efforts with establishing debtor-in-possession accounts.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached as Exhibit C hereto, authorizing the Debtors to in the ordinary course of their business use the Cash Management System, maintain a pre-petition bank account with US Bank, and perform Intercompany Transactions and granting such other and further relief as requested herein or as the Court otherwise deems necessary or appropriate.

Dated: June 22, 2020

/s/ Esther McKean
Esther McKean, Esquire
Florida Bar No. 028124
AKERMAN LLP
420 S. Orange Ave., Suite 1200
Orlando, FL 32801
Phone: (407) 423-4000
Fax: (407) 843-6610
Email: esther.mckean@akerman.com
Proposed Counsel for Debtors and
Debtors-in-Possession

PROPOSED COUNSEL FOR DEBTORS
AND DEBTORS-IN-POSSESSION

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of June, 2020, this document was filed and served through the Court's CM/ECF system and I caused the foregoing document to be served by first class mail, postage prepaid, on the following persons: Debtors c/o Phil Keller, 709 S. Harbor City Blvd., Suite 530, Melbourne, FL 32901, United States Trustee's Office, 400 W. Washington St., Ste. 1120, Orlando, FL 32801, Internal Revenue Service, P.O. Box 21126, Philadelphia, PA 19114, U.S. Attorney's Office for the Middle District of Florida, 400 W. Washington Street, Suite 3100, Orlando, FL 32801, Truist Bank, ATTN: Lori A. Baldwin, Vice President of Commercial Lending, 158 N. Harbor City Blvd., Suite 401, Melbourne, FL 32903, Truist Bank, 1300 S. Babcock Street, Melbourne, FL 32901, Truist Bank, ATTN: Kelly S. King, Chairman and Chief Executive Officer, 214 N. Tyron St., Charlotte, NC 28202, US Bank, 5065 Wooster Rd., Cincinnati OH 45226, US Bank, ATTN: Andrew Cecere, President and Chief Executive Officer, 425 Walnut Street, Cincinnati, OH 45202 and to those parties-in-interest shown on the attached matrix.

s/ Esther McKean
Esther A. McKean, Esquire

53578493;2