UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:                                                Case No.: 6:20-bk-3355-LVV
                                                      Chapter 11
First Choice Healthcare Solutions, Inc. *et, al.*[1]
                                                      (Jointly Administered)
        Debtors.
_____/

## DEBTORS' RESPONSE TO ORDER TO SHOW CAUSE
## WHY OMBUDSMAN SHOULD NOT BE APPOINTED

    First Choice Healthcare Solutions, Inc., *et al.* (collectively, the "Debtors"), the debtors

and debtors in possession, by and through their undersigned counsel, pursuant to section

333(a)(1) of the United States Bankruptcy Code and F.R.B.P. 2007.2(a) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), file this response to the Court's Order to Show

Cause Why an Ombudsman Should Not be Appointed (Doc. No. 19), and states as follows:

### Background of Cases

    1.    On June 15, 2020 (the "Petition Date"), the Debtors filed voluntary petitions for

relief under chapter 11 of the Bankruptcy Code. The Debtors are continuing in possession of

their property and management of their business as debtors in possession pursuant to sections

1107 and 1108 of the Bankruptcy Code.

    2.    Aaron Cohen has been appointed the Subchapter V trustee. (Doc. No. 17)

    3.    Pursuant to an order of this Court dated June 19, 2020, the Debtors' Chapter 11

Cases are being jointly administered for procedural purposes only under *In re First Choice*

---

[1] The Debtors in these cases are: First Choice Healthcare Solutions, Inc., First Choice Medical Group of Brevard, LLC, FDIC Medical, Inc, and Marina Towers, LLC.  The address of all the Debtors are 709 S. Harbor City Blvd., Suite 530, Melbourne, FL 32901.

*Healthcare Solutions, Inc.* (Doc. No. 32).

4.      On June 17, 2020, the Court pursuant to 11 U.S.C. § 333(a)(1) issued an Order to Show Cause Why an Ombudsman Should Not Be Appointed (Doc. No. 19).

### Background of Debtors' Business

5.      The Debtors have historically been one of the largest physical therapy providers in Brevard County, Florida and provide orthopedic medicine specializing in orthopedics, spine surgery, neurology interventional pain management and related diagnostics.[2]

6.      First Choice Healthcare Solutions, Inc. is a Delaware corporation and is the parent company of the affiliate debtors.

7.      Medical care to patients is provided by First Choice Medical Group of Brevard, LLC.   This Debtor employees those individuals that hold proper medical licenses and are authorized to have a billing number for the services provided to patients.   Currently the debtor employees four doctors, two physician assistants/Advanced Registered Nurse Practitioners and eleven medical assistants, x-ray technicians and MRI technicians.

8.      First Choice Medical Group of Brevard, LLC relies on payments from the following entities in the approximate amounts:

        a.      Commercial private insurance companies - 58%

        b.      Workers' Compensation carriers - 5%

        c.      Medicare - 31%

        d.      VA - 6%

9.      FCID Medical, Inc. employees all non-licensed / non-biller medical staff such as front desk staff and medical billing specialists and owns fixed assets.

---

[2] Including but not limited to treatment relating to arthritis, arthroscopic knee surgery, carpal tunnel, fractures, herniated discs, hip replacement, joint injections, joint pain, knee replacement, knee surgery, rotator cuff repair, shoulder pain, sports injury and sports medicine.

2

10.    Marina Towers, LLC is a Florida limited liability company created in 2003. Marina Towers, LLC is the master lessee for the Debtors' location at 709 South Harbor City Blvd., Melbourne Florida 32901.

11.    As of the Petition Date, the Debtors and specifically First Choice Medical Group of Brevard, LLC were in compliance with all applicable health regulations.  No malpractice judgment has ever been issued against any of the Debtors, nor has the Debtor's malpractice insurance carrier ever paid on any malpractice claim filed against the Debtors.

12.    First Choice Medical Group of Brevard, LLC maintains professional liability insurance coverage in the amount of $250,000 per claim; aggregate $750,000 through Professional Security Insurance Company.  A true and correct copy of the Certificate of Professional Insurance is attached hereto as **Exhibit A**.  First Choice Medical Group of Brevard, LLC is current on its malpractice insurance.

13.    First Choice Medical Group of Brevard, LLC holds eight licenses. Those licenses are current.  In some instances, First Choice Medical Group of Brevard, LLC has applied for renewals, which renewals are pending with ACHA but are delayed because of COVID.  See **Composite Exhibit B** for true and accurate copies of the licenses and pending renewal applications.

14.    Because the Debtors are non-physician owned they are regulated by the Florida Agency for Health Care Administration ("ACHA").

15.    First Choice Medical Group of Brevard, LLC is audited by ACHA on an annual basis and has never had a formal complaint filed relating to patient records or patient care.  The most recent inspections are attached as Composite **Exhibit C**.

16.    The Debtors are not aware of any lawsuits against the doctors.

53597177;2

17.    First Choice Medical Group of Brevard, LLC has approximately 14,322 active patient files.

18.    Phillip J. Keller is the Interim Chief Executive and Chief Financial Officer and is a certified public accountant and chartered global management accountant.    Prior to being employed by the Debtors in July of 2017, he was employed by medical related companies including RehabCare, Inc.[3], PharMerica, Inc.[4] and BioScrip.[5]    As a result of his employment experience with the Debtors and previous medical-related companies, Mr. Keller is knowledgeable and competent in complying with state and federal regulations relating to patient care and records.

## Medical Record Cloud Based Services

19.    First Choice Medical Group of Brevard, LLC relies on Athena cloud-based services ("Athena") for its operations and patient care.

20.    Athena electronically handles from beginning to end a patient's care, including but not limited to, scheduling and calendaring of medical appointments, reminders and follow-up care appointments, collects and logs patients' payments at time of office visit, verifies insurance eligibility, maintains patient information, handles claim management, prepares insurance claims, assists with storing and processing electronic health records ("EHR") and accounts receivable management and reporting.

21.    There are no paper patient records.    To the extent there are any paper patient records they are print outs from Athena and used just for the day if an employee wants a paper copy to review of the patient's records stored in Athena.

---

[3] A $1.5 billion provider of physical, occupational and speech-language rehabilitation services to hospitals, skilled nursing facilities and home care setting in 47 states.
[4] A $1.8 billion institutional pharmacy servicing skilled nursing and assisted living facilities, hospitals and other long-term alternative care facilities.
[5] A $1.6 billion specialty pharmaceuticals and homecare company providing comprehensive cost-effective solutions to patients, insurance payers and drug manufacturers.

4

22.    As a result of a using a cloud-based system all patient records are up-to-date.

23.    Kim Bean has been the custodian of records since June of 2012.  She is also the clinical manager for First Choice Medical Group of Brevard, LLC.

24.    The Debtor First Choice Medical Group of Brevard, LLC informs, in writing, each patient at the time of care of its rights as a patient, including documentation of their rights under HIPPA.

25.    The Debtors also follow Occupational Safety and Health Administration ("OSHA") Guidelines as well as all other state and federal guidelines for a medical practice.

### Reasons for Filing Bankruptcy

26.    The reason for the Debtors' bankruptcy filings were completely unrelated to the level of patient care provided.

27.    First Choice Healthcare Solutions, Inc. and First Choice Medical Group of Brevard, LLC are defendants in multiple lawsuits filed in the Chancery Court of Delaware, Brevard County, Florida, Middle District of Florida, Orlando Division and Cook County, Illinois.  As summarized in Debtors' Case Management Summary (Doc. No. 2) the lawsuits pending relate to corporate and securities issues, breach of agreements and issues such as tortious interference, violation of Florida's Deceptive and Unfair Trade Practices Act and civil conspiracy.

28.    The Debtor First Choice Medical Group of Brevard was named as a defendant in a case pending in the Circuit Court of Brevard County, Florida, Case No. 19-CA-60996, *Michael Gerlach and Lisa Gerlach vs. Holmes Regional Medical Center, Inc., James Billys, M.D.; Elizabeth Stokolosa, P.A., Casey Langel, P.A. Brevard Orthopedic Spine & Pain Clinic, Inc. d/b/a The B.A.C.K. Center, First Choice Medical Group of Brevard, LLC d/b/a The B.A.C.K.*

*Center* (the "Gerlach Suit"), alleging negligence and vicarious liability, which may give the appearance that the Debtor was sued for medical related issues. However, on January 23, 2020, less than a month after suit was filed and even before the Debtor responded to the original complaint, the Plaintiffs amended their Complaint and dropped First Choice Medical Group of Brevard, LLC as a defendant.

29.    The Debtor First Choice Medical Group of Brevard, LLC was named as defendant in a suit brought by Winnie Florabel Quipo Turner in the Circuit Court of Brevard County, Case No. 05-2020-CA-21941. However, First Choice Medical Group of Brevard, LLC never had control of the medical care, which was handled by a separate non-debtor entity known as The Back Center. First Choice Healthcare Solutions, Inc. for two years beginning in 2015 handled only the business side management of The Bank Center.

30.    First Choice Medical Group of Brevard, LLC, is not current on approximately a $1,100,000 loan it received from CT Capital Corp.

31.    In addition, the Covid-19 crisis adversely affected the Debtors' practice, requiring three of the Debtors to seek a Payroll Protection Program loan and furlough employees.

## Applicable Law

32.    Appointment of a patient care ombudsman is within the Court's discretion. Section 333(a)(1) of the Bankruptcy Code provides that "[i]f the debtor . . . is a health care business, the court shall order, not later than 30 days after the commencement of the case, the appointment of an ombudsman to monitor the quality of patient care and to represent the interests of the patients of the health care business *unless the court finds that the appointment of such ombudsman is not necessary for the protection of patients under the specific facts of the case*." 11 U.S.C. § 333(a)(1) (emphasis added).

6

53597177;2

33.     While neither the Bankruptcy Code nor Bankruptcy Rules provide guidance for a bankruptcy court's analysis of whether the appointment of a patient care ombudsman is necessary, courts have developed and applied a totality of the circumstances approach to determine whether an ombudsman is necessary, and in doing so evaluate nine non-exclusive factors, including:

(i)      the cause of the bankruptcy;
(ii)     the presence and role of licensing or supervising entities;
(iii)    the debtor's past history of patient care;
(iv)     the ability of the patients to protect their rights;
(v)      the level of dependency of the patients on the facility;
(vi)     the likelihood of tension between the interests of the patients and the debtor;
(vii)    the potential injury to the patients if the debtor drastically reduced its level of patient care;
(viii)   the presence and sufficiency of internal safeguards to ensure appropriate level of care; and;
(ix)     the impact of the cost of an ombudsman on the likelihood of a successful reorganization.

*In re Alternate Family* Care, 377 B.R. 754, 758 (Bankr. S.D. Fla. 2007) (finding a patient care ombudsman not necessary for a state licensed child placing and caring agency under the facts of the case); *see also In re Pediatrics at Whitlock, P.C.*, 507 B.R. 10, 11-13 (Bankr. N.D. Ga. 2014) (appointment of patient care ombudsman unnecessary because (a) the debtor's bankruptcy was not predicated on deficiencies in patient care, (b) there was no tension between the debtor's interests with its patients' interests because a decline in patient care would injure the facility's reputation leading to lower referrals and revenue, and (c) the cost would outweigh the value of an ombudsman); *In re William L. Saber, M.D., P.C.*, 369 B.R. 631, 637-38 (Bankr. D. Colo. 2007) (finding appointment of an ombudsman unnecessary for the debtor given that the debtor's bankruptcy filing was not precipitated by concerns relating to the quality of patient care); *In re Valley Health System*, 381 B.R. 756, 762 (Bankr. C.D. Cal. 2008) (holding that appointment of a patient care ombudsman was unnecessary considering the totality of the facts and circumstances,

53597177;2

even though patients were dependent on the debtor and would be injured if the debtor reduced its level of patient care).

### Appointment of a Patient Care Ombudsman
### is Not Warranted Under the Facts of this Case

34.     Applying the *Alternate Family Care* factors to the facts of the instant case, it is clear that the appointment of a patient care ombudsman under section 333 of the Bankruptcy Code is not necessary.

35.     *First*, the Debtor's chapter 11 filing was not "precipitated by concerns relating to the quality of patient care or privacy matters." *Saber*, 369 B.R. at 637. Rather, the Debtor sought relief primarily due to lawsuits in multiple national jurisdictions on a variety of non-medical issues such as: (1) liquidated damages relating to First Choice Healthcare Solutions, Inc.'s alleged failure to comply with SEC Rule 144; (2) seeking pursuant to 8 Del. C. § 211(c) that First Choice Healthcare Solutions, Inc. hold an annual meeting of the stockholders; (3) violations under securities laws; and (4) alleging breach of agreements. See *Valley Health System*, 381 B.R. at 759 (finding ombudsman unnecessary in case precipitated by the burden of servicing bond debt).

36.     *Second,* the Debtors First Choice Medical Group of Solutions, Inc., FCID Medical, Inc. and Marina Towers, LLC are not included within any the specific categories of Section 101(27A), as the medical services provided are performed by First Choice Medical Group of Brevard, LLC.

37.     *Third*, the Debtor is subject to extensive oversight by multiple government agencies and professional associations, thus there is no need for additional oversight. For example, the Debtor is required by ACHA, Florida Department of Health and Medicare to maintain a particular quality of patient care. *See North Shore*, 400 B.R. at 13 (Department of Health monitoring weighed

53597177;2

against appointment of an ombudsman). Moreover, because Medicare reimbursements are essential to First Choice Medical Group of Brevard, LLC's operations, the Debtor is required to maintain, and has an incentive to continue maintaining its certification with the Centers for Medicare and Medicaid Services (CMS), which requires compliance with the conditions of participation relating to, among other things, quality of care.

38.     *Fourth,* historically, the Debtor has received relatively few patient complaints in comparison to the number of patients it services. *See North Shore*, 400 B.R. at 13 (debtor's history of high quality of patient care and minimal patient complaints weighed against appointment of ombudsman). In fact, the "complaints" Debtor typically receives is from patients that are addicted to opioids and First Choice Medical Group of Brevard, LLC denied prescriptions based on drug testing of those patients.

39.     *Fifth*, this factor weighs in favor of not appointing an ombudsman because patients are not dependent upon the Debtor's facilities. Debtor does not provide long-term patient care which requires overnight stays. Accordingly, any dependency on the Debtor's facilities is relatively minimal.

40.     *Sixth*, it is unlikely that the interests of the Debtor and its patients will diverge throughout the pendency of this case. All parties' interests are aligned in seeking a successful reorganization of the Debtors in an expeditious manner so that the Debtors can continue serving the community. Furthermore, the Debtors have an interest is providing top quality patient care in order to maintain the Debtor's high standing reputation, which leads to increased revenue and successful business operations. *See Pediatrics at Whitlock*, 507 B.R. 10, 11-13 (debtor's interest in preserving patient care to preserve future revenues favored not appointing ombudsman). The Debtors intend to maintain its current high level of patient care throughout the pendency of this

case and will not compromise such standards to effectuate its reorganization. Thus, there is simply no reason to believe the Debtors' interest will become adverse to that of its patients during the pendency of this bankruptcy case.

41.     *Seventh*, as previously stated, because there is no reason to believe the Debtor's level of patient care will decline because of its bankruptcy filing, the Debtor does not believe this factor applies.

42.     *Eighth*, the Debtor has internal safeguards in place for patient safety and care, and, as stated previously, must comply with all applicable state and federal regulations. The Debtor has multiple binders full of written policies and procedures for infection control and patient safety. These procedures ensure the Debtor, and its staff, comply with all applicable state and federal regulations. Evidencing the effectiveness of its internal policies and procedures, as noted above, Debtor has received few patient complaints and only minor infraction notifications from any regulatory body since 2017. Thus, in light of the effective policies and procedures currently in place and the high quality of Debtor's existing patient care, Debtor submits that this factor weighs against the appointment of an ombudsman.

43.     *Ninth*, the substantial expense associated with appointing an ombudsman would deplete estate resources, particularly where any such ombudsman's efforts would be duplicative of the existing internal safeguards and external governmental oversight and regulations already in place. Therefore, in light of the fees that would be incurred by any ombudsman or professionals retained by such ombudsman, an ombudsman would only serve to reduce the Debtors' estates to the detriment of Debtors' patients, creditors and parties in interest, and would be unlikely to contribute additional services that would enhance patient health and safety. *See Valley Health System*, 381 B.R. at 764-65 (ombudsman would duplicate debtor's internal monitor and external

53597177;2

state monitoring); *Alternate Family Care*, 377 B.R. at 761 (ombudsman costs could preclude reorganization).

**WHEREFORE,** the Debtors respectfully requests the Court enter an order finding and ordering the appointment of a patient care ombudsman unnecessary under the facts of this case, and providing such other relief as is just and proper under the circumstances.

## VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Phillip J. Keller                                 June 22, 2020
Interim Chief Executive and
Chief Financial Officer

Dated: June 22, 2020                        /s/ Esther McKean
                                             Esther McKean, Esquire
                                             Florida Bar No. 028124
                                             AKERMAN LLP
                                             420 S. Orange Ave., Suite 1200
                                             Orlando, FL 32801
                                             Phone: (407) 423-4000
                                             Fax: (407) 843-6610
                                             Email: esther.mckean@akerman.com
                                             Proposed Counsel for Debtors and
                                             Debtors-in-Possession

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of June, 2020, this document was filed and served through the Court's CM/ECF system to all parties receiving CM/ECF notifications.

                                             /s/ Esther McKean
                                             Esther McKean, Esquire

53597177;2