**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:                                             Case No.: 6:20-bk-3355-KSJ
                                                   Chapter 11
First Choice Healthcare Solutions, Inc. *et, al.*[1]

                                                   (Jointly Administered)
         Debtors.
_____/

## DEBTORS' JOINT PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

AKERMAN LLP

s/ Esther McKean
Esther McKean, Esquire
Florida Bar No. 028124
AKERMAN LLP
420 S. Orange Ave., Suite 1200
Orlando, FL 32801
Phone: (407) 423-4000
Fax: (407) 843-6610
Email: esther.mckean@akerman.com

COUNSEL FOR DEBTORS AND
DEBTORS IN POSSESSION

September 14, 2020

---

[1] The Debtors in these cases are: First Choice Healthcare Solutions, Inc., First Choice Medical Group of Brevard, LLC, FCID Medical, Inc., and Marina Towers, LLC.  The address of all the Debtors is 709 S. Harbor City Blvd., Suite 530, Melbourne, FL 32901.

## INTRODUCTION

First Choice Healthcare Solutions, Inc., First Choice Medical Group of Brevard, LLC, FCID Medical, Inc., and Marina Towers, LLC, the above-captioned debtors and debtors in possession, propose the following joint plan of reorganization under section 1121(a) of the Bankruptcy Code.[1]

The Debtors' Chapter 11 Cases are being jointly administered pursuant to an order of the Court, and the Plan is being presented as a joint plan of reorganization of the Debtors. Claims against the Debtors (other than Administrative Claims and Fee Claims) are classified in Article III hereof and treated in Article V hereof.

### I.

### DEFINITIONS AND CONSTRUCTION OF TERMS

#### A.    Definitions

Unless otherwise defined herein, or the context otherwise requires, the following terms shall have the respective meanings set forth below:

| | |
|---|---|
| *Administrative Claim* | means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases of a kind specified under section 503(b) of the Bankruptcy Code and entitled to priority under section 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtors' Estates, any actual and necessary costs and expenses of operating the Debtors' business, any indebtedness or obligations incurred or assumed by the Debtors in Possession in connection with the conduct of their business, including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, all compensation and reimbursement of expenses to the extent awarded by the Court under sections 330, 331 or 503 of the Bankruptcy Code, any fees or charges assessed against the Debtors' Estates under section 1930 of chapter 123 of title 28 of the United States Code, and any Claim for goods delivered to the Debtors within twenty (20) days of the Petition Date and entitled to administrative priority pursuant to section 503(b)(9) of the Bankruptcy Code. |
| *Administrative Claims Bar Date* | means the date by which all Administrative Claims must be filed with the Court to be allowed. The Administrative Claims Bar Date will be established by the Court as a specific date prior to the Confirmation Date. |

---

[1] Capitalized terms used in this Introduction shall have the meanings ascribed to them herein below.

| | |
|---|---|
| ***Allowed*** | means, with reference to any Claim, (a) any Claim against any of the Debtors that has been listed by the Debtors in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent, and with respect to which no contrary proof of claim has been filed, (b) any Claim specifically allowed under the Plan, (c) any Claim that is not Disputed by the Claims Objection Deadline, (d) any Claim the amount or existence of which, if Disputed, (i) has been determined by a Final Order of a court of competent jurisdiction, or (ii) has been allowed by Final Order of the Court, or (e) any Claim which the Reorganized Debtors deem allowed, depending upon the party responsible for distribution under the Plan; provided, however, if the time to object to Claims has not expired, a Claim shall not be deemed allowed unless designated as such by the Reorganized Debtors; provided, however, that any Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Court shall not be considered "Allowed Claims" hereunder. |
| ***Allowed Claim*** | means a Claim (a) with respect to which a Proof of Claim has been filed with the Court in accordance with the provisions of Bankruptcy Code § 501 and Bankruptcy Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Final Order of the Court; (b) deemed filed pursuant to Bankruptcy Code § 1111(a) by virtue of such Claim having been scheduled in the list of Creditors prepared and filed by the Debtors with the Court pursuant to Bankruptcy Code § 521(1) and Rule 1007(b) and not listed as disputed, contingent, or unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Final Order of the Court. Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim pursuant to the provisions of the Plan or any Final Order of the Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed by the Debtors within any applicable period of limitation fixed by the Plan, by Rule 3003, or any Final Order of the Court, until such objection or proceeding has been overruled, dismissed, or settled by entry of a Final Order. Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes pursuant to the provisions of Rule 3018(a). Unless otherwise specified in the Plan or any Final Order of the Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise or arising subsequent to the Petition Date. |

54612453;5

| | |
|---|---|
| ***Avoidance Actions*** | means those certain claims or Causes of Action of the Estates arising out of or maintainable pursuant to sections 510, 542, 543, 544, 545, 547, 548, 550, or 551 of the Bankruptcy Code or under any other similar applicable law, regardless of whether or not such action has been commenced prior to the Effective Date. |
| ***Ballot*** | means each of the ballot forms distributed with the Plan to each Holder of an Impaired Claim (other than to Holders not entitled to vote on the Plan) upon which is to be indicated, among other things, acceptance or rejection of the Plan. |
| ***Bankruptcy Code*** | means Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as in effect on the date hereof. |
| ***Bankruptcy Rules*** | means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, and local rules of the Court, as the context may require. |
| ***Business Day*** | means any day on which commercial banks are open for business, and not authorized to close, in the City of New York, New York, except any day designated as a legal holiday by Bankruptcy Rule 9006(a). |
| ***Cash*** | means legal tender of the United States of America. |
| ***Causes of Action*** | means all claims (including those assertable derivatively), liabilities, obligations, suits, debts, sums of money, damages, demands, judgments, whether known or unknown, now owned or hereafter acquired by the Debtors, and the Cash and non-Cash proceeds thereof, whether arising under the Bankruptcy Code or other federal, state or foreign law, equity or otherwise, other than the Avoidance Actions or any claims or causes of action released pursuant to the terms of this Plan. |
| ***Chapter 11 Cases*** | means the chapter 11 cases commenced by the Debtors in the Middle District of Florida, Orlando Division. |
| ***Claim*** | means any claim, as such term is defined in section 101(5) of the Bankruptcy Code. |
| ***Claims Objection Deadline*** | means the first Business Day that is ninety (90) days after the Effective Date, or such other later date the Court may establish or pursuant to an order on a motion by the Reorganized Debtors which motion may be filed before or after such deadline and may be approved upon notice and a hearing. |
| ***Class*** | means a group of Claims or Equity Interests as classified under the Plan. |

| | |
|---|---|
| ***Class Action*** | means the case of *Maz Partners LP v. First Choice Healthcare Solutions Inc., et al., Case No. 6:19-cv-619-Orl*-40LHR, pending in the United States District Court, Middle District of Florida. |
| ***Class Action Settlement Documents*** | means the Stipulation and Agreement of Settlement, any related documents, and any agreements entered into in connection therewith or pursuant hereto or thereto and the orders of the Court and/or District Court in the Class Action in furtherance thereof.  (As of the date of this Plan, the parties to the Class Action are drafting these documents.) |
| ***Class Period*** | means the period between April 1, 2014 and November 14, 2018, both dates inclusive. |
| ***Collateral*** | means any property or interest in property of the Debtors' Estates subject to a Lien to secure the payment or performance of a Claim, which Lien has not been avoided or is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law. |
| ***Confirmation Date*** | means the date on which the Confirmation Order is entered by the Court. |
| ***Confirmation Hearing*** | means the hearing to consider confirmation of the Plan pursuant to section 1128 of the Bankruptcy Code, as it may be adjourned or continued from time to time. |
| ***Confirmation Order*** | means the order entered by the Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code. |
| ***Court*** | means, (a) the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, having jurisdiction over the Chapter 11 Cases; (b) to the extent there is no reference pursuant to section 157 of title 28 of the United States Code, the United States Bankruptcy Court for the Middle District of Florida, Orlando Division; and (c) any other court having jurisdiction over the Chapter 11 Cases or proceedings arising therein. |
| ***D&O Insurance Contributor*** | means XL Specialty Insurance Company. |
| ***D&O Policy*** | means the insurance policy that would be obligated to pay the settlement of the Class Action upon approval by the Court and/or District Court approved settlement of the Class Action. |

54612453;5

| | |
|---|---|
| ***D&O Protected Parties*** | means the Defendants of the Class Action and their current and former parents, affiliates, subsidiaries, officers, directors, agents, representatives, successors, predecessors, assigns, assignees, partnerships, partners, principals, employees, trustees, trusts, immediate family members, insurers including but not limited to Defendants' Insurer, reinsurers, professional advisors, and attorneys, in their capacities as such, and such others as is usual and customary. |
| ***Debtors*** | means First Choice Healthcare Solutions, Inc., First Choice Medical Group of Brevard, LLC, FCID Medical, Inc., and Marian Towers, LLC. |
| ***Debtors in Possession*** | means the Debtors in their capacity as debtors in possession in the chapter 11 Cases pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. |
| ***Disposable Income*** | shall have the same definition and meaning as the same term is defined under 11 U.S.C. § 1191(d).  For purposes of determining disposable income, all payments provided for under this Plan are expenses reasonably necessary to be expended for the maintenance, support, continuation, preservation and operation of the Debtors' business, as well as payments and reserves by the Debtors for capital expenditures, expenses to grow the business and other expenses reasonably anticipated to improve the Debtors' profitability and efficiency. |
| ***Disputed*** | means, with reference to any Claim, (a) any Claim, (i) proof of which was not timely or properly filed and that has been or hereafter is listed on the Schedules as unliquidated, disputed or contingent, or (ii) for which a proof of claim was required, but as to which a proof of claim was not timely or properly filed; or (b) any Claim as to which the Debtors or any other party in interest has filed an objection or request for estimation on or before such limitation period fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Court, except to the extent that such objection or request for estimation is withdrawn or determined by a Final Order in favor of the Holder of such Claim. |
| ***Distributions*** | means the distribution in accordance with this Plan to Holders of Allowed Claims. |
| ***District Court*** | means the United States District Court, Middle District of Florida, Orlando Division. |
| ***Effective Date*** | means the first Business Day thirty (30) days after entry of a Confirmation Order; provided, however, that if a stay of the Confirmation Order is in effect on such date, the Effective Date will be the first Business Day after such stay is no longer in effect. |

54612453;5

| | |
|---|---|
| ***Equity Interest or Interest*** | means any equity security within the meaning of section 101(16) of the Bankruptcy Code or any other instrument evidencing an ownership interest in any of the Debtors, whether or not transferable, and any option, warrant, or right, contractual or otherwise, to acquire, sell or subscribe for any such interest. |
| ***Estates*** | means the estates of the Debtors, individually or collectively, as is appropriate in the context created in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code. |
| ***FCHS*** | means the Debtor First Choice Healthcare Solutions, Inc. |
| ***Fee Claims*** | means an Administrative Claim under section 330(a), 331 or 503 of the Bankruptcy Code for compensation of a Professional or other Person for services rendered or expenses incurred in the Chapter 11 Cases on or prior to the Effective Date (including reasonable expenses of the members of the Creditors Committee incurred as members of the Creditors Committee in discharge of their duties as such. |
| ***Final Order*** | means an order or judgment of the Court, or other court of competent jurisdiction, as entered on the docket of such Court, the operation or effect of which has not been stayed, reversed, vacated or amended, and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal, petition for certiorari, or seek review or rehearing has expired and as to which no appeal, petition for certiorari, or petition for review or rehearing was filed or, if filed, remains pending. |
| ***General Unsecured Claim*** | means a Claim against any of the Debtors that is not otherwise classified and a Class Action Claimant who has completed an Opt-Out Form and filed a Proof of Claim pursuant to Class Action procedures established by the Court and in the event the Court does not approve the Class Action Settlement Documents, those parties in the purported Class Action class who have an Allowed Claim. |
| ***Governmental Unit*** | has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code. |
| ***Holder*** | means the holder of a Claim or Interest, as applicable. |
| ***Impaired*** | means, when used with reference to a Claim, a Claim that is impaired within the meaning of section 1124 of the Bankruptcy Code. |
| ***Indemnification Obligation*** | means any obligation of any of the Debtors to indemnify, reimburse, or provide contribution pursuant to charter, by-laws, contract, or otherwise; provided, however, that such term shall not include any obligation that constitutes a subordinated Claim. |

| | |
|---|---|
| ***Initial Distribution Date*** | means the date of the first distribution by the Debtors or the Reorganized Debtors as applicable, to a particular class of creditors. |
| ***Insider*** | has the meaning set forth in section 101(31) of the Bankruptcy Code. |
| ***Intercompany Claims*** | means any Claim held by one of the Debtors against any other Debtor, including, without limitation, (a) any account reflecting intercompany book entries by such Debtor with respect to any other Debtor, (b) any Claim not reflected in book entries that is held by such Debtor, and (c) any derivative Claim asserted or assertable by or on behalf of such Debtor against any other Debtor. |
| ***Lien*** | has the meaning set forth in section 101(37) of the Bankruptcy Code. |
| ***Ongoing Trade Claim*** | means any General Unsecured Claim that is an obligation of the Debtors to third-party providers of goods and services to the Debtors that facilitate the Debtors' operations in the ordinary course of business and will continue to do so after the emergence from the Chapter 11 Cases and are identified on **Exhibit A** hereto. |
| ***Opt-Out Election*** | means Holders of Class Action Claims who elect not to accept the proposed treatment provided in the Class Action Settlement Documents. |
| ***Person*** | means any individual, corporation, partnership, limited liability company, association, indenture trustee, organization, joint stock company, joint venture, estate, trust, Governmental Unit or any political subdivision thereof, or any other entity. |
| ***Petition Date*** | means June 15, 2020. |
| ***Plan*** | means this Plan, as it may be amended or modified from time to time, together with all addenda, exhibits, schedules or other attachments, if any. |
| ***Plan Interest Rate*** | means simple interest at the rate of 3% per annum. |
| ***Plan Payments*** | means payments made by the Debtors pursuant to the terms of the Plan. |
| ***Priority Claim*** | means a Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code including, without limitation, certain allowed employee compensation and benefit claims of the Debtors' employees incurred within one hundred eighty (180) days prior to the Petition Date and all claims for taxes. |

54612453;5

| | |
|---|---|
| ***Professional*** | means (i) any professional employed in the Chapter 11 Cases pursuant to section 327, 328 or 1103 of the Bankruptcy Code and (ii) any professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b) of the Bankruptcy Code. |
| ***Pro Rata*** | means, with respect to any Claim, at any time, the proportion that the amount of a Claim in a particular Class bears to the aggregate amount of all Claims (including Disputed Claims) in such Class, unless in each case the Plan provides otherwise. |
| ***Released Parties*** | has the meaning assigned to such term in Article X of the Plan. |
| ***Reorganized Debtors*** | means the Debtors, or any successors thereto by merger, consolidation, or otherwise, on and after the Effective Date. |
| ***Scheduled*** | means, with respect to any Claim or Equity Interest, the status and amount, if any, of such Claim or Equity Interest as set forth in the Schedules. |
| ***Schedules*** | means the schedules of assets and liabilities, statements of financial affairs, and lists of Holders of Claims and Equity Interests filed with the Court by each of the Debtors, including any amendments or supplements thereto. |
| ***Secured Claims*** | means any Claim (other than claims held by taxing authorities) to the extent reflected in the Schedules or a proof of claim filed as a Secured Claim, which is secured by a Lien on Collateral) to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to setoff under section 553 of the Bankruptcy Code, to the extent of such setoff. |
| ***Subchapter V Trustee*** | means Aaron R. Cohen who was appointed pursuant to 11 U.S.C. § 1183. |

## B.  Interpretation, Application of Definitions and Rules of Construction

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter, such meanings to be applicable to both the singular and plural forms of the terms defined. Capitalized terms in the Plan that are not defined herein shall have the same meanings assigned to such terms by the Bankruptcy Code or Bankruptcy Rules, as the case may be. The words "herein," "hereof," and "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section or subsection in the Plan unless expressly provided otherwise. The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration,

54612453;5

clarity or specificity and do not in any respect qualify, characterize or limit the generality of the class within which such things are included. Captions and headings to articles, sections and exhibits are inserted for convenience of reference only, are not a part of this Plan, and shall not be used to interpret this Plan. Any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, and any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented. The rules of construction set forth in section 102 of the Bankruptcy Code (except for section 102(5)) shall apply to this Plan. In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## II.

## BRIEF HISTORY OF DEBTORS, BRIEF SUMMARY OF DEBTORS' ONGOING BUSINESS

### A.    Brief History of the Debtors

#### 1.    Background of Chapter 11 Cases

On June 15, 2020 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are continuing in possession of their property and management of their business as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  Aaron Cohen was appointed the Subchapter V trustee. (Doc. No. 17). Pursuant to an order of this Court dated June 19, 2020, the Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only under *In re First Choice Healthcare Solutions, Inc.* (Doc. No. 32).

#### 2.    Description of Debtors' Pre-Petition Business

The Debtors have historically been one of the preferred orthopedic surgical and physical therapy providers in Brevard County, Florida, providing a comprehensive fully integrated service offering of orthopedic medicine specializing in orthopedics, orthopedic surgical management, including spine, hip and joint replacement and repair, spine surgery, neurology interventional pain management and related diagnostics.[2]

First Choice Healthcare Solutions, Inc. is a Delaware corporation and is the parent company of the affiliate debtors.   First Choice Healthcare Solutions, Inc. was registered with the U.S. Securities and Exchange Commission but is no longer subject to the reporting requirements of Section 13 of the Securities Exchange Act of 1934, and has filed its Form 15 to delist from its publicly traded exchange.

---

[2] Including but not limited to treatment relating to arthritis, arthroscopic knee surgery, carpal tunnel, fractures, herniated discs, hip replacement, joint injections, joint pain, knee replacement, knee surgery, rotator cuff repair, shoulder pain, sports injury and sports medicine.

Medical care to patients is provided by First Choice Medical Group of Brevard, LLC. This Debtor employees those individuals that hold proper medical licenses and are authorized to have a billing number for the services provided to patients. Currently First Choice Medical Group of Brevard, LLC employees one medical doctor, one physician assistants/advanced registered nurse practitioners, seven physical and occupational therapists, four medical assistants, x-ray technicians and MRI technicians. First Choice Medical Group of Brevard, LLC relies on payments from the following entities in the approximate amounts: (a) Commercial private insurance companies - 62%; (b) Workers' Compensation carriers - 5%; and (c) Medicare - 33%.

FCID Medical, Inc. employs all non-licensed / non-biller medical staff such as front desk staff and medical billing specialists and owns fixed assets.

Marina Towers, LLC is a Florida limited liability company created in 2003. Marina Towers, LLC is the master lessee for the Debtors' principal location at 709 South Harbor City Blvd., Melbourne Florida 32901.

### 3.    **Post-Petition Events**

Following the commencement of the case, on June 25, 2020 a new Board for First Choice Healthcare Solutions, Inc. was seated. The operations of the Reorganized Debtors will continue to be overseen by the Debtors' Chief Executive Officer, Lance Friedman, Chief Financial Officer, Phil Keller and Eric Weiss as Chief Operating Officer.

As of the Confirmation Hearing, the Debtors anticipate they will have five satellite physical therapy locations open in Brevard County, Florida.

### B.    **Class Action**

FCHS was a named defendant in a suit pending as of the Petition Date in the case titled *MAZ Partners LP v. First Choice Healthcare Solutions, Inc.*, Case No. 6:19-cv-00619-PGB-LRH, which is pending in the United States District Court for the Middle District of Florida, Orlando Division (defined above as the "Class Action"). In the Class Action no class had been certified. The proposed class consists of individuals or entities which purchased or otherwise acquired FCHS common stock between April 1, 2014, and November 14, 2018, inclusive, did not sell all such securities before November 14, 2018, and are not otherwise excluded in the Class Action Settlement Documents. The Class Action involves whether FCHS and Christian Romandetti, Sr., (FCHS's founder and former Chief Executive Officer) disseminated misleading statements which omitted material information during the Class Period. Lead Plaintiff and Defendants disagree on whether the investors could have prevailed at trial, and if so, how much money they could have received. Defendants have expressly denied and continue to deny all charges of wrongdoing or liability against them.

The parties in the Class Action have reached a proposed settlement and they are finalizing those documents. If approved by the Court, $1,000,000 will be paid to resolve the Class Action, from which claims of investors who bought or otherwise acquired FCHS common stock during the Class Period, as well as, legal fees and other costs in connection with the Class Action will be deducted. On June 12, 2020, the last trading day prior to FCHS's filing for bankruptcy, FCHS

common stock closed at $0.80 per share, FCHS had approximately 32.96 million shares of common stock outstanding, and FCHS had a market capitalization of approximately $2.62 million.

The Court and/or District Court have not yet approved the settlement in the Class Action. Payments will be made only if the Court and/or District Court approves the settlement in the Class Action and after any appeals are resolved.

C.    **Brief Summary of Debtors' Potential Ongoing Business**

The Debtors since the Petition Date have explored various options of best modernizing and transforming their businesses to meet new patient market demands driving potential growth of their businesses, including possible synergistic acquisitions and management of core related businesses. One such key opportunity being explored, but not yet finalized is a true joint venture partnership relationship with Steward Healthcare System LLC ("Steward"). The Debtors heretofore provide the following information based on the status of their discussions with Steward. These discussions and/or negotiations have not been placed into legal binding documents; however the framework that will structure the operations of new business lines is in the process of being memorialized between the First Choice and Steward professionals in the form of a detailed and comprehensive Term Sheet. Further, if and when the parties are able to move forward in consummating a binding multi-faceted transaction, there are many healthcare and corporate requirements that will need to be met. For example, it is expected it will take at least sixty days to address issues extant with Florida licensure agencies. Similarly, any remodeling or buildout out of the Debtor's facilities is expected and may take over a year and half to complete from the date of this Plan.

FCHS or one or more affiliate entities (collectively, "First Choice"), and Steward or one or more affiliate entities (collectively, "Steward") anticipate executing a Term Sheet relating to certain transactions described as "Phase I", "Phase II" and "Phase III". The transactions are subject to the negotiation, execution and delivery of mutually acceptable definitive agreements and other conditions.

In Phase I, First Choice and Steward will enter into a management agreement whereby First Choice (in such capacity, the "Phase I Operator") will agree to manage, initially, six outpatient physical therapy facilities owned by Steward, but it is anticipated that First Choice will undertake management of all additional Steward-owned outpatient physical therapy facilities (the "Facilities"). The management agreement will have a term of five years. The term may be renewed for an additional two-year period exercisable at the option of Steward.

In Phase II, First Choice and Steward will enter into a joint venture to operate an Ortho Urgent Care operational at First Choice's headquarters at the S. Harbor City location to be operated on nights and weekends, in addition to provisioning of certain of the Debtor's current services during normal daytime hours. The parties acknowledge that such business venture will require application for and issuance of licensure and other regulatory approvals that will require filing and advance notice to federal and state agencies. First Choice and Steward will establish a limited liability company under the laws of the State of Florida whereby the Phase II JV entity will be owned 45% by First Choice, 45% by Steward and 10% by certain identified physicians (the "Physicians"). The Phase II JV shall be jointly managed by First Choice and Steward.

In Phase III, which is believed to be approximate a year from September of 2020 to implement, First Choice and Steward will enter into a joint venture to operate a state of the art orthopedic surgical center at First Choice's headquarters at the S. Harbor City location, which may include possible short stay over recovery. First Choice and Steward will establish a limited liability company. The Phase III JV Entity will be owed 40% by First Choice, 40% by Steward and 20% by the surgical Physicians. The Phase III JV shall be jointly managed by First Choice and Steward.

Ten percent of all management fees and profit distributions received by First Choice pursuant to either of the Phase I, Phase II or Phase III Transactions will be paid to Steward until the total amount of all such payments equals $3,750,000 (or until such amount is earlier paid). First Choice will make additional payments towards the $3,750,000 amount in the event that it raises $10,000,000 or more in an offering of equity securities and such offering generates excess liquidity to operate the business in the normal course. In exchange for the promise to pay such amounts, Steward will retain its equity position in First Choice and will relinquish and terminate its put right under Section 7.8(a) of that certain Stock Purchase Agreement dated as of January 31, 2018 between First Choice and Steward.

In addition to the Phase III Plan with Steward, the accompany anticipates expanding it current offering to include additional services such as expanded pain management, neurology, an injury clinic, wellness center, drip spa and eastern medicine holistic services.

**III.**
**CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS**

A.    <u>**Introduction**</u>

In pursuit of a successful exit from bankruptcy, the Debtors submit a plan of reorganization which provides the framework for the continuation of the Debtors' business for the benefit of their creditors and Estates. The Debtors' Plan proposes distributions to creditors related to the Subchapter V mandate. All Claims and Interests treated under Articles V of the Plan are divided into the following classes, which shall be mutually exclusive:

1.    <u>**Unclassified Claims (not entitled to vote on the Plan)**</u>

    (a)    <u>Administrative Claims.</u>

    (b)    <u>Fee Claims.</u>

2.    <u>**Classes of Claims**</u>

    (a)    <u>Class 1:</u> Priority Claims.

    (b)    <u>Class 2:</u> Secured Claims.

    (c)    <u>Class 3:</u> General Unsecured Claims.

(d) <u>Class 4:</u> Ongoing Trade Claims.

(e) <u>Class 5:</u>  Securities Claimants.

(f) <u>Class 6:</u> Equity Interests in Debtors.

**IV.**

**TREATMENT OF UNCLASSIFIED CLAIMS**

A. <u>**Administrative Claims**</u>

In full and final satisfaction, settlement, release and discharge of each Allowed Administrative Claim, Holders of an Allowed Administrative Claim shall be paid in full over a three year period after the Effective Date, or upon such other terms as may be agreed upon by the Holder of the claim and the applicable Debtor, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Court. The Allowed Administrative Claims shall be paid from Cash on hand or through pre-petition retainers. Debtors estimates Administrative Claims (excluding Fee Claims to be approximately $70,000. It is anticipated that the Administrative Claims shall come from the Debtors' landlords and the Subchapter V Trustee only.

The Court will establish an Administrative Claims Bar Date.

B. <u>**Fee Claims**</u>

All requests for compensation or reimbursement of Fee Claims pursuant to sections 327, 328, 330, 331, 503 or 1103 of the Bankruptcy Code for services rendered prior to the Effective Date shall be filed and served on the Reorganized Debtors, counsel to the Reorganized Debtors, the United States Trustee, Subchapter V Trustee, and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Court, no later than thirty (30) days after the Effective Date. Holders of Fee Claims that are required to file and serve applications for final allowance of their Fee Claims and that do not file and serve such applications by the required deadline shall be forever barred from asserting such Claims against the Debtors, Reorganized Debtors or their respective properties, and such Fee Claims shall be deemed discharged as of the Effective Date. Objections to any Fee Claims must be filed and served on the Reorganized Debtors, counsel for the Reorganized Debtors, and the requesting party no later than seventy-five (75) days after the Effective Date.  The Allowed Fee Claims are to be paid in full in Cash within three (3) Business Days of the Final Order allowing such Claims.

**V.**

**TREATMENT OF CLAIMS AND
EQUITY INTERESTS**

**A.**    <u>**Class 1 – Priority Claims**</u>

1.    <u>**Distributions**</u>

Except to the extent that a Holder of an Allowed Priority Claim shall have agreed in writing to a different treatment, the Holder of an Allowed Priority Claim will be paid in full in three equal quarterly Cash installments, commencing on the first day of the first month following the Effective Date, over a period of nine (9) months, with interest at the Plan Interest Rate.

2.    <u>**Impairment and Voting**</u>

Class 1 is Impaired under the Plan. Holders of Allowed Priority Claims in Class 1 are entitled to vote to accept or reject the Plan.

**B.**    <u>**Class 2 – Secured Claims**</u>

1.    <u>**Distributions**</u>

Except to the extent that a Holder of an Allowed Secured Claim shall have agreed in writing to a different treatment, at the sole option of the Debtors, each Allowed Secured Claim shall, in full and final satisfaction of such Claim shall be paid in full in two equally installment payments. The first installment payment will occur within forty-five (45) days after the Effective Date and the second and final installment payment shall be made within ninety (90) days after the Effective Date.

Notwithstanding the foregoing, to the extent a Secured Claim arises on account of taxes, such Secured Claim shall be treated as a Priority Claim.

Although all Secured Claims have been placed in one Class for purposes of nomenclature, each Secured Claim, to the extent secured by a Lien on Collateral different than that securing any Secured Claims, shall be treated as being in a separate sub-Class for the purpose of receiving Distributions under the Plan.

2.    <u>**Impairment and Voting**</u>

Class 2 is Impaired under the Plan. The Holders of Allowed Secured Claims in Class 2 are entitled to vote to accept or reject the Plan.

54612453;5

### C.     Class 3 – General Unsecured Claims

#### 1.     Distributions

Except to the extent that a Holder of an Allowed General Unsecured Claim shall have agreed in writing to a different treatment, each Holder of an Allowed General Unsecured Claim shall have their claim fully satisfied by virtue of Debtors devoting their Disposable Income over a three (3) year period commencing on the Effective Date to be paid on a quarterly basis *pro rata* to Holders of Allowed General Unsecured Claims, provided that the minimum quarterly payment of Disposable Income in each year after the Effective Date shall equate to (i) $5,000 per month in year one, (ii) $6,000 per month in year two and (iii) $7,000 per month in year three.

So long as the Debtors' Chapter 11 Cases remain open, the Debtors will, on a quarterly basis commencing on the Effective Date, file a quarterly report detailing their actual net profits for each calendar quarter (which profits will be calculated using an accrual basis method of accounting.)  The maximum Distribution to Class 3 Allowed Claims shall be equal to the total amount of Class 3 Allowed Claims, and no Holder of a Class 3 Allowed Claim shall receive an amount greater than the amount of its Allowed Claim.

In addition, the Holders of an Allowed General Unsecured Claim will receive *pro rata* quarterly Distributions from proceeds of Causes of Actions.

#### 2.     Impairment and Voting

Class 3 is Impaired under the Plan. Each Holder of an Allowed General Unsecured Claim in Class 3 is entitled to vote to accept or reject the Plan.

### D.     Class 4 - Ongoing Trade Claims

#### 1.     Distributions

Except to the extent that a Holder of an Allowed Ongoing Trade Claim shall, at the election of the Reorganized Debtors, and to the extent that such Allowed Ongoing Trade Claim was not previously paid pursuant to an order of the Court shall be paid in full in two equally installment payments.  The first installment payment will occur within ninety (90) days after the Effective Date and the second and final installment payment shall be made within on hundred-fifty (150) days after the Effective Date.

#### 2.     Impairment and Voting

Class 4 is Impaired under the Plan. Each Holder of an Allowed Ongoing Trade Claim in Class 4 is entitled to vote to accept or reject the Plan.

### E.     Class 5 – Class Action Claims

Class 5 Claims are claims of Holders of claims pursuant to the proposed Stipulation of Settlement to be entered into in the Class Action. Pursuant to the Plan and the Stipulation of Settlement as currently contemplated, FCHS and D&O Insurance Contributor will establish a

settlement fund (the "Settlement Fund") in the amount of $1 million which is to be contributed from the D&O Policy.

Class 5 Claims will be discharged and the Holders of Allowed Class Action Claims thereof shall be forever barred from seeking to recover any payment on their Class Action Claims as set forth in this Plan and as will be set forth in the Class Action Settlement Documents.

Holders of Class Action Claims may choose to exclude themselves from the settlement of the Class Action in accordance with the Class Action Settlement Documents (the "Opt-Out Election"). The Holders of Class Action Claims who exercise the Opt-Out Election and preserve their rights to proceed against FCHS in accordance with the requirements of the Class Action Settlement Documents and timely file a Proof of Claim and are adjudicated to have an Allowed Claim, shall be Holders of Class 3 Claims.

Distributions from the Settlement Fund shall be made in the amounts, at the times and in the manner provided for in the Class Action Settlement Documents, which shall also govern requirements for qualifying for distributions, the manner and time of the giving of notices, the forms of the documents to be filed by Holders of Class Action Claims and all other matters concerning the Class Action and its settlement other than as specifically provided for in the Plan. Neither the Debtors nor Reorganized Debtors shall have any responsibility with respect to the Class Action Settlement Documents or the disposition of the Settlement Fund after final approval by the Court and/or District Court, other than to cooperate in certain respects in the gathering of certain information with respect thereto and coordinating with the carrier of the D&O Policy regarding payment.

If the settlement becomes effective, pursuant to the terms of the Class Action Settlement Documents, all class members who did not opt out pursuant to the Class Action Settlement Documents, shall release (or be deemed to have released) all Class Action Claims such Holder may have against the D&O Protected Parties in the Class Action. Class 5 Claims are unimpaired, and therefore, shall not be entitled to vote to accept or reject this Plan.

### Class 6 – Equity Interests

1. **Distributions**

Existing equity interests in Debtors shall be retained in the same proportion existing as of the Petition Date.

2. **Impairment and Voting**

Class 6 is unimpaired and deemed to accept the Plan.

## VI.

## PROVISIONS REGARDING CORPORATE GOVERNANCE OF THE REORGANIZED DEBTORS

### A.    Management

#### 1.    Appointment of Officers and Directors

The Debtors' current officers shall serve in the same capacity as officers of the Reorganized Debtors and shall serve in accordance with any applicable non-bankruptcy law.

#### 2.    Powers of Officers

The officers of the Debtors or the Reorganized Debtors, as the case may be, shall have the power to enter into or execute any documents or agreements that they deem reasonable and appropriate to effectuate the terms of the Plan.

#### 3.    Management of Reorganized Debtors

The Reorganized Debtors' officers shall serve in accordance with the Reorganized Debtors and applicable non-bankruptcy law.

#### 4.    Indemnification of Directors, Officers and Employees

Upon the Effective Date, the charters and by-laws of each Reorganized Debtor shall contain provisions which (i) eliminate the personal liability of the Debtors' and the Reorganized Debtors' then present and future directors and officers for post-Effective Date monetary damages resulting from breaches of their fiduciary duties to the fullest extent permitted by applicable law in the state in which the subject Reorganized Debtor is organized; and (ii) require such Reorganized Debtor, subject to appropriate procedures, to indemnify the Reorganized Debtors' directors, officers, and other employees (as such employees are identified by the Board) serving on or after the Effective Date for all post-Effective Date claims and actions to the fullest extent permitted by applicable law in the state in which the subject Reorganized Debtor is organized.

### B.    Corporate Action

Except as set forth in the Plan, any action under the Plan to be taken by or required of the Debtors or the Reorganized Debtors, including, without limitation, the adoption or amendment of certificates of incorporation and by-laws, and instruments or the selection of officers or directors, shall be authorized and approved in all respects, without any requirement of further action by any of the Debtors' or Reorganized Debtors' boards of directors or managers, as applicable.

The Debtors and the Reorganized Debtors, shall be authorized to execute, deliver, file, and record such documents, contracts, instruments, releases and other agreements and take such other action as may be necessary to effectuate and further evidence the terms and conditions of the Plan, without the necessity of any further Court or corporate approval or action.  In addition, the selection of the Persons who will serve as the initial directors, officers and managers of the Reorganized

Debtors as of the Effective Date shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the board of directors or board of managers of the applicable Reorganized Debtors.

# VII.

## SUBSTANTIVE CONSOLIDATION OF THE DEBTORS

Solely in connection with Distributions to be made to the Holders of Allowed Claims, the Plan is predicated upon, and it is a condition precedent to confirmation of the Plan, that the Court provide in the Confirmation Order for the substantive consolidation of the Estates of the Debtors into a single Estate for purposes of this Plan and the Distributions hereunder. To the extent a Claim (including any Disputed Claim) becomes an Allowed Claim, such Claim shall be satisfied in accordance with the provisions of the Plan.

Pursuant to the Confirmation Order, upon the Effective Date and without further order of the Court, except as expressly provided herein, (i) all assets and liabilities of the substantively consolidated Debtors will be deemed to be merged solely for purposes of this Plan and Distributions to be made hereunder, (ii) the obligations of each Debtor will be deemed to be the obligation of the substantively consolidated Debtors solely for purposes of this Plan and Distributions hereunder, (iii) any Claims filed or to be filed in connection with any such obligations will be deemed Claims against the substantively consolidated Debtors, (iv) each Claim filed in the Chapter 11 Cases of any Debtor will be deemed filed against the Debtors in the consolidated Chapter 11 Cases in accordance with the substantive consolidation of the assets and liabilities of the Debtors, (v) all transfers, disbursements and Distributions made by any Debtor hereunder will be deemed to be made by the substantively consolidated Debtors, and (vi) all guarantees of the Debtors of the obligations of any other Debtors shall be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the substantively consolidated Debtors. Holders of Allowed Claims in each Class shall be entitled to their share of assets available for distribution to such Class without regard to which Debtor was originally liable for such Claim. Notwithstanding the foregoing, such substantive consolidation shall not affect (a) the legal and corporate structure of the Reorganized Debtors, (b) guarantees that are required to be maintained post-Effective Date (i) in connection with executory contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been, or will hereunder be, assumed, or (ii) pursuant to the express terms of the Plan. The substantive consolidation proposed herein shall not affect each Debtor's obligation to file the necessary operating reports and pay any required fees pursuant to 28 U.S.C. § 1930(a)(6). Such obligations shall continue until an order is entered closing, dismissing or converting each such Debtor's Chapter 11 Case.

Unless the Court has approved the substantive consolidation of the Estates by a prior order, the Plan shall serve as, and shall be deemed to be, a motion for entry of an order substantively consolidating the Estates as set forth in this Plan. If no objection to substantive consolidation under this Plan is timely filed and served, then the Holders of Claims will be deemed to have consented to substantive consolidation for the purpose of this Plan only and the Court may approve substantive consolidation of the Debtors' Estates in the Confirmation Order. If such objection to the substantive consolidation provided for in this Plan is timely filed and served, a hearing with

respect to the substantive consolidation of the Estates and the objections thereto shall be scheduled by the Court, which hearing may coincide with the Confirmation Hearing.

## VIII.

## PROVISIONS REGARDING MEANS OF IMPLEMENTATION, VOTING, DISTRIBUTIONS, AND TREATMENT OF DISPUTED CLAIMS

### A.    **Business Operations**

The Plan contemplates that the Debtors will continue to manage and operate their businesses in the ordinary course, but with restructured debt obligations. It is anticipated that the revenue from the Debtors' ongoing operations will be sufficient to make the Plan Payments. Please refer to the spreadsheets attached hereto as **Composite Exhibit B** for a projection of Debtors' anticipated financial performance during the term of the Plan with or without Steward transactions discussed in Article II.C. For a historical lookback at Debtors' finances, please refer to the profit and loss statements attached hereto as **Composite Exhibit C**.

As it pertains to potential Causes of Action, the Debtors will review their financial affairs and determine if there are any viable Causes of Action within ninety (90) days of the Effective Date. Any such identified Cause of Action or potential Cause of Action shall be disclosed to all Claimholders and the Subchapter V Trustee prior to such period of time. The proceeds from any Causes of Action will be used to make Distributions to Allowed General Unsecured Claims.

### B.    **Funds Generated During Chapter 11.**

Funds generated from operations through the Effective Date will be used for Plan Payments; however, the Debtors' cash on hand as of Confirmation will be available for payment of Administrative Expenses and Fee Claims. For a complete report detailing the funds generated from Debtors' operations through the Effective Date, please refer to the monthly operating and financial reports filed with the Bankruptcy Court in the Debtors' Chapter 11 Cases.

### C.    **Payment of Claims**

The Debtors or Reorganized Debtors shall pay all Allowed Claims as provided for in the Plan.

### D.    **Voting of Claims**

Each Holder of an Allowed Claim in an Impaired Class of Claims entitled to vote on the Plan shall be entitled to vote to accept or reject the Plan as provided in such order as may be entered by the Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Court.

### E.    Distributions

#### 1.    Manner of Payment to Allowed Claims

Any payment made under this Plan may be made either by check drawn on an account of the Reorganized Debtors, by wire transfer, or by automated clearing house transfer from a domestic bank, at the option of the Reorganized Debtors.

In the event the Plan is confirmed pursuant to § 1191(b) as described above in Article X.D, the Subchapter V Trustee shall make all payments and Distributions required under the terms of the Plan to Class 3 Claimholders only. Any fees and expenses incurred by the Subchapter V Trustee in connection with the distribution of Plan Payments shall be detailed in quarterly fee applications (the "Quarterly Fee Reports") filed with the Court on negative notice. Upon approval of the fees and costs detailed in the Subchapter V Trustee's Quarterly Fee Reports, the approved fee and expense awards shall be deducted from, and charged against, the Distributions made by the Subchapter V Trustee in accordance with the terms of the Plan. The Debtors shall make payments to on account of all Allowed Secured Claims (if any); Allowed Priority Claims (if any); and Class 4 Claimholders (if any) directly.  Payments to Class 5 shall be made pursuant to Court order.

Except as specifically provided for in the Plan, no Claims, Allowed or otherwise, shall be entitled, under any circumstances, to receive any interest on a Claim.

#### 2.    Objections To And Resolution Of Claims

The Reorganized Debtors shall have the exclusive right to make and to file objections to, or otherwise contest the allowance of all claims. Unless otherwise ordered by the Court, objections to, or other proceedings concerning the allowance of, Administrative Claims and Claims shall be filed and served upon the Holders of the Administrative Claims or Claims as to which the objection is made, or otherwise commenced, as the case may be, as soon as practicable, but in no event later than the Claims Objection Deadline. Objections to Fee Claims shall be filed and served within seventy-five (75) days of the Effective Date (or such longer period as may be allowed by order of the Court).

Objections to, or other proceedings contesting the allowance of, Administrative Claims and Claims may be litigated to judgment, settled or withdrawn, in the sole discretion of the Reorganized Debtors. The Debtors may settle any such objections or proceedings without Court approval or may seek Court approval without notice to any Person.

Unless an order of the Court specifically provides for a later date, any party filing a proof of Claim after the bar date established by the Court for such Claim shall not be entitled to treatment as a creditor with respect to such Claim for the purposes of voting on and distribution under the Plan unless and until the party filing such Claim either obtains the written consent of the Reorganized Debtors to file such Claim late or obtains an order of the Court upon written motion on notice to the Reorganized Debtors that permits the filing of the Claim. In the event any proof of Claim is permitted to be filed after the Claims Objection Deadline, the Reorganized Debtors shall have ninety (90) days from the date of such order or agreement to object to such Claim, which

54612453;5

deadline may be extended by the Court on motion of the Reorganized Debtors without a hearing or notice to Creditors.

3.     **Distributions Following Allowance**

Notwithstanding anything to the contrary set forth herein, each Holder of a Disputed Priority Claim that becomes an Allowed Claim subsequent to the applicable Initial Distribution Date shall receive the Distribution to which such Holder of an Allowed Claim is entitled at such time that the Reorganized Debtors make the next subsequent Distributions to Holders of other Allowed/Priority Claims.  Nothing set forth herein is intended to, nor shall it, prohibit the Debtors in their discretion, from making a Distribution on account of any Claim at any time after such Claim becomes an Allowed Claim.  Each Holder of a Disputed General Unsecured claim that becomes an Allowed Claim subsequent to the Initial Distribution Date shall receive its Distribution within ten (10) Business Days of the order allowing such claim becoming final or within such time as may be agreed to by the claimant and Reorganized Debtors to the same *pro rata* extent as the current Distributions to the balance of the General Unsecured Class.

F.     **Estimation**

The Debtors or Reorganized Debtors may at any time, request that the Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Reorganized Debtors, have previously objected to such Claim. The Court will retain jurisdiction to estimate any Claim at any time, including during proceedings concerning any objection to such Claim. In the event that the Court estimates any Disputed Claim, such estimated amount may constitute either (a) the Allowed amount of such Claim, (b) the amount on which a reserve is to be calculated for purposes of any reserve requirement to the Plan, or (c) a maximum limitation on such Claim, as determined by the Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or the Reorganized Debtors may elect to object to ultimate payment of such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

G.     **Controversy Concerning Impairment**

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Court, after notice and a hearing, shall determine such controversy before the Confirmation Date. If such controversy is not resolved prior to the Effective Date, the applicable Debtor's interpretation of the Plan shall govern.

H.     **Confirmation Pursuant to §1191(b) "Cramdown"**

Debtors reserve their rights to confirm using cramdown procedures set forth under 11 U.S.C. § 1191(b) in the event one or more – or even all – classes have not accepted the Plan. The procedures of § 1191(b) provide as follows:

(b)     Notwithstanding section 510(a) of the Bankruptcy Code, if all of the applicable requirements of section 1129(a) of the Bankruptcy Code, other than paragraphs (8), (10) and (15) of that section, are met with respect to a plan, the court, on request of the debtor, shall confirm the plan notwithstanding the requirements of such paragraphs if the plan does

54612453;5

not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is Impaired under, and has not accepted, the plan.

(c)    Rule of Construction. For purposes of section 1191(b), the condition that a plan be fair and equitable with respect to each class of claims or interests includes the following requirements:

(1)    With respect to a class of secured claims, the plan meets the requirements of section 1129(b)(2)(A) of the Bankruptcy Code;

(2)    As of the effective date of the plan –

(A)    the plan provides that all of the projected disposable income of the debtor to be received in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date that the first payment is due under the plan will be applied to make payments under the plan; or

(B)    the value of property to be distributed under the plan in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date on which the first distribution is due under the plan is not less than the projected disposable income of the debtor.

## I.    **Intercompany Claims**

At the option of the Debtors, or the Reorganized Debtors, as applicable, each Intercompany Claim shall be, either (i) reinstated and continued in full or in part, or (ii) eliminated in full or in part by offset, distribution, cancellation, assumption or contribution of such Intercompany Claim or otherwise; provided, however, that no Intercompany Claim shall be Allowed as a General Unsecured Claim.

## J.    **Liens**

Notwithstanding anything to the contrary contained herein, the substantive consolidation of the Debtors pursuant to Article VII of this Plan shall not affect the extent or validity of any Lien.

Upon the treatment or other satisfaction of any secured Claims in accordance with the Plan, the Liens securing such secured Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

## K.    **Enforcement of Subordination**

The classification and manner of satisfying all Claims and the respective Distributions and treatments under the Plan take into account or conform to the relative priority and rights of the Claims in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether under general principles of equitable subordination, section 510(b) of the Bankruptcy Code or otherwise, and any and all such rights are settled, compromised and released pursuant to the Plan. The Confirmation Order shall enjoin, effective as of the Effective Date, all

persons and entities from enforcing or attempting to enforce any such contractual, legal and/or equitable rights so satisfied, compromised and settled.

IX.

**PROCEEDS OF AVOIDANCE ACTIONS**

The Reorganized Debtors are retaining all Avoidance Actions, but shall be under no obligation to pursue any such action. In the event the Reorganized Debtors in their sole discretion determine to pursue an Avoidance Action and in the event of an affirmative recovery on any Avoidance Action, the net proceeds above the cost (including professional fees and expert witness fees) recovered by the Reorganized Debtors shall be distributed *pro rata* to Allowed General Unsecured Creditors.

X.

**EFFECT OF CONFIRMATION OF THE PLAN**

A.    <u>Continued Corporate Existence</u>

The Debtors, as Reorganized Debtors, shall continue to exist after the Effective Date with all powers of a corporation or limited liability company, as the case may be, under the laws of the respective states governing their formation and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under such applicable state law, except as such rights may be limited and conditioned by the Plan and the documents and instruments executed and delivered in connection therewith. In addition, the Reorganized Debtors may operate their business free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Rules or by the Court, subject only to the terms and conditions of the Plan as well as the documents and instruments executed and delivered in connection therewith. The Reorganized Debtors shall be responsible for filing required post-confirmation reports and each Reorganized Debtor shall pay quarterly fees of such Debtor due to the Office of the United States Trustee until such time as a final decree is entered closing the applicable Chapter 11 Case or the Bankruptcy Code orders otherwise.

B.    <u>Settlement of Treatment of General Unsecured Claims</u>

Pursuant to Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided under the Plan, the Plan constitutes a good faith compromise and settlement of the rights and claims, if any, that the Holders of Claims may have against the Released Parties. Any Distributions to be made pursuant to the Plan shall be made on account, and in consideration, of the compromise and settlement provided hereunder, which upon the Effective Date shall be binding on the Holders of Claims (whether or not Allowed). The entry of the Confirmation Order shall constitute the Court's approval, as of the Effective Date, of the settlement and the Court's finding that the settlement is in the best interests of the Debtors and their Estates.

### C.    <u>Vesting of Property</u>

The property of the Debtors' Estates shall be revested in the Reorganized Debtors on the Effective Date.

### D.    <u>Discharge of the Debtors</u>

**The rights afforded herein and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors, the Debtors in Possession, the Reorganized Debtors or any of their respective assets or properties, arising prior to the Effective Date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtors will not be discharged of any debt:**

**(1) Imposed by this Plan; or**

**(2) to the extent provided in § 1141(d)(6).**

**If the Debtors' Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as other provided in § 1192 of the Code.**

**Except as otherwise expressly specified in the Plan, any Holder of such discharged Claim shall be precluded from asserting against the Debtors, the Reorganized Debtors, or any of their respective assets or properties, any other or further Claim based on any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before the entry of the Confirmation Order.**

### E.    <u>Injunction</u>

**Except as otherwise expressly provided in the Plan, the Confirmation Order, or a separate order of the Court, all entities who have held, hold, or may hold Claims against the Debtors that arose before or were held as of the Effective Date, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or the Reorganized Debtors, with respect to any such Claim, (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtors, the Reorganized Debtors on account of any such Claim, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Reorganized Debtors or against the property or interests in property of the Debtors on account of any such Claim, and (d) asserting any right of setoff, or subrogation of any kind against any obligation due from the Debtors, the Reorganized Debtors or the or against the property or interests in property of the Debtors on account of any such Claim. Such injunction shall extend to successors of the Debtor (including, without limitation, the Reorganized Debtors) and their respective properties and interests in property.**

**ANY PARTY WISHING TO PRESERVE ITS SETOFF RIGHT, MUST  FILE, PRIOR TO THE CONFIRMATION DATE, A MOTION FOR RELIEF FROM THE AUTOMATIC STAY SEEKING THE AUTHORITY TO EFFECTUATE SUCH A SETOFF RIGHT OR HAVE TIMELY FILED A PROOF OF CLAIM WITH THE COURT PRESERVING SUCH SETOFF RIGHT IN SUCH PROOF OF CLAIM OR AMENDMENT THERETO**

### F.    Preservation of Causes of Action

The Reorganized Debtors shall retain all Causes of Action and Avoidance Actions. Except as expressly provided in the Plan or the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any such Causes of Action or Avoidance Actions. Nothing contained in the Plan or the Confirmation Order shall be deemed a waiver or relinquishment of any Claim, Causes of Action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the Petition Date that is not specifically waived, released or relinquished by the Plan. The Reorganized Debtors shall have, retain, reserve and be entitled to assert all such Claims, Causes of Action, rights of setoff and other legal or equitable defenses that the Debtors had immediately prior to the Petition Date as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights respecting any Claim that are not specifically waived or relinquished by the Plan may be asserted after the Effective Date by the Reorganized Debtors to the same extent as if the Chapter 11 Cases had not been commenced.

### G.    Votes Solicited in Good Faith

The Debtors have, and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

### H.    Administrative Claims Incurred After the Effective Date

Obligations incurred by the Reorganized Debtors after the Effective Date including (without limitation) Claims for Professionals' fees and expenses incurred after such date, may be paid by the Reorganized Debtors in the ordinary course of business and without application for or Court approval, subject to any agreements with any claim Holders.

### I.    Releases by the Debtors

**On the Effective Date, the Debtors and the Reorganized Debtors, on behalf of themselves and their Estates, shall be deemed to release unconditionally all of their respective *current* officers, *current* directors, *current* employees, *current* partners, *current* advisors, *current* attorneys, *current* financial advisors, *current* accountants, and other *current* professionals, and as to each their respective officers, directors, principals, members employees, partners, subsidiaries, affiliates, advisors, attorneys, financial advisors, accountants, and other professionals (collectively the "Released Parties" and each a "Released Party") from any and all claims, obligations, suits, judgments, damages, rights, Causes of Action and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based in whole or in**

25

part upon actions taken solely in their respective capacities described above or any omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, or the Plan, except that (i) no individual shall be released from any act or omission that constitutes gross negligence or willful misconduct, (ii) the Reorganized Debtors and the shall not relinquish or waive the right to assert any of the foregoing as a legal or equitable defense or right of set off or recoupment against any Claims of any such persons asserted against the Debtors, (iii) the foregoing release shall not apply to any obligations that remain outstanding in respect of loans or advances made to individuals by the Debtors, and (iv) the foregoing release applies to the Released Parties solely in their respective capacities described above.

J.    **Releases by non-Debtors**

On the Effective Date, all Persons who (a) directly or indirectly, have held, hold, or may hold Claims, or (b) vote to accept the Plan as set forth on the relevant Ballot, and (c) do not mark their Ballot to indicate their refusal to grant the releases provided in this paragraph, shall be deemed, by virtue of their receipt of Distributions and/or other treatment contemplated under the Plan, to have forever released and covenanted with the Reorganized Debtors and the Released Parties not to (y) sue or otherwise seek recovery from any of the Reorganized Debtors or any Released Party on account of any Claim in any way related to the Debtors or their business and affairs, including but not limited to any Claim based upon tort, breach of contract, violations of federal or state securities laws or otherwise, based upon any act, occurrence, or failure to act from the beginning of time through the Effective Date or (z) assert against any of the Reorganized Debtors or any Released Party any claim, obligation, right, cause of action or liability that any Holder of a Claim or Interest may be entitled to assert, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part on any act or omission, transaction, or occurrence from the beginning of time through the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, or the Plan, provided, however, (i) none of the Released Parties shall be released from any Claim primarily based on any act or omission that constitutes gross negligence or willful misconduct as determined by a court of competent jurisdiction, (ii) the foregoing release shall not apply to obligations arising under the Plan, and (iii) the foregoing release shall not be construed to prohibit a party in interest from seeking to enforce the terms of the Plan.

K.    **Exculpation and Injunction in Respect of Released Parties**

1.    **Exculpation**

The Debtors, the Reorganized Debtors, and the other Related Parties, shall have no liability whatsoever to any Holder or purported Holder of an Administrative Claim, a Claim, or an Equity Interest for any act or omission in connection with, or arising out of, the Plan, the negotiation of the Plan, the solicitation of votes for confirmation of the Plan, the Chapter 11 Cases, the consummation of the Plan, the administration and implementation of the Plan or the property to be distributed under the Plan, or any transaction contemplated by the Plan or in furtherance thereof except for any act or omission that constitutes willful misconduct or gross negligence as determined by a Final Order. This exculpation shall be in

26

**addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such Released Parties from liability.**

### 2.    Injunction

**Pursuant to section 105 of the Bankruptcy Code, no Holder or purported Holder of an Administrative Claim, a Claim or an Equity Interest shall be permitted to commence or continue any action, employment of process, or any act to collect, offset, or recover any Claim against a Released Party that accrued on or prior to the Effective Date and that has been released or waived pursuant to this Plan.**

### L.    Term of Bankruptcy Injunction or Stays

All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### M.    Preservation of Insurance

The Debtors' discharge and release from all Claims as provided herein, except as necessary to be consistent with this Plan, shall not diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtors, the Reorganized Debtors (including, without limitation, its officers and current and former directors) or any other person or entity.

### N.    Indemnification Obligations Owed by the Debtors

Indemnification Obligations owed to directors, officers, and employees of the Debtors (or the Estates of any of the foregoing) who served or were employed by the Debtors as of or after the Petition Date, excluding claims which have been determined by Final Order to have resulted from gross negligence, willful misconduct, breach of fiduciary duty, or intentional tort, shall be deemed to be assumed pursuant to Sections 365 of the Bankruptcy Code under the Plan; provided that the Reorganized Debtors' liabilities in respect of such obligations shall be limited to the extent of available insurance coverage.

All Indemnification Obligations owed to directors, officers, and employees of the Debtors who served or were employed by the Debtors prior to, but not after, the Petition Date shall be deemed to be, and shall be treated as though they are, executory contracts that are rejected pursuant to Section 365 of the Bankruptcy Code under the Plan.

Indemnification Obligations owed to any Professionals retained pursuant to sections 327 or 328 of the Bankruptcy Code and order of the Court, to the extent that such Indemnification Obligations relate to the period after the Petition Date, shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed pursuant to section 365 of the Bankruptcy Code under the Plan.

# XI.

## RETENTION OF JURISDICTION

The Court shall have exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, section 105(a) and section 1142 of the Bankruptcy Code and for, among other things, the following purposes: (1) to hear and determine motions for the assumption or rejection of executory contracts or unexpired leases pending on the Confirmation Date, and the allowance of Claims resulting therefrom; (2) to determine any other applications, adversary proceedings, and contested matters pending on the Effective Date; (3) to ensure that Distributions to Holders of Allowed Claims are accomplished as provided herein; (4) to resolve disputes as to the ownership of any Claim or Equity Interest; (5) to hear and determine objections to Claims and to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Expense Claim; (6) to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated; (7) to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code; (8) to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Court, including, without limitation, the Confirmation Order; (9) to hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331 and 503(b) of the Bankruptcy Code; (10) to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan; (11) to hear and determine any issue for which the Plan requires a Final Order of the Court; (12) to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code; (13) to hear and determine disputes arising in connection with compensation and reimbursement of expenses of professionals for services rendered during the period commencing on the Petition Date through and including the Effective Date; (14) to hear and determine any Causes of Action, including any Avoidance Action, preserved under the Plan under Bankruptcy Code sections 544, 547, 548, 549, 550, 551, 553, and 1123(b)(3); (15) to hear and determine any matter regarding the existence, nature and scope of the Debtors' discharge; (16) to hear and determine any matter regarding the existence, nature, and scope of the releases and exculpation provided in Article X of the Plan; and (17) to enter a final decree closing the Chapter 11 Cases.

# XII.

## MISCELLANEOUS PROVISIONS

### A.    <u>Modification of the Plan</u>

Subject to the limitations contained in the Plan: (1) the Debtors reserve the right in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Debtors or the Reorganized Debtors, as the case may be, may upon order of the Court, amend or modify the Plan, in accordance with Section 1127(b) of the Bankruptcy Code.

### B. Post Confirmation Status Report

Pursuant to the Plan, within 90 days of the entry of the Confirmation Order, the Debtors will file a status report with the Court attaching a detailed accounting of all payments made under the Plan and explaining what progress has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee, the Subchapter V Trustee and those parties who have requested special notice post-confirmation. The Court may schedule subsequent status conferences in its discretion.

### C. Retention of Professionals

The Reorganized Debtors may retain professionals on such terms as it deems reasonable without Court approval.

### D. Governing Law

Unless a rule of law or procedure is supplied by Federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Florida (without reference to the conflicts of laws provisions thereof) shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, unless otherwise specified.

### E. Filing or Execution of Additional Documents

On or before the Effective Date, the Debtors or the Reorganized Debtors, shall file with the Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### F. Withholding and Reporting Requirements

In connection with the Plan and all instruments issued in connection therewith and Distributions thereon, the Reorganized Debtors, as applicable, shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements.

### G. Exemption From Transfer Taxes

Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any security or the making, delivery, or recording of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan or any Plan Document, or any transaction arising out of, contemplated by, or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local government officials or agents shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### H. Compliance with Tax Requirements

In connection with this Plan, to the extent applicable, the Reorganized Debtors in making Distributions shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Reorganized Debtors may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such Holder provides to the Reorganized Debtors, the necessary information to comply with any withholding requirements of any Governmental Unit. Any property so withheld will then be paid by the Reorganized Debtors to the appropriate authority. If the Holder of an Allowed Claim fails to provide to the Reorganized Debtor(s) the information necessary to comply with any withholding requirements of any Governmental Unit within six months after the date of first notification by the Reorganized Debtors to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's Distribution shall be treated as an undeliverable (unclaimed) distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

### I. Transmittal of Distributions to Parties Entitled Thereto

All Distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid. All Distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made. All distributions made by automated clearing house from a domestic bank shall be deemed to be made as of the date of the automated clearing is effective. Except as otherwise agreed with the Holder of an Allowed Claim in respect thereof or as provided in this Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the Holder with the provisions of this Plan to (i) its address set forth in its proof of claim, (ii) the latest mailing address filed for the Holder of an Allowed Claim entitled to a distribution, (iii) the latest mailing address filed for a Holder of a filed power of attorney designated by the Holder of such Allowed Claim to receive Distributions, (iv) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Debtors pursuant to Bankruptcy Rule 3001(e), or (v) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtors' books and records. If any Distribution is returned by mail or otherwise, the Reorganized Debtors may keep said returned Distribution money.

### J. Unclaimed Property

Except as otherwise provided in this Plan, any property (Cash or otherwise) to be distributed under this Plan that is unclaimed after six months following the relevant distribution date shall be forfeited, and such distribution, together with all interest earned thereon, shall become an Asset to be distributed and conveyed to Holders of Class 3 Claims in accordance with the provisions of this Plan. However, checks issued by the Reorganized Debtors with respect to Allowed Class 3 Claims will be null and void if not cashed within sixty days of the date of issuance and such unclaimed distribution shall vest with the Reorganized Debtors. Requests for re-issuance

54612453;5

of any such check shall be made in writing to the Reorganized Debtors by the Holder of the Claim with respect to the check originally issued.

### K.    Waiver of Federal Rule of Civil Procedure 62(a)

The Debtors may request that the Confirmation Order include (a) a finding that Fed. R. Civ. P. 62(a) shall not apply to the Confirmation Order, and (b) authorization for the Debtors to consummate the Plan immediately after entry of the Confirmation Order.

### L.    Exhibits/Schedules

All Exhibits and schedules to the Plan are incorporated into and constitute a part of the Plan as if set forth herein.

### M.    Default and Remedies of Allowed Claimholders

In the event any Allowed Claimholder is not timely paid in accordance with the Plan, such Allowed Claimholder shall provide the Debtors, Counsel to the Debtors and the Subchapter V Trustee with written notice of said payment default (the "Default"). The Debtors shall have fourteen (14) days from receipt of the Default notice to cure the Default. If the Debtors fail to timely cure the Default, the Allowed Claimholder may seek relief from the Court to enforce this Plan, file for such relief related to the Plan in any state court of competent jurisdiction or such further relief that may be available to such Allowed Claimholder under Federal or applicable state law.

### N.    Notices

All notices, requests, and demands hereunder to be effective shall be in writing and unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Counsel to the Debtors:

Esther McKean, Esq.
Akerman LLP
420 S. Orange Ave.
Suite 1200
Orlando, FL 32801

Debtors:

Attn: Lance Friedman, CEO
709 S. Harbor City Blvd.
Suite 530
Melbourne, FL 32901

United States Trustee:

George C. Young Federal Building
400 West Washington Street, Suite 1100
Orlando, Florida 32801

Subchapter V Trustee:

Aaron R. Cohen
P.O. Box 4218
Jacksonville, FL 32201-4218

## XIII.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    Assumption and Rejection of Executory Contracts and Unexpired Leases

To the extent not (i) assumed in the Chapter 11 Cases prior to the Confirmation Date, (ii) rejected in the Chapter 11 Cases prior to the Confirmation Date, (iii) subject of a separate motion or subject to the expedited procedures approved by the Court to assume or reject under section 365 of the Bankruptcy Code pending on the Effective Date, or (iv) specifically assumed pursuant to this Plan, each executory contract and unexpired lease that exists between Debtors and any Person is specifically rejected by the Debtors that is a party to such executory contract or unexpired lease as of and subject to the Effective Date pursuant to the Plan.

The following executory contracts and unexpired leases are rejected:

(i)        executory contacts or unexpired non-residential leases that were rejected before the Confirmation Date; and

(ii)       all real estate leases that have been rejected pursuant to a court order during these bankruptcy cases.

The following executory contracts and unexpired leases are assumed:

(i)        all existing insurance policies that have not expired, been rejected or are subject to a motion to reject as of the Confirmation Date;

(ii)       all real property leases with the Debtors as of September 14, 2020; and

(iii)      all contracts with Ongoing Trade Vendors that were not rejected prior to confirmation or were not the subject of a motion to reject as of the Confirmation Date; and

54612453;5

B.     **Limited Extension of Time to Assume or Reject**

The Debtors shall have until the completion of the hearing on Confirmation to assume or reject any unexpired lease or executory contract. In the event any such unexpired lease or executory contract is not assumed (or subject to a pending motion to assume) by such date, such unexpired lease or executory contract shall be deemed rejected as of the Confirmation Date. The Debtors' position is that the executory contracts listed on the Schedule of Executory Contracts filed pursuant to Rule 1007 are the only executory contracts to which the Debtors were a party as of the Petition Date.

In the event of a dispute as to whether a contract or lease is executory or unexpired, the right of the Debtors or Reorganized Debtors to move to assume or reject such contract or lease, either by motion or pursuant to such expedited procedures as have been approved by the Court, shall be extended until the date that is thirty (30) days after the entry of a Final Order by the Court determining that the contract or lease is executory or unexpired. The deemed assumptions and rejections provided for in this Article XIII of the Plan shall not apply to such contract or lease.

In the event the Debtors or the Reorganized Debtors become aware after the Effective Date of the existence of an executory contract or unexpired lease that was not included in the Schedules or on the Schedule of Additional Assumed Leases, the right of the Reorganized Debtors to move to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after the date on which the Debtors or the Reorganized Debtors become aware of the existence of such contract or lease. The deemed assumptions and rejections provided for in this Article XIII.A. of the Plan shall not apply to any such contract or lease.

C.     **Cure**

The applicable Reorganized Debtor, except as otherwise agreed by the parties, will cure any and all undisputed defaults under any executory contract or unexpired lease that is assumed by such Reorganized Debtor pursuant to the Plan in accordance with section 365 of the Bankruptcy Code within five (5) Business Days after the Effective Date.  Notwithstanding Article (XIII)(A) or XIII(B), in the event there is a dispute as of the Effective Date regarding the amount required to cure defaults under any executory contract or unexpired lease that the Reorganized Debtors propose to assume, the Reorganized Debtors shall have until thirty (30) days after entry of a Final Order determining the amount, if any, of the applicable Debtor or Reorganized Debtor's liability with respect thereto, or as may otherwise be agreed by the parties, to determine whether to assume or reject the related executory contract or unexpired lease.  In the event the applicable Reorganized Debtor determines to assume the applicable executory contract or unexpired lease related to the disputed cure, such disputes shall be cured within five (5) Business Days of the Order determining the amount, if any, of the applicable Debtor or the applicable Reorganized Debtor's liability with respect thereto, becoming a Final Order or as may otherwise be agreed to by the parties.

D.     **Rejection Damage Claims**

All Claims for damages arising from the rejection of executory contracts or unexpired leases must be filed with the Court in accordance with the terms of the order authorizing such rejection and any applicable bar dates established during the case, but in no event later than thirty

(30) days after the Effective Date (unless rejected at a later date as a result of a disputed cure amount as set forth in Article XIII.C. herein). Any Claims not filed within such time will be forever barred from assertion against the Debtors, their respective Estates and the Reorganized Debtors. All Allowed Claims arising from the rejection of executory contracts or unexpired leases shall be treated as General Unsecured Claims.

      E.      **<u>Guaranties</u>**

All guarantees of assumed leases and contracts shall remain in full force and effect after the Effective Date.

**XIV.**

**BENEFIT PLANS**

As of and subject to the Effective Date, all employee compensation and benefit plans, policies, and programs of the Debtors applicable generally to their employees, as in effect on the Effective Date, including, without limitation, all savings plans, retirement plans, health care plans, disability plans, incentive plans, and life, accidental death, and dismemberment insurance plans, but excluding any employment and severance agreements, plans or policies (unless, with the consent of the Requisite Consenting Parties, such employment and severance agreements, plans or policies are assumed by the Debtors pursuant to Court order), shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed under the Plan, and the Debtors' obligations under such agreements and programs shall survive the Effective Date of the Plan, without prejudice to the Reorganized Debtors' rights under applicable non -bankruptcy law to modify, amend, or terminate the foregoing arrangements, except for (i) such executory contracts or plans specifically rejected pursuant to the Plan, including on the Schedule of Additional Rejected Contracts and Leases (to the extent such rejection does not violate section 1114 of the Bankruptcy Code), and (ii) such executory contracts or plans as have previously been terminated, or rejected, pursuant to a Final Order, or specifically waived by the beneficiaries of such plans, contracts, or programs.

**XV.**

**LIQUIDATION ALTERNATIVE**

If the Plan is ***not*** confirmed and consummated, the Debtors believe the most likely alternative is a liquidation of the Debtors under Chapter 7 of the Code. In a Chapter 7 liquidation, a Chapter 7 trustee would incur additional Administrative Claims that would be paid before any distribution to creditors and would result in no additional value to claimholders. The Debtors therefore believe that liquidation of its property in a Chapter 7 cases would dramatically reduce the total amount available to Creditors as compared to reorganization under this Plan. Thus, the Debtors recommends that Holders of Claims and Interests vote to accept the Plan. Please refer to the liquidation analysis attached hereto as **<u>Exhibit D</u>** for an overview of potential distributions to creditors in a Chapter 7 liquidation.

34

Dated: September 14, 2020

**First Choice Healthcare Solutions, Inc.**

By: _____

Name: ___Lance Friedman_____

Title: ___Chief Executive Officer_____

**First Choice Medical Group
of Brevard, LLC**

By: _____

Name: ___Lance Friedman_____

Title: ___Chief Executive Officer_____

**FCID Medical, Inc.**

By: _____

Name: ___Lance Friedman_____

Title: ___Chief Executive Officer_____

**Marina Towers, LLC**

By: _____

Name: ___Lance Friedman_____

Title: ___Chief Executive Officer_____