UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
**www.flmb.uscourts.gov**

| | |
|---|---|
| In re: | Case No.: 6:20-bk-3355-KSJ |
| | Chapter 11 |
| First Choice Healthcare Solutions, Inc. *et, al.*[1] | |
| | (Jointly Administered) |
| Debtors. | |
| _____/ | |

**FIRST CHOICE HEALTHCARE SOLUTIONS, INC.'S
AMENDED MOTION FOR AUTHORITY TO CONDUCT CAPITAL RAISE**

First Choice Healthcare Solutions, Inc. (the "Debtor"), debtor and debtor-in-possession in the above-captioned bankruptcy case, hereby moves this Court for entry of an Order authorizing the Debtor to conduct a capital raise. In support of this Motion, the Debtor respectfully represents as follows:

### I.    JURISDICTION AND VENUE

1.    The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334(b).

2.    This matter is a core proceeding, and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

### II.    BACKGROUND

3.    On June 15, 2020 (the "Petition Date"), the Debtors[1] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are continuing in possession of their property and management of their business as debtors in possession pursuant to sections 1107 and

---

[1] The Debtors in these cases are: First Choice Healthcare Solutions, Inc., First Choice Medical Group of Brevard, LLC, FCID Medical, Inc., and Marina Towers, LLC. The address of all the Debtors is 709 S. Harbor City Blvd., Suite 530, Melbourne, FL 32901.

1

2

1108 of the Bankruptcy Code. Aaron Cohen is the Subchapter V trustee. (Doc. No. 17). Pursuant to an order of this Court dated June 19, 2020, the Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only under *In re First Choice Healthcare Solutions, Inc.* (Doc. No. 32).

4. First Choice Healthcare Solutions, Inc.[2] is a Delaware corporation created in 2011 and is the parent company of the affiliate debtors. First Choice Healthcare Solutions, Inc. was registered with the U.S. Securities and Exchange Commission but is no longer subject to the reporting requirements of Section 13 of the Securities Exchange Act of 1934.

5. On November 9, 2020, the Debtor filed an Expedited Motion for Entry of Interim and Final Orders (I) Authorizing Debtor to Obtain Postpetition Financing, and (II) Granting Superpriority Liens and Claims, and (III) Scheduling a Hearing (Doc. No. 244) ("Post-Petition Financing Motion").

6. The Post-Petition Financing Motion attaches a budget reflective of the estimated time until confirmation in this case. The Debtors propose to conduct a capital raise over the next few months in order to meet the requirements under the proposed Post-Petition Financing Motion and moving forward through confirmation.

7. The Debtor carefully evaluated a number of factors in designing a capital raise process that it believes will result in the successful restructuring of the Debtor. In addition, the Debtor's decision is based on the Board and officers of the Debtor having received from certain key stakeholders an interest in investing in the Debtor.

8. The Debtor in its business judgment believes that it is in the best interests of its estate and its creditors to start a capital raise process.

---

[2] Formerly known as Medical Billing Assistance, Inc.

## III.     CAPITAL RAISE PROCESS

9. The Debtors would like to conduct an all shareholders meeting on December 15, 2020 to launch a capital raise program. The proposed key terms of the capital raise are anticipated to include the following:

| | |
|---|---|
| **ISSUER:** | First Choice Healthcare Solutions, Inc. (the "**Company**"). |
| **FINANCING AMOUNT:** | A minimum of $500,000 and a maximum of $2,500,000, with an overallotment of an additional $500,000 will be financed through the issuance of Notes and Warrants (as defined below). |
| **ISSUANCE OF NOTES:** | The Company will issue secured convertible promissory notes (each, a "**Note**") with a principal amount reflective of the amount loaned to the Company and an original issue discount as specified below. |
| **ISSUANCE OF WARRANTS:** | Each Noteholder (an "**Investor**") will receive warrants ("**Warrants**") to purchase shares of the Company's common stock, $0.001 par value per share ("**Common Stock**"), in an amount equal to 50% of the face value of its Note. |
| **INTEREST RATE:** | Interest will accrue on the principal balance of each Note at a rate of 10% per annum and will be paid quarterly either in cash or in shares of Common Stock, as determined by the Company. |
| **MATURITY DATE:** | Unless converted as set forth below, principal and accrued interest will be due two years from the date of Note issuance (the "**Maturity Date**"). |
| | The principal and accrued interest under the Notes may be prepaid without penalty upon 14 days' notice to the Investors. |
| **ORIGINAL ISSUE DISCOUNT** | The Notes will be issued at an original issue discount of 10%. |

| | |
|---|---|
| **SECURITY:** | The Company will issue a security agreement granting the Investors a first priority lien on all of the Company's assets, other than those already subject to first priority liens. |
| | There will be an initial collateral agent appointed to exercise rights under the security agreement. The collateral agent may be replaced from time to time by the Investors holding a majority of the indebtedness under the Notes. |
| **MINIMUM INVESTMENT:** | The minimum investment amount will be $50,000; provided that the Company may waive such limitation in its sole discretion. |
| **INVESTORS:** | The Investors must be "accredited investors" as such term is defined in Regulation D promulgated under the Securities Act of 1933, as amended. It is contemplated that the Notes and Warrants will only be offered to existing U.S. resident shareholders of the Company, but the Company reserves the right to U.S. resident non-shareholders. |
| **CLOSING DATE:** | One or more closing not later than February 28, 2021, subject to a 30-day extension by the Company. |
| **ESCROW AGENT:** | Offering proceeds will be held in escrow by Sichenzia Ross Ference LLP until the closing. The closing will not occur prior to approval of the transaction by the U.S. Bankruptcy Court. |
| **USE OF PROCEEDS:** | Upon the closing, the proceeds will be available for general operating expenses, including working capital and capital expenditures. |
| **AUTOMATIC CONVERSION UPON QUALIFIED FINANCING:** | Principal and accrued interest shall be converted on or before the Maturity Date into shares of Common Stock issued in the Company's next offering of Common Stock in an aggregate amount of at least $10,000,000 (not including conversion of the Notes) (the "**Qualified Financing**"). |

|  |  |
|---|---|
|  | The number of shares of Common Stock issuable upon conversion of each Note in a Qualified Financing shall be equal to (i) the amount of principal and accrued interest, divided by (ii) the lessor of 75% of the price per share of Common Stock paid by other investors for a majority of the Common Stock issued in the Qualified Financing or seventy five cents ($0.75). |
| **EXERCISE OF WARRANTS:** | The Warrants will be exercisable upon the consummation of a Qualified Financing. |
|  | The exercise price of the Warrants will be equal to 93.75% of the per share price of Common Stock sold to third-party investors in the Qualified Financing. |
|  | The Warrants will have a term of five (5) years and have a cash exercise provision. |
| **REGISTRATION RIGHTS:** | Holders of Common Stock issued upon conversion of the Notes will be granted customary registration rights. |

(hereinafter collectively the "Capital Raise Process").

## IV.  RELIEF REQUESTED

10.    The Debtor seeks an order authorizing the Debtor to enter into the Capital Raise Process.

## V.  ARGUMENT AND AUTHORITY

### A.    Sound Business Reasons Exists to Approve the Capital Raise Process

11.    The Bankruptcy Code permits a debtor to sell its assets outside the ordinary course of business. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts have held that transactions should be approved under section 363(b)(1) when they are supported by a sound business reason. *See Committee of Equity*

*Security Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1071 (2d Cir. 1983); *see also In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1993); *In re Gulf State Steel, Inc. of Alabama*, 285 B.R. 497, 514 (Bankr. N.D. Ala. 2002). In reviewing such a proposed transaction, courts should give substantial deference to the business judgment of the debtor-in-possession or trustee. *See e.g., Esposito v. Title Inc. Co. of Pa.* (*In re Fernwood Mkts*), 73 B.R. 616, 621 n.2 (Bankr. E.D. Pa. 1987).

12. A debtor in possession is given these rights by section 1107(a) of the Bankruptcy Code. *See* 11 U.S.C. 1107(a). Moreover, section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

13. The Debtor submits that the Capital Raise Process satisfies the "sound business reason test" and represents a prudent and proper exercise of Debtor's business judgment.

### B. Sound Business Reasons Exist to Approve Issuance of Warrants

14. The Debtor respectfully submits that sound business reasons justify the approval of the Warrants.

15. The Warrants to be issued here would come at no cost to the Debtor's unsecured creditors because the Warrants would not add additional unsecured debt. In fact, Warrants bring more capital into the Debtor if exercised.

16. No previous request for relief sought herein has been made to this or any other Court.

### C. The Court Should Waive the Stay Period Required By Rule 6004(h) of the Federal Rules of Bankruptcy Procedure

17. Pursuant to Rule 6004(h) of the Bankruptcy Rules, unless the court orders otherwise, all orders authorizing the use of property pursuant to section 363 of the Bankruptcy

6

Code are automatically stayed for 14 days after entry of the order. Fed. R. Bankr. P. 6004(h). Debtor hereby requests a waiver of Rule 6004(h) for two primary reasons. First, the Debtor has a shareholder meeting scheduled for December 15, 2020 to start the Capital Raise Process. Second, Debtor believes that it is imperative and in its best interest to avoid delay in the competitive capital raise and any other parallel capital raising processes and therefore desires to conduct this process expeditiously. Specifically, Debtor respectfully requests that any order approving the Motion should be effective immediately by providing that the 14-day stay under Bankruptcy Rule 6004(h) is waived.

WHEREFORE, the Debtor respectfully requests that the Court enter an order authorizing the Debtor begin and conduct the Capital Raise Process, may any necessary adjustments that in the Debtors' reasonable business decision are necessary to implement the capital raise and granting the Debtor such other relief as the Court may deem just and proper.

Dated:  November 24, 2020.            Respectfully submitted,

s/ Esther McKean
Esther McKean, Esquire
Florida Bar No. 028124
AKERMAN LLP
420 S. Orange Ave., Suite 1200
Orlando, FL 32801
Phone: (407) 423-4000
Fax: (407) 843-6610
Email: esther.mckean@akerman.com
Counsel for Debtors and
Debtors-in-Possession

8

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of November, 2020, this Motion was filed and served through the Court's CM/ECF system and I caused the foregoing document to be served by first class mail, postage prepaid, on the following persons: Debtors, c/o Lance Friedman, 709 S. Harbor City Blvd., Suite 530, Melbourne, FL 32901 and to those parties shown on the attached matrix.

s/ Esther McKean<br>
Esther A. McKean, Esquire