**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:                                                    Case No.: 6:20-bk-3355-KSJ
                                                          Chapter 11
First Choice Healthcare Solutions, Inc. *et, al.*[1]
                                                          (Jointly Administered)
        Debtors.
_____/

**DEBTORS' AMENDED JOINT PLAN OF REORGANIZATION**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**



AKERMAN LLP

s/ Esther McKean
_____
Esther McKean, Esquire
Florida Bar No. 028124
AKERMAN LLP
420 S. Orange Ave., Suite 1200
Orlando, FL 32801
Phone: (407) 423-4000
Fax: (407) 843-6610
Email: esther.mckean@akerman.com


COUNSEL FOR DEBTORS AND
DEBTORS IN POSSESSION



January 7, 2021

_____

[1] The Debtors in these cases are: First Choice Healthcare Solutions, Inc., First Choice Medical Group of Brevard, LLC, FCID Medical, Inc., and Marina Towers, LLC. The address of all the Debtors is 709 S. Harbor City Blvd., Suite 530, Melbourne, FL 32901.

## INTRODUCTION

First Choice Healthcare Solutions, Inc., First Choice Medical Group of Brevard, LLC, FCID Medical, Inc., and Marina Towers, LLC, the above-captioned debtors and debtors in possession, propose the following joint plan of reorganization under section 1121(a) of the Bankruptcy Code.[1]

The Debtors' Chapter 11 Cases are being jointly administered pursuant to an order of the Court, and the Plan is being presented as a joint plan of reorganization of the Debtors. Claims against the Debtors (other than Administrative Claims and Fee Claims) are classified in Article VI hereof and treated in Article VIII hereof.

## I.

## DEFINITIONS AND CONSTRUCTION OF TERMS

### A.    Definitions

Unless otherwise defined herein, or the context otherwise requires, the following terms shall have the respective meanings set forth below:

| | |
|---|---|
| *Administrative Claim* | means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases of a kind specified under section 503(b) of the Bankruptcy Code and entitled to priority under section 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtors' Estates, any actual and necessary costs and expenses of operating the Debtors' business, any indebtedness or obligations incurred or assumed by the Debtors in Possession in connection with the conduct of their business, including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, all compensation and reimbursement of expenses to the extent awarded by the Court under sections 330, 331 or 503 of the Bankruptcy Code, any fees or charges assessed against the Debtors' Estates under section 1930 of chapter 123 of title 28 of the United States Code, and any Claim for goods delivered to the Debtors within twenty (20) days of the Petition Date and entitled to administrative priority pursuant to section 503(b)(9) of the Bankruptcy Code. |
| *Administrative Claims Bar Date* | means the date by which all Administrative Claims must be filed with the Court to be allowed. The Administrative Claims Bar Date will be established by the Court as a specific date prior to the Confirmation Date. |

---

[1] Capitalized terms used in this Introduction shall have the meanings ascribed to them herein below.

55951726;1

| | |
|---|---|
| *Allowed* | means, with reference to any Claim, (a) any Claim against any of the Debtors that has been listed by the Debtors in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent, and with respect to which no contrary proof of claim has been filed, (b) any Claim specifically allowed under the Plan, (c) any Claim that is not Disputed by the Claims Objection Deadline, (d) any Claim the amount or existence of which, if Disputed, (i) has been determined by a Final Order of a court of competent jurisdiction, or (ii) has been allowed by Final Order of the Court, or (e) any Claim which the Reorganized Debtors deem allowed, depending upon the party responsible for distribution under the Plan; provided, however, if the time to object to Claims has not expired, a Claim shall not be deemed allowed unless designated as such by the Reorganized Debtors; provided, however, that any Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Court shall not be considered "Allowed Claims" hereunder. |
| *Allowed Claim* | means a Claim (a) with respect to which a Proof of Claim has been filed with the Court in accordance with the provisions of Bankruptcy Code § 501 and Bankruptcy Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Final Order of the Court; (b) deemed filed pursuant to Bankruptcy Code § 1111(a) by virtue of such Claim having been scheduled in the list of Creditors prepared and filed by the Debtors with the Court pursuant to Bankruptcy Code § 521(1) and Rule 1007(b) and not listed as disputed, contingent, or unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Final Order of the Court. Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim pursuant to the provisions of the Plan or any Final Order of the Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed by the Debtors within any applicable period of limitation fixed by the Plan, by Rule 3003, or any Final Order of the Court, until such objection or proceeding has been overruled, dismissed, or settled by entry of a Final Order. Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes pursuant to the provisions of Rule 3018(a). Unless otherwise specified in the Plan or any Final Order of the Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise or arising subsequent to the Petition Date. |

| | |
|---|---|
| ***Avoidance Actions*** | means those certain claims or Causes of Action of the Estates arising out of or maintainable pursuant to sections 510, 542, 543, 544, 545, 547, 548, 550, or 551 of the Bankruptcy Code or under any other similar applicable law, regardless of whether or not such action has been commenced prior to the Effective Date. |
| ***Ballot*** | means each of the ballot forms distributed with the Plan to each Holder of an Impaired Claim (other than to Holders not entitled to vote on the Plan) upon which is to be indicated, among other things, acceptance or rejection of the Plan. |
| ***Bankruptcy Code*** | means Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as in effect on the date hereof. |
| ***Bankruptcy Rules*** | means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, and local rules of the Court, as the context may require. |
| ***Business Day*** | means any day on which commercial banks are open for business, and not authorized to close, in the City of New York, New York, except any day designated as a legal holiday by Bankruptcy Rule 9006(a). |
| ***Cash*** | means legal tender of the United States of America. |
| ***Causes of Action*** | means all claims (including those assertable derivatively), liabilities, obligations, suits, debts, sums of money, damages, demands, judgments, whether known or unknown, now owned or hereafter acquired by the Debtors, and the Cash and non-Cash proceeds thereof, whether arising under the Bankruptcy Code or other federal, state or foreign law, equity or otherwise, other than the Avoidance Actions or any claims or causes of action released pursuant to the terms of this Plan. |
| ***Chapter 11 Cases*** | means the chapter 11 cases commenced by the Debtors in the Middle District of Florida, Orlando Division. |
| ***Claim*** | means any claim, as such term is defined in section 101(5) of the Bankruptcy Code. |
| ***Claims Objection Deadline*** | means the first Business Day that is ninety (90) days after the Effective Date, or such other later date the Court may establish or pursuant to an order on a motion by the Reorganized Debtors which motion may be filed before or after such deadline and may be approved upon notice and a hearing. |
| ***Class*** | means a group of Claims or Equity Interests as classified under the Plan. |

| | |
|---|---|
| ***Class Action*** | means the case of *Maz Partners LP v. First Choice Healthcare Solutions Inc., et al., Case No. 6:19-cv-619-Orl*-40LHR, pending in the United States District Court, Middle District of Florida. |
| ***Class Action Settlement Documents*** | means the Stipulation and Agreement of Settlement, any related documents, and any agreements entered into in connection therewith or pursuant hereto or thereto and the orders of the Court and/or District Court in the Class Action in furtherance thereof. (As of the date of this Plan, the parties to the Class Action are drafting these documents.) |
| ***Class Period*** | means the period between April 1, 2014 and November 14, 2018, both dates inclusive. |
| ***Collateral*** | means any property or interest in property of the Debtors' Estates subject to a Lien to secure the payment or performance of a Claim, which Lien has not been avoided or is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law. |
| ***Confirmation Date*** | means the date on which the Confirmation Order is entered by the Court. |
| ***Confirmation Hearing*** | means the hearing to consider confirmation of the Plan pursuant to section 1128 of the Bankruptcy Code, as it may be adjourned or continued from time to time. |
| ***Confirmation Order*** | means the order entered by the Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code. |
| ***Court*** | means, (a) the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, having jurisdiction over the Chapter 11 Cases; (b) to the extent there is no reference pursuant to section 157 of title 28 of the United States Code, the United States Bankruptcy Court for the Middle District of Florida, Orlando Division; and (c) any other court having jurisdiction over the Chapter 11 Cases or proceedings arising therein. |
| ***D&O Insurance Contributor*** | means XL Specialty Insurance Company. |
| ***D&O Policy*** | means the insurance policy that would be obligated to pay the settlement of the Class Action upon approval by the Court and/or District Court approved settlement of the Class Action. |

4

| | |
|---|---|
| ***D&O Protected Parties*** | means the Defendants of the Class Action and their current and former parents, affiliates, subsidiaries, officers, directors, agents, representatives, successors, predecessors, assigns, assignees, partnerships, partners, principals, employees, trustees, trusts, immediate family members, insurers including but not limited to Defendants' Insurer, reinsurers, professional advisors, and attorneys, in their capacities as such, and such others as is usual and customary. |
| ***Debtors*** | means First Choice Healthcare Solutions, Inc., First Choice Medical Group of Brevard, LLC, FCID Medical, Inc., and Marina Towers, LLC. |
| ***Debtors in Possession*** | means the Debtors in their capacity as debtors in possession in the chapter 11 Cases pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. |
| ***Disposable Income*** | shall have the same definition and meaning as the same term is defined under 11 U.S.C. § 1191(d).  For purposes of determining disposable income, all payments provided for under this Plan are expenses reasonably necessary to be expended for the maintenance, support, continuation, preservation and operation of the Debtors' business, as well as payments and reserves by the Debtors for capital expenditures, expenses to grow the business and other expenses reasonably anticipated to improve the Debtors' profitability and efficiency. |
| ***Disputed*** | means, with reference to any Claim, (a) any Claim, (i) proof of which was not timely or properly filed and that has been or hereafter is listed on the Schedules as unliquidated, disputed or contingent, or (ii) for which a proof of claim was required, but as to which a proof of claim was not timely or properly filed; or (b) any Claim as to which the Debtors or any other party in interest has filed an objection or request for estimation on or before such limitation period fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Court, except to the extent that such objection or request for estimation is withdrawn or determined by a Final Order in favor of the Holder of such Claim. |
| ***Distributions*** | means the distribution in accordance with this Plan to Holders of Allowed Claims. |
| ***District Court*** | means the United States District Court, Middle District of Florida, Orlando Division. |
| ***Effective Date*** | means the first Business Day thirty (30) days after entry of a Confirmation Order; provided, however, that if a stay of the Confirmation Order is in effect on such date, the Effective Date will be the first Business Day after such stay is no longer in effect. |

55951726;1

| | |
|---|---|
| ***Equity Interest or Interest*** | means any equity security within the meaning of section 101(16) of the Bankruptcy Code or any other instrument evidencing an ownership interest in any of the Debtors, whether or not transferable, and any option, warrant, or right, contractual or otherwise, to acquire, sell or subscribe for any such interest. |
| ***Estates*** | means the estates of the Debtors, individually or collectively, as is appropriate in the context created in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code. |
| ***FCHS*** | means the Debtor First Choice Healthcare Solutions, Inc. |
| ***Fee Claims*** | means an Administrative Claim under section 330(a), 331 or 503 of the Bankruptcy Code for compensation of a Professional or other Person for services rendered or expenses incurred in the Chapter 11 Cases on or prior to the Effective Date (including reasonable expenses of the members of the Creditors Committee incurred as members of the Creditors Committee in discharge of their duties as such). |
| ***Final Order*** | means an order or judgment of the Court, or other court of competent jurisdiction, as entered on the docket of such Court, the operation or effect of which has not been stayed, reversed, vacated or amended, and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal, petition for certiorari, or seek review or rehearing has expired and as to which no appeal, petition for certiorari, or petition for review or rehearing was filed or, if filed, remains pending. |
| ***General Unsecured Claim*** | means a Claim against any of the Debtors that is not otherwise classified and a Class Action Claimant who has completed an Opt-Out Form and filed a Proof of Claim pursuant to Class Action procedures established by the Court and in the event the Court does not approve the Class Action Settlement Documents, those parties in the purported Class Action class who have an Allowed Claim. |
| ***Governmental Unit*** | has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code. |
| ***Holder*** | means the holder of a Claim or Interest, as applicable. |
| ***Impaired*** | means, when used with reference to a Claim, a Claim that is impaired within the meaning of section 1124 of the Bankruptcy Code. |
| ***Indemnification Obligation*** | means any obligation of any of the Debtors to indemnify, reimburse, or provide contribution pursuant to charter, by-laws, contract, or otherwise; provided, however, that such term shall not include any obligation that constitutes a subordinated Claim. |

55951726;1

| | |
|---|---|
| ***Initial Distribution Date*** | means the date of the first distribution by the Debtors or the Reorganized Debtors as applicable, to a particular class of creditors. |
| ***Insider*** | has the meaning set forth in section 101(31) of the Bankruptcy Code. |
| ***Intercompany Claims*** | means any Claim held by one of the Debtors against any other Debtor, including, without limitation, (a) any account reflecting intercompany book entries by such Debtor with respect to any other Debtor, (b) any Claim not reflected in book entries that is held by such Debtor, and (c) any derivative Claim asserted or assertable by or on behalf of such Debtor against any other Debtor. |
| ***Lien*** | has the meaning set forth in section 101(37) of the Bankruptcy Code. |
| ***Ongoing Trade Claim*** | means any General Unsecured Claim that is an obligation of the Debtors to third-party providers of goods and services to the Debtors that facilitate the Debtors' operations in the ordinary course of business and will continue to do so after the emergence from the Chapter 11 Cases and are identified on **Exhibit A** hereto. |
| ***Opt-Out Election*** | means Holders of Class Action Claims who elect not to accept the proposed treatment provided in the Class Action Settlement Documents. |
| ***Person*** | means any individual, corporation, partnership, limited liability company, association, indenture trustee, organization, joint stock company, joint venture, estate, trust, Governmental Unit or any political subdivision thereof, or any other entity. |
| ***Petition Date*** | means June 15, 2020. |
| ***Plan*** | means this Plan, as it may be amended or modified from time to time, together with all addenda, exhibits, schedules or other attachments, if any. |
| ***Plan Interest Rate*** | means simple interest at the rate of 3% per annum. |
| ***Plan Payments*** | means payments made by the Debtors pursuant to the terms of the Plan. |
| ***Priority Claim*** | means a Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code including, without limitation, certain allowed employee compensation and benefit claims of the Debtors' employees incurred within one hundred eighty (180) days prior to the Petition Date and all claims for taxes. |

| | |
|---|---|
| ***Professional*** | means (i) any professional employed in the Chapter 11 Cases pursuant to section 327, 328 or 1103 of the Bankruptcy Code and (ii) any professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b) of the Bankruptcy Code. |
| ***Pro Rata*** | means, with respect to any Claim, at any time, the proportion that the amount of a Claim in a particular Class bears to the aggregate amount of all Claims (including Disputed Claims) in such Class, unless in each case the Plan provides otherwise. |
| ***Released Parties*** | has the meaning assigned to such term in Article XIII of the Plan. |
| ***Reorganized Debtors*** | means the Debtors, or any successors thereto by merger, consolidation, or otherwise, on and after the Effective Date. |
| ***Scheduled*** | means, with respect to any Claim or Equity Interest, the status and amount, if any, of such Claim or Equity Interest as set forth in the Schedules. |
| ***Schedules*** | means the schedules of assets and liabilities, statements of financial affairs, and lists of Holders of Claims and Equity Interests filed with the Court by each of the Debtors, including any amendments or supplements thereto. |
| ***Secured Claims*** | means any Claim (other than claims held by taxing authorities) to the extent reflected in the Schedules or a proof of claim filed as a Secured Claim, which is secured by a Lien on Collateral) to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to setoff under section 553 of the Bankruptcy Code, to the extent of such setoff. |
| ***Subchapter V Trustee*** | means Aaron R. Cohen who was appointed pursuant to 11 U.S.C. § 1183. |

## B.  Interpretation, Application of Definitions and Rules of Construction

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter, such meanings to be applicable to both the singular and plural forms of the terms defined. Capitalized terms in the Plan that are not defined herein shall have the same meanings assigned to such terms by the Bankruptcy Code or Bankruptcy Rules, as the case may be. The words "herein," "hereof," and "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section or subsection in the Plan unless expressly provided otherwise. The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration,

55951726;1

clarity or specificity and do not in any respect qualify, characterize or limit the generality of the class within which such things are included. Captions and headings to articles, sections and exhibits are inserted for convenience of reference only, are not a part of this Plan, and shall not be used to interpret this Plan. Any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, and any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented. The rules of construction set forth in section 102 of the Bankruptcy Code (except for section 102(5)) shall apply to this Plan. In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## II.

## BRIEF HISTORY OF THE DEBTORS

### A.    <u>The Debtors' Businesses</u>

The Debtors have historically been one of the preferred orthopedic surgical and physical therapy providers in Brevard County, Florida, providing a comprehensive fully integrated service offering of orthopedic medicine specializing in orthopedics, orthopedic surgical management, including spine, hip and joint replacement and repair, spine surgery, neurology interventional pain management and related diagnostics.[2]

First Choice Healthcare Solutions, Inc. is a Delaware corporation and is the parent company of the affiliate debtors. First Choice Healthcare Solutions, Inc. was registered with the U.S. Securities and Exchange Commission but is no longer subject to the reporting requirements of Section 13 of the Securities Exchange Act of 1934, and has filed its Form 15 to delist from its publicly traded exchange.

Medical care to patients is provided by First Choice Medical Group of Brevard, LLC. This Debtor employs those individuals that hold proper medical licenses and are authorized to have a billing number for the services provided to patients. Currently First Choice Medical Group of Brevard, LLC employs one medical doctor, one physician assistants/advanced registered nurse practitioners, seven physical and occupational therapists, four medical assistants, x-ray technicians and MRI technicians. First Choice Medical Group of Brevard, LLC relies on payments from the following entities in the approximate amounts: (a) Commercial private insurance companies - 62%; (b) Workers' Compensation carriers - 5%; and (c) Medicare - 33%.

FCID Medical, Inc. employs all non-licensed / non-billing medical staff such as front desk staff and medical billing specialists and owns fixed assets.

Marina Towers, LLC is a Florida limited liability company created in 2003. Marina

---

[2] Including but not limited to treatment relating to arthritis, arthroscopic knee surgery, carpal tunnel, fractures, herniated discs, hip replacement, joint injections, joint pain, knee replacement, knee surgery, rotator cuff repair, shoulder pain, sports injury and sports medicine.

Towers, LLC is the master lessee for the Debtors' principal location at 709 South Harbor City Blvd., Melbourne Florida 32901.

### B.    The Debtors' Corporate Structure

The Debtors' corporate structure is demonstrated below:



Following the commencement of the case, on June 25, 2020 a new Board for First Choice Healthcare Solutions, Inc. was seated.  The operations of the Reorganized Debtors will continue to be overseen by the Debtors' Chief Executive Officer, Lance Friedman, Chief Financial Officer, Phil Keller and Eric Weiss as Chief Operating Officer.

### C.    Class Action

FCHS was a defendant in a putative class action lawsuit pending in the United States District Court for the Middle District of Florida, Orlando Division as of the Petition Date, styled *MAZ Partners LP v. First Choice Healthcare Solutions, Inc.*, Case No. 6:19-cv-00619-PGB-LRH (defined above as the "**Class Action**").  In the Class Action, no class was certified prior to the Petition Date.  The Class Action alleges that FCHS and Christian Romandetti, Sr. (FCHS's founder and former Chief Executive Officer) (together, "**Defendants**") made false and/or misleading statements.  Lead Plaintiff and Defendants disagree on whether investors could have prevailed at trial, and if so, the amount of damages that would have been awarded.  Defendants have expressly denied, and continue to deny, all allegations of wrongdoing or liability.

The parties in the Class Action have reached a proposed settlement (the "**Settlement**"), as outlined in the Class Action Settlement Documents,[3] whereby a class will be approved for settlement purposes only.  The proposed class consists of individuals or entities which purchased or otherwise acquired FCHS common stock between April 1, 2014, and November 14, 2018,

---

[3] Capitalized terms not otherwise defined are defined in the Class Action Settlement Documents.

inclusive, did not sell all such securities before November 14, 2018, and are not otherwise excluded pursuant to the Class Action Settlement Documents (the "**Settlement Class**").

FCHS obtained approval from the Bankruptcy Court to lift the automatic stay so as to permit the *MAZ Partners* Action to return to the District Court to effectuate the Settlement process in an efficient manner. Following that approval, on December 7, 2020, the Parties filed in the District Court a Joint Notice of Bankruptcy Court Order (A) Approving Defendants' Entry Into the Settlement Agreement and (B) Lifting Automatic Stay to Allow the Parties to Seek Approval of and Perform the Settlement Agreement, which attached the Bankruptcy Court's November 25, 2020 Order Granting Debtor First Choice Healthcare Solutions, Inc.'s Motion Pursuant to Section 362 of the Bankruptcy Code and Bankruptcy Rule 9019 (A) Granting Limited Relief from Automatic Stay and (B) Approving Debtor's Entry into the Settlement Agreement Regarding the Pending Class Action Lawsuit in the Middle District of Florida and Authorizing Debtor to Perform the Obligations Thereunder.

On December 28, 2020, Lead Plaintiff filed a motion for preliminary approval of the Settlement in the District Court. Assuming that the District Court grants preliminary approval, notice of the Settlement will be sent pursuant to the Class Action Settlement Documents and potential Settlement Class Members will have the ability to submit claim forms, exclude themselves from the Settlement, lodge objections to the Settlement, or do nothing. The notice also advises potential Settlement Class Members of FCHS' bankruptcy and related implications. The District Court will ultimately rule as to whether to finally approve the Settlement.

If approved by the District Court, $1,000,000 will be paid by XL Specialty Insurance Company ("**XL Specialty**") to resolve the Class Action, from which claims of Settlement Class Members, as well as legal fees and other costs in connection with the Class Action, will be deducted. Prior to the commencement of the *MAZ Partners* Action, XL Specialty issued Policy Number ELU155222-18 (the "**Policy**") to the Debtor, under which the Debtor's current and former individual officers and directors, employees, managers, and/or control persons (collectively, the "**Executives**"), as well as the Debtor, are insureds.

The proposed Settlement provides that if a purported class member does not exclude himself from the Settlement, he will be a Settlement Class Member. In that respect, Settlement Class Members who timely and properly file Proof of Claim and Release Forms and are determined to be Authorized Claimants can receive payment from the Net Settlement Fund. The Net Settlement Fund will be distributed on a *pro rata* basis to Authorized Claimants as described in the Class Action Settlement Documents. If the Settlement Class is preliminarily certified by the District Court, Lead Plaintiff and Lead Counsel will file a bankruptcy proof of claim on behalf of the Settlement Class.

If a purported class member does not want a payment from this Settlement, but wants to keep any right he may have to sue or continue to sue Defendants on his own about the Settled Claims, then he must take steps to exclude himself, or, as it is sometimes referred to, he must "opt out" of the Settlement Class. If a purported class member opts-opt, he may file a bankruptcy Proof of Claim, which the Debtors will likely object to, requiring the Bankruptcy Court to conduct a trial on the merits of each claim in Orlando, Florida where each claimant will have the burden to prove the validity of its claim (and cannot rely on the Settlement as proof). In advance of the trial, FCHS

may serve discovery on each claimant and may take each claimant's deposition to determine the validity of each claim.  At the conclusion of the trial, the Bankruptcy Court may determine the claim is zero.  Even if the Bankruptcy Court determines that the bankruptcy proof of claim is an allowed claim, a claimant will likely not receive the full amount of the claim because general unsecured claims will share *pro rata* as set forth in the Plan.

The District Court has not yet approved the Settlement in the Class Action.  Payments will be made only if the Settlement in the Class Action is finally approved.

### D.    Derivative Action

Prior to the Petition Date, a complaint was filed (the "**Derivative Complaint**"), by Jelena Zurilo (the "**Derivative Plaintiff**") commencing a purported shareholder derivative action (the "**Derivative Action**") against certain of the present or former officers and directors of the Debtor, on behalf of the Debtor: *Jelena Zurilo, derivatively on behalf of First Choice Healthcare Solutions, Inc. v. Christian C. Romandetti, Phillip J. Keller, Gary Augusta, Donald A. Bittar, James Renna, Sheila H. Schweitzer, Mark Burnett, Jeffrey Miller, Frank Sarro, Anthony Vassallo, and Elite Stock Research, Inc.*, pending in the Middle District of Florida, Orlando Division, Case No. 6:20-cv-00387-PGB-LRH.  The Derivative Action alleged securities law violations, breaches of fiduciary duties, and unjust enrichment (the "**Derivative Claims**").

Christian C. Romandetti, Sr., Phillip J. Keller, Gary Augusta, Donald A. Bittar, James Renna, and Sheila H. Schweitzer (each an "**Individual Defendant**" and collectively the "**Individual Defendants**") are Executives who were named as defendants in the Derivative Action.  Prior to the Petition Date, Christian C. Romandetti, Sr., Phillip J. Keller, Gary Augusta, James Renna, and Sheila H. Schweitzer (collectively, the "**Settling Individual Defendants**"), XL Specialty, the Debtor, and the Derivative Plaintiff engaged in mediation with Simone Lelchuk, a mediator at JAMS.  Following good faith, arm's length negotiations, the parties reached an agreement (the "**Derivative Settlement**"), to settle the Derivative Action, subject to District Court approval.  However, these parties did not obtain District Court approval by the Petition Date.

On October 20, 2020, the parties sought Bankruptcy Court Approval of the Derivative Settlement, pursuant to the terms and conditions set out in a certain *Settlement Agreement and Release* (the "**Derivative Settlement Agreement**").  The Bankruptcy Court approved the Derivative Settlement wherein *inter alia*, the Debtors received $79,518.29.  On December 28, 2020, the District Court entered an order dismissing the Derivative Action with prejudice

### E.    Equipment Leases / Debt Struture

As of December 31, 2020, the Debtors' secured obligations relating to certain medical equipment lease(s) are as follows:

| Secured Creditor | Obligor | Total Owed as of December 31, 2020 | Monthly Payment | Term | Security Interest |
|---|---|---|---|---|---|
| U.S. Bank Equipment Finance | First Choice Medical Group of Brevard, LLC<br><br>Guaranteed by First Choice Healthcare Solutions, Inc. | $77,059.46 | $2,251.19 | 5 years – with approx. 34 months remaining | Ultrasound System |
| GE Healthcare Financial Services | First Choice Medical Group of Brevard, LLC | $13,952.61 | | | Proteus XRay system |

The Debtors contest GE Healthcare Financial Services' claim and lien rights.

Any and all other assets of the Debtor (aside from the above-referenced equipment financing), including without limitation, equipment, cash and cash equivalents, accounts receivable, tradename and goodwill, IP, and inventory are encumbered with a first priority lien securing the Senior Secured Convertible Note financing, more particularly described below of which the Debtor has subscriptions for $500,000.00 USD and has disbursed from escrow to its operating accounts for general working capital as of December 31, 2020 $292,500 reserving in escrow a balance of $7,500.00.

F.    **Taxes**

The Debtors are current on filing their federal tax returns.  The Internal Revenue Service filed Claim No. 10-1 as to First Choice Medical Group of Brevard, LLC in the amount of $2,250 for Benefit Plan for tax period 2018.  The Internal Revenue Service filed Claim No. 7-1 as to First Choice Healthcare Solutions, Inc. in the amount of $218,545.81 alleging $210,545.81 is secured as to all of Debtor's right, title and interest to property pursuant to 26 U.S.C. § 6321 relating to corporate income tax for tax period 2016 and $8,000 is unsecured relating to estimated corporate income tax for tax period 2019.

The Debtors file taxes on a consolidated basis and our owed a tax refund from the Internal Revenue Service in the amount of $111,949.  The Internal Revenue Service has not asserted any set-off rights, although the Internal Revenue Service may in the future seek to offset such refund amounts due against taxes owed in arrears.

### G.    Debtors' Annual Gross Revenues

The Debtors' historical gross revenues are as follows:

1.    First Choice Healthcare Solutions, Inc.

| | |
|---|---:|
| 2020<br>(Estimated YTD – Gross receipts or sales | $340 |
| 2019<br>(Estimated – Gross receipts or sales) | $41,908 |
| 2018<br>(Gross Receipts or sales) | $64,861 |

2.    First Choice Medical Group of Brevard, LLC

| | |
|---|---:|
| 2020<br>(Estimated YTD – Gross receipts or sales | $2,657,367 |
| 2019<br>(Estimated – Gross receipts or sales) | $10,101,539 |
| 2018<br>(Gross Receipts or sales) | $13,557,608 |

3.    FCID Medical, Inc.

| | |
|---|---:|
| 2020<br>(Estimated YTD – Gross receipts or sales | $42 |
| 2019<br>(Estimated – Gross receipts or sales) | $50 |
| 2018<br>(Gross Receipts or sales) | $20 |

4.    Marina Towers, LLC

| | Including Intercompany Transfers | Excludes Intercompany Transfers |
|---|---:|---:|
| 2020<br>(Estimated YTD – Gross receipts or sales | $1,717,821 | $412,819 |
| 2019<br>(Estimated – Gross receipts or sales) | $1,781,693 | $682,882 |
| 2018<br>(Gross Receipts or sales) | $1,756,495 | $986,121 |

### H.    Assets / Cash

The Debtors' assets mainly consist of medical supplies and equipment and leasehold interests in five (5) locations.

14

As of December 31, 2020, the Debtors had approximately $341,596 total in their bank accounts.

## I.   Leases

The Debtors' main office is located at 709 South Harbor City Blvd. Suite 530, Melbourne Florida 32901, which they lease from GMR Melbourne, LLC.  The main office consists of five occupiable floors, with an additional parking level floor. The Debtors have satellite locations throughout Brevard County for providing care to patients. The Debtors currently, in addition to their main office, lease four (4) satellite locations in Viera, Indian Harbor Beach, Palm Bay and Mico, Florida. The Debtors intend to assume those non-residential leases.

As of December 31, 2020, the Debtors lease obligations are summarized as follows:

| Landlord | Address | Expiration | Base Rent | Cam Rate | Real Estate Tax | Sales Tax | Total |
|---|---|---|---|---|---|---|---|
| CBL - West Melbourne Town Center West Melbourne Town Center, LLC P.O. Box 531794 Atlanta, GA 30353-1794 | 4311 Norfolk Pkwy. Ste 116 West Melbourne, FL 32904 | 12/31/2023 | 6,908.00 | 1,729.88 | 826.08 | 615.16 | **10,079.12** |
| Global Medical Reit 2 Bethesda Metro Center, Suite 440 Bethesda, MD 20814 | 709 S. Harbor City, Blvd. Melbourne, FL 32901 | 3/1/2026 | 97,690.72 | - | 8,251.16 | 6,886.23 | **112,828.11** |
| Indian River Fitness 8000 Ron Beatty Blvd. Ste A1 Micco, FL 32976 | 8000 Ron Beatty Blvd. Ste A1 Micco, FL 32976 | 5/31/2021 | 800.08 | - | - | 52.01 | **852.09** |
| Leon Bankier LP 2425 Pineapple Avenue Suite 108 Melbourne, FL 32935 | 5445 Murrell Rd Ste 105 & 106 Rockledge, FL 32955 | 3/31/2025 | 4,084.00 | 1,516.67 | | 364.04 | **5,964.71** |
| TLR of Brevard, LLC | 2030 S. Patrick Dr. Indian Harbor Beach, FL 32937 | 3/31/2022 | 11,000.00 | | | 715.00 | **11,715.00** |
| | **Total** | | **120,482.80** | **1,516.67** | **9,077.24** | **8,632.44** | **141,439.03** |

H.    **Truist PPP Loan Claim**

As a result of the COVID-19 pandemic, FCHS, FCID and FCMG obtained unsecured "Payment Protect Act" loans from Truist Bank in the original principal amount totaling $1,387,598.70 (collectively the "**PPP Loan**"). The SBA fully guaranteed the PPP Loan. The Debtors are not required to make payments under the PPP Loan Documents at this time. The Debtors believe they have met all of the requirements for the PPP Loan to be fully forgiven in accordance with the current SBA regulations. In the unlikely event that the PPP Loan is not forgiven, FCHS, FCID and FCMG will pay the PPP Loan in accordance with the PPP Loan Documents, as set forth in the Plan.

## III.

## EVENTS LEADING TO THE BANKRUPTCY FILING

As of the Petition Date, First Choice Healthcare Solutions, Inc. and First Choice Medical Group of Brevard, LLC were defendants in multiple lawsuits filed in the Chancery Court of Delaware, Brevard County, Florida, Middle District of Florida, Orlando Division and Cook County, Illinois. A brief summary of some of the lawsuits follows.

Steward Health Care System LLC ("**Steward**") filed a Verified Complaint on February 25, 2020 in the Court of Chancery of the State of Delaware on two counts of breach of contract relating to a Stock Purchase Agreement with First Choice Healthcare Solutions, Inc. Steward alleges that by virtue of the Stock Purchase Agreement it acquired shares of common stock of First Choice Healthcare Solutions, Inc. amounting to a 15.5% equity interest in the company in exchange for $7,500,000, along with a Put Option. Steward is seeking liquidated damages relating to First Choice Healthcare Solutions, Inc.'s alleged failure to comply with SEC Rule 144. The Debtors via the Plan reject the Stock Purchase Agreement.

On December 20, 2019, VIA Acquisition Corp. filed a Verified Complaint Pursuant to 8 Del. C. § 211 against First Choice Healthcare Solutions, Inc. in the Court of Chancery of the State of Delaware. Via Acquisition Corp. alleges it is the owner of 90,000 shares of First Choice Healthcare Solutions, Inc. and is seeking pursuant to 8 Del. C. § 211(c) that First Choice Healthcare Solutions, Inc. hold an annual meeting of the stockholders. The meeting is currently scheduled for June 25, 2020. First Choice Healthcare Solutions, Inc. will be filing a motion seeking emergency relief from this Court relating to the holding of the annual meeting.

Pending in the Middle District of Florida, Orlando Division, is the suit of *Maz Partners LP, individually and on behalf of all other similarly situated v. First Choice Healthcare Solutions, Inc. and Christian Romandetti, Sr.*, Case No. 6:19-cv-00619-PGB-LRH. Maz Partners, LP filed a class action alleging violation of federal securities law. *See* Article II herein for more detail.

Also pending in the United States District Court for the Middle District of Florida, Orlando Division, was the case of *Jelena Zurilo, derivatively on behalf of First Choice Healthcare Solutions, Inc. vs. Christian C. Romandetti, et al.*, Case No. 6:20-cv-00387-PGB-LRH. *See* Article II herein for more detail.

16

Steve and Tracy Ryland filed suit in the Circuit Court of Brevard County, initiating Case No. 05-2016-CA-46220 naming as the sole Defendant Beachside Physical Therapy, Inc. ("**Beachside**"). Beachside filed a counterclaim against Steve Ryland, Tracy Ryland, Christian C. Romandetti and First Choice Medical Group of Brevard, LLC. Beachside in its counterclaim seeks damages in excess of $5,000,000 for tortious interference, violation of Florida's Deceptive and Unfair Trade Practices Act and civil conspiracy.

Kris Romandetti and Leading Edge Medical Consulting, LLC filed suit in the Circuit Court of Brevard County, Florida, initiating Case No. 05-2019-CA014669 against First Choice Healthcare Solutions, Inc. alleging breach of contract, unpaid wages and unjust enrichment seeking damages of $278,000.

On May 20, 2020, Medline Industries filed a complaint against First Choice Healthcare Solutions, Inc. in Cook County, Illinois, alleging breach of an agreement. Relating to Crane Creek Surgical Partners of Melbourne, FL a company that FCHS had a 65% ownership in prior to filing bankruptcy.

The main goals of the Debtors in filing these Chapter 11 Cases was to confirm a plan of reorganization that will assure a fair distribution of the Debtors' assets to its creditors, attempt to bring as many assets in the form of settlements with the Debtors' various claimants into the estate, and also establish a claims resolution process to resolve the securities arbitration and litigation claims in a fair and cost-effective manner.

### IV.

### SIGNIFICANT EVENTS IN THE CHAPTER 11 CASE

### A.     Filing of Petition

As set forth above, the Debtors filed Voluntary Petitions for Relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida, Orlando Division on June 15, 2020.

### B.     Applications to Employ Professionals

*Akerman LLP* On July 6, 2020, the Debtors filed an Application for Authorization to Employ Akerman LLP as Counsel for Debtors in Possession, and on July 21, 2020, the Court entered its final order approving the Application.

*Trenam, Kemker, Scharf, Fry, O'Neil & Mullis, P.A.* On August 31, 2020, the Debtors filed an Application for Authority to Employ *Trenam, Kemker, Scharf, Fry, O'Neil & Mullis, P.A.* as Special Counsel, and on October 1, 2020, the Court entered its order approving the Application.

*Sichenzia Ross Ference, LLP* On December 1, 2018, the Debtors filed an Application for Authority to Employ Sichenzia Ross Ference, LLP as Special Securities Counsel, and on December 10, 2020, the Court entered its order approving the Application.

17

### C.    Settlement of Claims

Prior to and throughout the Bankruptcy Case, resolutions have been reached on a number of claims.

1.    *Maz Partners LP, individually and on behalf of all other similarly situated v. First Choice Healthcare Solutions, Inc. and Christian Romandetti, Sr.*, Case No. 6:19-cv-00619-PGB-LRH, filed in the Middle District of Florida, Orlando Division.  Maz Partners, LP filed a class action alleging violation of federal securities law.  *See* Article II herein for more detail on the terms of the proposed settlement.

2.    *Jelena Zurilo, derivatively on behalf of First Choice Healthcare Solutions, Inc. vs. Christian C. Romandetti, et al.*, Case No. 6:20-cv-00387-PGB-LRH, filed in the Middle District of Florida, Orlando Division.  *See* Article II herein for more detail on the terms of the proposed settlement.

3.    *First Choice Healthcare Solutions, Inc., First Choice Medical Group of Brevard, LLC, and FCID Medical, vs. CT Capital Ltd. d/b/a CT Capital, LP*, Adversary Proceeding No. 6:20-ap-087-KSJ, filed in this Bankruptcy Case.  Suit was resolved by Defendant amending their proof of claims as unsecured claims.

4.    *Winne Florabel Quiapo Truner v. First Choice Medical Group of Brevard, LLC et al.*, filed in the Circuit Court of the Eighteenth Judicial Circuit in and for Brevard County, Florida, Case No. 05-2020-CA-021941.  The Debtor was dropped from this lawsuit.

5.    *Eleanor N. Torres and Hector Luis Torres v. First Choice Medical Group of Brevard, LLC et al.* filed in the Circuit Court of the Eighteenth Judicial Circuit in and for Brevard County, Florida, Case No. 05-2020-CA-38063.  The Debtor was dropped from this lawsuit.

### D.    Beachside Physical Therapy, Inc.

In October of 2016, Steve and Tracy Ryland sued Beachside Physical Therapy, Inc. ("**Beachside**") to collect unpaid rent and to evict Beachside from property they owned. This action (Case No. 05-2016-CA-046220) filed in the Circuit Court of Brevard County, Florida is what is now referred to in the bankruptcy proceedings as the "**Beachside Litigation**."  In November of 2016, Beachside filed a Counterclaim against the Rylands claiming breach of contract (based on failure to pay a promissory note), seeking an injunction to prevent Mr. Ryland from competing with Beachside and seeking damages from Ms. Ryland for alleged tortious interference with Mr. Ryland's agreements with Beachside. In April of 2018, OptimisCorp joined Beachside in filing a Second Amended Counterclaim, this time naming Christian Romandetti and FCMG as Counterdefendants.   Therein, they claimed FCMG tortiously interfered with the SPA and Confidential Settlement Stipulation and violated Florida's Deceptive and Unfair Trade Practices Act.  In October of 2018, OptimisCorp and Beachside filed a Third Amended Counterclaim, alleging that Mr. Romandetti and FCMG tortiously interfered with the SPA and the Confidential Settlement Stipulation, violated Florida's Deceptive and Unfair Trade Practices Act and conspired with the Rylands to aid Mr. Ryland in violating his agreements.  On January 30, 2019, the court

entered an order finding that, because of the language in the Confidential Settlement Stipulation, the SPA and the restrictive covenants therein were governed by Florida law. The judge did conclude, however, that the Consulting Agreement was governed by California law and unenforceable. Finally, in January of 2020, OptimisCorp and Beachside filed a Fourth Amended Counterclaim, alleging that Mr. Romandetti and FCMG tortiously interfered with the SPA, violated Florida's Deceptive and Unfair Trade Practices Act, conspired with the Rylands to aid Mr. Ryland in violating his agreements and should be enjoined from competing with them based on an injunction previously entered against the Rylands.[4] Three of the four counts have been answered and a motion to dismiss by FCMG remains pending as to the fourth count which seeks injunctive relief.

On August 13, 2020, Beachside improperly filed Claim 10 in these Chapter 11 Cases against First Choice Healthcare Solutions, Inc. Instead of filing its claim against the named Counterclaim Defendant in the Beachside Litigation, Beachside filed it against the Debtor. Claim 10 asserts a general unsecured claim in the amount of $8 million against the Debtor for amounts allegedly owed as a result of alleged wrongdoing as set forth in the Fourth Amended Counterclaim. Beachside amended its claim. The Debtors objected to Beachside's claim.

On November 17, 2020, Beachside filed a Complaint for Declaratory Judgment initiating an adversary proceeding against First Choice Healthcare Solutions, Inc., and First Choice Medical Group of Brevard, LLC, XL Specialty Insurance Company ("**XL Specialty**"), Steve Ryland ("**Ryland**") and Christian C. Romandetti ("**Romandetti**"), and assigned Adversary Proceeding No. 6:20-ap-00113-KSJ. The adversary "seeks a declaratory judgment against XL Specialty, that Beachside's claims related to the dispute between Beachside, FCMG, Ryland and Romandetti are covered under XL Specialty's policy and that Beachside's claims is not barred by material prejudice due to FCHS or FCMG, including their respective current or former officers or directors, and/or Romandetti not providing timely notice to XL Speciality of Beachside's claim."

### E.    Chapter 11 Administration

***Schedules and Statement of Financial Affairs.*** The Debtors filed their Schedules and Statement of Financial Affairs on October 10, 2017, amending those documents from time to time, as needed, and as further described herein.

***341 Meetings with Creditors.*** The Section 341 meeting of creditors was held on July 13, 2020 and continued to August 10, 2020. The 341 meeting of creditors was concluded on August 10, 2020.

***Claims Bar Date.*** The Bankruptcy Court fixed August 24, 2020, as the deadline for the filing of Proofs of Claim. Said deadline was extended for certain creditors who were impacted by amended Schedules for an additional twenty-one (21) days.

---

[4] This injunction has since been dissolved. Both the order granting and the order dissolving the injunction were appealed to the Fifth District Court of Appeals.

### E. Sale of Assets

***Sale of LOP.*** On October 2, 2020, First Choice Medical Group of Brevard, LLC filed a motion to sell certain accounts receivable consisting of eight (8) letters of protection ("LOP") free and clear of liens, claims and encumbrances and other interests to Omni Healthcare Financial, LLC ("**Omni**"). Omni was not an insider of the Debtors. The Court approved the sale to Omni for $97,387.05.

***Sale of FF&E.*** On November 9, 2020, FCID Medical, Inc. filed a Motion to Sell Certain Property Free and Clear of all Liens, Claims and Encumbrances certain unused pieces of equipment via an online auction with the assistance of Ewald Auctions, which the Bankruptcy Court granted. The sale generated net proceeds of $26,803.49.

### F. Leases

The Debtors' main office is located at 709 South Harbor City Blvd. Suite 530, Melbourne Florida 32901, which they lease from GMR Melbourne, LLC. The main office consists of five occupiable floors, with an additional parking level floor. The Debtors have satellite locations throughout Brevard County for providing care to patients.

On July 15, 2020, First Choice Medical Group of Brevard, LLC filed a Motion to Reject Lease for its satellite locations at 6300 North Wickham Road, Suite 101, Melbourne, Florida 32940 and 255 N. Sykes Creek Parkway, Merritt Island, FL, Suite 103. The Court approved rejection of the leases.

The Debtors currently, in addition to their main office, lease four (4) satellite locations in Viera, Indian Harbor Beach, Palm Bay and Mico, Florida. The Debtors intend to assume those non-residential leases.

During the pendency of the Bankruptcy Cases, the Debtors have located a subtentant for its main office location. The Bankruptcy Court approved a lease of the entire fourth floor to Systems Technology Research, LLC with an initial term of ten years, with an escalating base rent over the initial term at the one year anniversary starting at $26,496.00 a month.

### G. Capital Raise

The Debtors have begun a capital raise program up to $3,000,000, including a $500,000 over allotment amount. As of December 31, 2020, the Debtors had received $500,000 in subscriptions and $300,000 was placed in escrow. The Debtors closed on and received $292,500 leaving $7,500 remaining in escrow. The capital raise provides the following key terms:

55951726;1

| | |
|---|---|
| **ISSUER:** | First Choice Healthcare Solutions, Inc. (the "**Company**"). |
| **FINANCING AMOUNT:** | A maximum of $2,500,000.00 with an additional $500,000 overallotment will be financed through the issuance of Notes and Warrants (as defined below). |
| **ISSUANCE OF NOTES:** | The Company will issue secured convertible promissory notes (each, a "**Note**") with a principal amount reflective of the amount loaned to the Company and an original issue discount as specified below. |
| **ISSUANCE OF WARRANTS:** | Each Noteholder (an "**Investor**") will receive warrants ("**Warrants**") to purchase shares of the Company's common stock, $0.001 par value per share ("**Common Stock**"), in an amount equal to 50% of the face value of its Note. |
| **INTEREST RATE:** | Interest will accrue on the principal balance of each Note at a rate of 10% per annum and will be paid quarterly either in cash or in shares of Common Stock, as determined by the Company. |
| **MATURITY DATE:** | Unless converted as set forth below, principal and accrued interest will be due two years from the date of Note issuance (the "**Maturity Date**"). |
| | The principal and accrued interest under the Notes may be prepaid without penalty upon 14 days' notice to the Investors. |
| **ORIGINAL ISSUE DISCOUNT** | The Notes will be issued at an original issue discount of 10%. |
| **SECURITY:** | The Company will issue a security agreement granting the Investors a first priority lien on all of the Company's assets, other than those already subject to first priority liens. |
| | There will be an initial collateral agent, Ewald Auctions, appointed to exercise rights under the security agreement. The collateral agent may be replaced from time to time by the Investors holding a majority of the indebtedness under the Notes. |
| **MINIMUM INVESTMENT:** | The minimum investment amount will be $50,000; provided that the Company may waive such limitation in its sole discretion. |
| **INVESTORS:** | The Investors must be "**accredited investors**" as such term is defined in Regulation D promulgated under the Securities Act of 1933, as amended. It is contemplated that the Notes and Warrants will only be offered to existing U.S. resident shareholders of the Company, but the Company reserves the right to U.S. resident non-shareholders. |
| **CLOSING DATE:** | One or more closing not later than February 28, 2021, subject to a 30-day extension by the Company. |

55951726;1

| | |
|---|---|
| **ESCROW AGENT:** | Offering proceeds will be held in escrow by Sichenzia Ross Ference LLP until the closing of each individual note agreement. The individual closings will not occur prior to approval of the transaction by the U.S. Bankruptcy Court. |
| **USE OF PROCEEDS:** | Upon the closing, the proceeds will be available for general operating expenses, including working capital and capital expenditures. |
| **AUTOMATIC CONVERSION UPON QUALIFIED FINANCING:** | Principal and accrued interest shall be converted on or before the Maturity Date into shares of Common Stock issued in the Company's next offering of Common Stock in an aggregate amount of at least $10,000,000 (not including conversion of the Notes) (the "**Qualified Financing**"). |
| | The number of shares of Common Stock issuable upon conversion of each Note in a Qualified Financing shall be equal to (i) the amount of principal and accrued interest, divided by (ii) the lessor of 75% of the price per share of Common Stock paid by other investors for a majority of the Common Stock issued in the Qualified Financing or seventy five cents ($0.75). |
| **EXERCISE OF WARRANTS:** | The Warrants will be exercisable upon the consummation of a Qualified Financing. |
| | The exercise price of the Warrants will be equal to 93.75% of the per share price of Common Stock sold to third-party investors in the Qualified Financing. |
| | The Warrants will have a term of five (5) years and have a cash exercise provision. |
| **REGISTRATION RIGHTS:** | Holders of Common Stock issued upon conversion of the Notes will be granted customary registration rights. |

<br>

**V.**

**PROJECTIONS AND VALUATIONS**

  The Debtors believe the Plan is feasible given their restructuring efforts during the pendency of the Bankruptcy Case and deleveraging of certain costs. The Debtors' Monthly Operating Reports are available on the court's public docket for this case. Additionally, the Debtors' financial projections are attached hereto as **Exhibit B**.

  The Financial Projections and valuations set forth below and in **Exhibit B** are based on a number of significant assumptions, including, among other things, the successful reorganization of the Debtors.

  THE FINANCIAL PROJECTIONS AND VALUATIONS ARE BASED UPON A NUMBER OF SIGNIFICANT ASSUMPTIONS. ACTUAL OPERATING RESULTS AND VALUES MAY VARY.

55951726;1

A.    **Financial Projections**

As a condition to confirmation of a plan, the Bankruptcy Code requires, among other things, that the Court determine that confirmation is not likely to be followed by the liquidation or the need for financial reorganization of the debtor.  In connection with the development of the Plan, and for purposes of determining whether the Plan satisfies this feasibility standard, the Debtors' management have, through the development of the Financial Projections, analyzed the Debtors' ability to meet their obligations under the Plan and to maintain sufficient liquidity and capital resources to conduct their business subsequent to their emergence from Chapter 11.  The Financial Projections were also prepared to assist holders of Allowed Claims entitled to vote on the Plan in determining whether to accept or reject the Plan.

The Financial Projections should be read in conjunction with the assumptions and qualifications set forth herein.  The Financial Projections were prepared in good faith based upon assumptions believed to be reasonable.  The Financial Projections, which were prepared in December, 2020, were based, in part, on economic, competitive, and general business conditions prevailing at the time.  Any future changes in these conditions may materially impact the Debtors' ability to achieve the Financial Projections.

THE DEBTORS DO NOT, AS A MATTER OF NORMAL COURSE, PUBLISH PROJECTIONS OF THEIR ANTICIPATED FINANCIAL POSITION, RESULTS OF OPERATIONS OR CASH FLOWS.  ACCORDINGLY, THE DEBTORS DO NOT INTEND TO, AND DISCLAIM ANY OBLIGATION TO (A) FURNISH UPDATED PROJECTIONS TO HOLDERS OF CLAIMS OR EQUITY INTERESTS PRIOR TO THE EFFECTIVE DATE OR TO ANY OTHER PARTY AFTER THE EFFECTIVE DATE, OR (B) OTHERWISE MAKE SUCH UPDATED INFORMATION PUBLICLY AVAILABLE.

THESE FINANCIAL PROJECTIONS, WHILE PRESENTED WITH NUMERICAL SPECIFICITY, ARE NECESSARILY BASED ON A VARIETY OF ESTIMATES AND ASSUMPTIONS WHICH, THOUGH CONSIDERED REASONABLE BY THE DEBTORS' MANAGEMENT, MAY NOT BE REALIZED, AND ARE INHERENTLY SUBJECT TO SIGNIFICANT BUSINESS, ECONOMIC AND COMPETITIVE UNCERTAINTIES AND CONTINGENCIES, MANY OF WHICH ARE BEYOND THE DEBTORS' CONTROL.  THE DEBTORS CAUTION THAT NO REPRESENTATIONS CAN BE MADE AS TO THE ACCURACY OF THESE FINANCIAL PROJECTIONS OR TO THE DEBTORS' ABILITY TO ACHIEVE THE PROJECTED RESULTS.  SOME ASSUMPTIONS INEVITABLY WILL NOT MATERIALIZE.    FURTHER, EVENTS AND CIRCUMSTANCES OCCURRING SUBSEQUENT TO THE DATE ON WHICH THESE FINANCIAL PROJECTIONS WERE PREPARED MAY BE DIFFERENT FROM THOSE ASSUMED OR, ALTERNATIVELY, MAY HAVE BEEN UNANTICIPATED AND, THUS, THE OCCURRENCE OF THESE EVENTS MAY AFFECT FINANCIAL RESULTS IN A MATERIAL AND POSSIBLY ADVERSE MANNER.

FINALLY, THE FINANCIAL PROJECTIONS INCLUDE ASSUMPTIONS AS TO THE ENTERPRISE VALUE OF THE REORGANIZED DEBTORS, AND THEIR ACTUAL ESTIMATED LIABILITIES AS OF THE EFFECTIVE DATE.   THE REORGANIZED

DEBTORS WILL BE REQUIRED TO MAKE SUCH ESTIMATIONS AS OF THE EFFECTIVE DATE.

**B.      Scope of Financial Projections**

As part of this analysis, the Debtors have prepared projections of their financial performance for the five-year period through the end of fiscal year 2025 (the "**Projection Period**").  These projections and the assumptions upon which they are based are included in the Financial Projections that are annexed hereto as **Exhibit B.**

The financial information and projections are based on the assumptions that the Plan will be confirmed by the Court and, for projection purposes that the Effective Date under the Plan will occur approximately in March, 2021.  The Debtors believe that an actual Effective Date any time during the first or second quarter of fiscal year 2021 would not have any material effect on the Financial Projections.

**C.      Summary of Significant Assumptions**

The following summarizes management's projections regarding revenues, expenses, EBITDA, capital expenditures and financial needs of the Reorganized Debtors and their consolidated subsidiaries for the fiscal years ended December 31, 2021 ("**FYE 2021**") through December 31, 2025 ("**FYE 2025**") (the "**Projection Period**").  The projections are based on a number of assumptions, including the expectation that the Reorganized Debtors have liquidity to achieve these Financial Projections, through the generation of free cash flow.  Capital will be required to remodel existing locations in a timely fashion and rehabilitate current locations to maintain support current and stop erosion of guest traffic.

*Number of Patient Care Location.*  The Financial Projections assume the Reorganized Debtors would emerge from bankruptcy with five (5) locations providing services to patients.  The footprint upon emergence is subject to change depending on determinations made by the Debtors during the course of the Chapter 11 Cases.

*Revenue Assumptions.*  During FY 2021, the Reorganized Debtors expect to generate $13.1 million in revenue, up from the prior year, primarily due to the addition of additional lines of business and improvement in the number of patient visits are then projected to slightly increase to $20.8 million during FY 2022 as we benefit from the full year impact of our 2021 initiatives.  In 2023 through 2025 our revenues are expected to grow to $22.8 million, $25.1 million and $27.6 million respectively.

*Cost Assumptions.*  Operating costs in the areas of medical supplies, labor and benefits and variable cost are expected to increase each year as our operations continue to grow.  Our fixed costs such as rents, utilities, etc. will grow slightly due to inflation but will drop as percentage of sales as the Company grows.

The Company's costs consist of five broad categories medical supplies, labor and benefits, variable overhead, fixed overhead and sales and marketing expenses.  The medical supplies are based on a percentage of revenue for each underlying operating unit and can vary from 5-15% of revenue, no assumption of inflation was included because as we grow our buying power will

increase and the cost of our supplies will decrease. Labor & Benefits include the cost of wages, health, dental, vision, short and long term disability and includes a 2% annual merit/inflation increase. The growth in labor costs over the inflation rate is the result of additional positions being added for our additional lines of business and increased revenue cycle support. The variable overhead includes two categories of expenses one that is 100% variable to the revenues billed such as fees for electronic health record billing system and merchant service fees etc. The second category of variable overhead includes cost that change but are tied specifically to revenues, such as postage, recruiting costs, answering service and equipment rental for new procedures or while a piece of owned equipment is being repaired. The fixed overhead expenses include cost that generally do not change on a month to month basis such as profession service fees, depreciation, bank charges, board fees and rent. The actual fixed overhead costs will increase over time due to growth in business but will drop as a percentage of sales. The sales and marketing costs include the cost of print and radio ads, search engine optimization cost, marketing materials to leave behind at clinics by the marketing department.

Marketing is budgeted overall at approximately 2 - 3% of revenue for all projected years of the plan.

*EBITDA.* EBITDA for FY 2021 is projected to be $69,000. Over the Projected Period, EBITDA is expected to increase to $2.0 million in FY 2022. In 2023 through 2025 our EBITDA is expected to grow to $2.6 million, $3.4 million and $4.1 million respectively. The increase in EBITDA and EBITDA margin is attributable to improved profitability of our existing operations, the additional lines of business, with hire operating margins and the ability to control our fixed costs.

*Capital Expenditures.* Total capital expenditures are expected to be $2.0 million in total over all projection years. The Capital Expenditures will fall into three broad categories medical equipment, technology and deferred maintenance expenditures. Although the split will vary slightly year over year it is expected that 60% will be for medical equipment and technology and the remaining 40% on deferred maintenance.

*Working Capital.* Investments in Working Capital are expected to increase over the course of the projection period as the Reorganized Debtors continue to grow, maintain the network, and improve results of operations.

*Fresh Start Accounting.* The Company has evaluated and determined that Fresh Start Accounting is not applicable pursuant to Statement of Position 90-7 ("**SOP 90-7**"), *Financial Reporting by Entities in Reorganization Under the Bankruptcy Code,* as issued by the American Institute of Certified Public Accountants (the "**AICPA**").

**The above financial projections are based on assumptions that are inherently uncertain and unpredictable.** The operating and financial information contained in the Reorganized Debtors' projected financial data have been prepared by management and reflect management's current estimates of the Reorganized Debtors' future performance. The projections and assumptions have not been reviewed or independently verified by any third party. The projected results are dependent on the successful implementation of management's growth strategies and are based on assumptions and events over which, in many cases, the Reorganized

Debtors will have only partial or no control. The selection of assumptions underlying such projected information require the exercise of judgment, and the projections are subject to uncertainty due to the effects that economic, business, competitive, legislative, political or other changes may have on future events. Changes in facts or circumstances underlying such assumptions could materially affect the projections. To the extent that assumed events do not materialize, actual results may vary substantially from the projected results. As a result, no assurance can be made that the Reorganized Debtors will achieve the operating or financial results set forth in the financial projections, nor can there be any assurance that results will not vary, perhaps materially and/or adversely.

Any statements included in the Plan regarding plans, objectives, goals, strategies, future events or performance of the Reorganized Debtors, including the above financial projections, are based on various assumptions, many of which in turn are based on other assumptions that management believes to be reasonable but which are inherently uncertain and unpredictable. The assumptions underlying projections may be incomplete and inaccurate, and unanticipated events and circumstances are likely to occur. For these reasons, actual results achieved during periods covered may vary from the projections, and such variations may be material or adverse. The projections are included solely to provide holders of Claims information concerning estimates of future operating results based on the assumptions, and no representation is intended that such results will be achieved. The Reorganized Debtors make no representation or warranty as to the accuracy or completeness of any of the foregoing information.

## VI.

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

In pursuit of a successful exit from bankruptcy, the Debtors submit a plan of reorganization which provides the framework for the continuation of the Debtors' business for the benefit of their creditors and Estates. The Debtors' Plan proposes distributions to creditors related to the Subchapter V mandate. All Claims and Interests treated under Article VIII of the Plan are divided into the following classes, which shall be mutually exclusive:

A.     <u>**Unclassified Claims (not entitled to vote on the Plan)**</u>

    (a)     <u>Administrative Claims.</u>

    (b)     <u>Fee Claims.</u>

B.     <u>**Classes of Claims**</u>

    (a)     <u>Class 1:</u> Priority Claims / Taxing Authorities.

    (b)     <u>Class 2:</u> Secured Claims (Equipment).

    (c)     <u>Class 3:</u> General Unsecured Claims.

    (d)     <u>Class 4:</u> Ongoing Trade Claims.

(e)    <u>Class 5:</u>  Securities Claimants.

(f)    <u>Class 6:</u>  Truist PPP Loan Claim.

(g)    <u>Class 7:</u>  Equity Interests in Debtors.

## ARTICLE VII

## TREATMENT OF UNCLASSIFIED CLAIMS

B.    <u>**Administrative Claims**</u>

In full and final satisfaction, settlement, release and discharge of each Allowed Administrative Claim, Holders of an Allowed Administrative Claim shall be paid in within ninety (90) days after the Effective Date, or upon such other terms as may be agreed upon by the Holder of the claim and the applicable Debtor, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Court. The Allowed Administrative Claims shall be paid from Cash on hand or through pre-petition retainers. Debtors estimate Administrative Claims (excluding Fee Claims) to be approximately $200,000. It is anticipated that the Administrative Claims shall come from the Debtors' landlords and the Subchapter V Trustee only.

The Court will establish an Administrative Claims Bar Date.

C.    <u>**Fee Claims**</u>

All requests for compensation or reimbursement of Fee Claims pursuant to sections 327, 328, 330, 331, 503 or 1103 of the Bankruptcy Code for services rendered prior to the Effective Date shall be filed and served on the Reorganized Debtors, counsel to the Reorganized Debtors, the United States Trustee, Subchapter V Trustee, and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Court, pursuant to the date set by the Bankruptcy Court, which date will require applications be filed prior to the confirmation hearing. Holders of Fee Claims that are required to file and serve applications for final allowance of their Fee Claims and that do not file and serve such applications by the required deadline shall be forever barred from asserting such Claims against the Debtors, Reorganized Debtors or their respective properties, and such Fee Claims shall be deemed discharged as of the Effective Date. Objections to any Fee Claims must be filed and served on the Reorganized Debtors, counsel for the Reorganized Debtors, and the requesting party no later than seven (7) days prior to the confirmation hearing.  Debtors estimate Fee Claims to be approximately $500,000. The Allowed Fee Claims are to be paid in full in Cash within three (3) Business Days of the Final Order allowing such Claims.

55951726;1

## ARTICLE VIII

## TREATMENT OF CLAIMS AND
## EQUITY INTERESTS

### A.    Class 1 – Priority Claims / Taxing Authorities

#### 1.    Distributions

Except to the extent that a Holder of an Allowed Priority Claim shall have agreed in writing to a different treatment, the Holder of an Allowed Priority Claim will be paid in full in three equal quarterly Cash installments, commencing on the first day of the first month following the Effective Date, over a period of nine (9) months, with interest at the Plan Interest Rate.

This class includes taxing authorities claims, including but not limited to the Allowed Claim of the Internal Revenue Service.

#### 2.    Impairment and Voting

Class 1 is Impaired under the Plan. Holders of Allowed Priority Claims in Class 1 are entitled to vote to accept or reject the Plan.

### B.    Class 2 – Secured Claims (Equipment)

#### 1.    Distributions

Except to the extent that a Holder of an Allowed Secured Claim shall have agreed in writing to a different treatment, at the sole option of the Debtors, each Allowed Secured Claim shall, in full and final satisfaction of such Claim shall be paid in full in two equally installment payments. The first installment payment will occur within forty-five (45) days after the Effective Date and the second and final installment payment shall be made within ninety (90) days after the Effective Date.

Notwithstanding the foregoing, to the extent a Secured Claim arises on account of taxes, such Secured Claim shall be treated as a Priority Claim. This class includes those creditors who have valid and Allowed liens on Debtors' equipment.

Although all Secured Claims have been placed in one Class for purposes of nomenclature, each Secured Claim, to the extent secured by a Lien on Collateral different than that securing any Secured Claims, shall be treated as being in a separate sub-Class for the purpose of receiving Distributions under the Plan.

#### 2.    Impairment and Voting

Class 2 is Impaired under the Plan. The Holders of Allowed Secured Claims in Class 2 are entitled to vote to accept or reject the Plan.

55951726;1

### C.    Class 3 – General Unsecured Claims

#### 1.    Distributions

Except to the extent that a Holder of an Allowed General Unsecured Claim shall have agreed in writing to a different treatment, each Holder of an Allowed General Unsecured Claim shall receive Distributions equal to their *Pro Rata* share of $500,000, with Plan Interest Rate, payable within ninety (90) days from the Effective Date.

#### 2.    Impairment and Voting

Class 3 is Impaired under the Plan. Each Holder of an Allowed General Unsecured Claim in Class 3 is entitled to vote to accept or reject the Plan.

### D.    Class 4 – Ongoing Trade Claims

#### 1.    Distributions

Except to the extent that a Holder of an Allowed Ongoing Trade Claim shall, at the election of the Reorganized Debtors, and to the extent that such Allowed Ongoing Trade Claim was not previously paid pursuant to an order of the Court shall be paid in full in two equally installment payments.  The first installment payment will occur within ninety (90) days after the Effective Date and the second and final installment payment shall be made within on hundred-fifty (150) days after the Effective Date.

#### 2.    Impairment and Voting

Class 4 is Impaired under the Plan. Each Holder of an Allowed Ongoing Trade Claim in Class 4 is entitled to vote to accept or reject the Plan.

### E.    Class 5 – Class Action Claims

Class 5 Claims are claims of Holders of claims pursuant to the proposed Stipulation of Settlement to be entered into in the Class Action. Pursuant to the Plan and the Stipulation of Settlement as currently contemplated, FCHS and D&O Insurance Contributor will establish a settlement fund (the "**Settlement Fund**") in the amount of $1 million which is to be contributed from the D&O Policy.

Class 5 Claims will be discharged and the Holders of Allowed Class Action Claims thereof shall be forever barred from seeking to recover any payment on their Class Action Claims as set forth in this Plan and as will be set forth in the Class Action Settlement Documents.

Holders of Class Action Claims may choose to exclude themselves from the settlement of the Class Action in accordance with the Class Action Settlement Documents (the "**Opt-Out Election**"). The Holders of Class Action Claims who exercise the Opt-Out Election and preserve their rights to proceed against FCHS in accordance with the requirements of the Class Action Settlement Documents and timely file a Proof of Claim and are adjudicated to have an Allowed Claim, shall be Holders of Class 3 Claims. All bankruptcy proofs of claim must be filed so as to

29

be actually received by the Clerk of the United States Bankruptcy Court for the Middle District of Florida, Orlando Division (the "**Clerk**") at George C. Young Federal Courthouse, 400 W. Washington Street, Suite 5100, Orlando, FL 32801 or through the Clerk's website at http://pacer.flmb.uscourts.gov/cmecf/proofofclaim.htm on or before 5:00 p.m. (prevailing Eastern Time) on the Bar Date. The Debtors shall have forty-five (45) days after a claim is filed by an Opt-Out claimant to object to said claim. If the Bankruptcy court determines an Opt-Out claimant has an Allowed Claim the Debtors shall pay pursuant to terms set forth in Class 3.

Distributions from the Settlement Fund shall be made in the amounts, at the times and in the manner provided for in the Class Action Settlement Documents, which shall also govern requirements for qualifying for distributions, the manner and time of the giving of notices, the forms of the documents to be filed by Holders of Class Action Claims and all other matters concerning the Class Action and its settlement other than as specifically provided for in the Plan. Neither the Debtors nor Reorganized Debtors shall have any responsibility with respect to the Class Action Settlement Documents or the disposition of the Settlement Fund after final approval by the Court and/or District Court, other than to cooperate in certain respects in the gathering of certain information with respect thereto and coordinating with the carrier of the D&O Policy regarding payment.

If the settlement becomes effective, pursuant to the terms of the Class Action Settlement Documents, all class members who did not opt out pursuant to the Class Action Settlement Documents, shall release (or be deemed to have released) all Class Action Claims such Holder may have against the D&O Protected Parties in the Class Action. Class 5 Claims are unimpaired, and therefore, shall not be entitled to vote to accept or reject this Plan.

F.    **Class 6- Truist PPP Loan Claim**

1.    **Distributions**

This Class contains all Claims related to the Debtors' PPP Loan. Currently, the amount of the Claim is $1,387,598.70, but the Debtors anticipate that all amounts will be forgiven in accordance with SBA regulations.

The Truist PPP Loan Claim will either be forgiven in full or in part, or the Debtors will pay it in accordance with the PPP Loan Documents. If forgiven in full, the Debtors will not distribute any Assets under the Plan on account of the Class 6 Claim. If not forgiven, in whole or in part, the Debtors will make the required payments under the terms of the PPP Loan Documents and the SBA regulations then in effect. To the extent the SBA regulations then in effect conflict with the PPP Loan Documents the SBA regulations then in effect will control.

2.    **Impairment and Voting**

Class 6 is Impaired under the Plan. Each Holder of an Allowed Claim in Class 6 is entitled to vote to accept or reject the Plan.

55951726;1

### G.    Class 7 – Equity Interests

#### 1.    Distributions

Existing equity interests in Debtors shall be retained in the same proportion existing as of the Petition Date.

#### 2.    Impairment and Voting

Class 6 is unimpaired and deemed to accept the Plan.

## ARTICLE IX

## PROVISIONS REGARDING CORPORATE GOVERNANCE OF THE REORGANIZED DEBTORS

### A.    Management

#### 1.    Appointment of Officers and Directors

The Debtors' current officers shall serve in the same capacity as officers of the Reorganized Debtors and shall serve in accordance with any applicable non-bankruptcy law.

2.    **Powers of Officers** The officers of the Debtors or the Reorganized Debtors, as the case may be, shall have the power to enter into or execute any documents or agreements that they deem reasonable and appropriate to effectuate the terms of the Plan.

3.    **Management of Reorganized Debtors** The Reorganized Debtors' officers shall serve in accordance with the Reorganized Debtors and applicable non-bankruptcy law.

4.    **Indemnification of Directors, Officers and Employees** Upon the Effective Date, the charters and by-laws of each Reorganized Debtor shall contain provisions which (i) eliminate the personal liability of the Debtors' and the Reorganized Debtors' then present and future directors and officers for post-Effective Date monetary damages resulting from breaches of their fiduciary duties to the fullest extent permitted by applicable law in the state in which the subject Reorganized Debtor is organized; and (ii) require such Reorganized Debtor, subject to appropriate procedures, to indemnify the Reorganized Debtors' directors, officers, and other employees (as such employees are identified by the Board) serving on or after the Effective Date for all post-Effective Date

claims and actions to the fullest extent permitted by applicable law in the state in which the subject Reorganized Debtor is organized.

**B.**     **Corporate Action**

Except as set forth in the Plan, any action under the Plan to be taken by or required of the Debtors or the Reorganized Debtors, including, without limitation, the adoption or amendment of certificates of incorporation and by-laws, and instruments or the selection of officers or directors, shall be authorized and approved in all respects, without any requirement of further action by any of the Debtors' or Reorganized Debtors' boards of directors or managers, as applicable.

The Debtors and the Reorganized Debtors, shall be authorized to execute, deliver, file, and record such documents, contracts, instruments, releases and other agreements and take such other action as may be necessary to effectuate and further evidence the terms and conditions of the Plan, without the necessity of any further Court or corporate approval or action. In addition, the selection of the Persons who will serve as the initial directors, officers and managers of the Reorganized Debtors as of the Effective Date shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the board of directors or board of managers of the applicable Reorganized Debtors.

## ARTICLE X

## CONSOLIDATION OF THE DEBTORS FOR DISTRIBUTION PURPOSES

***Solely in connection with Distributions*** to be made to the Holders of Allowed Claims, the Plan is predicated upon, and it is a condition precedent to confirmation of the Plan, that the Court provide in the Confirmation Order for the substantive consolidation of the Estates of the Debtors into a single Estate for purposes of Distributions under the Plan. To the extent a Claim (including any Disputed Claim) becomes an Allowed Claim, such Claim shall be satisfied in accordance with the provisions of the Plan.

Pursuant to the Confirmation Order, upon the Effective Date and without further order of the Court, except as expressly provided herein, (i) all liabilities of the substantively consolidated Debtors will be deemed to be merged *solely for purposes of this Plan and Distributions to be made hereunder*, (ii) the obligations of each Debtor will be deemed to be the obligation of the substantively consolidated Debtors solely for purposes of Distributions under the Plan, (iii) any Claims filed or to be filed in connection with any such obligations will be deemed Claims against the substantively consolidated Debtors, (iv) each Claim filed in the Chapter 11 Cases of any Debtor will be deemed filed against the Debtors in the consolidated Chapter 11 Cases in accordance with the substantive consolidation of the liabilities of the Debtors, and (v) all transfers, disbursements and Distributions made by any Debtor hereunder will be deemed to be made by the substantively consolidated Debtors, and (vi) all guarantees of the Debtors of the obligations of any other Debtors shall be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the substantively consolidated Debtors.

If no objection to substantive consolidation under this Plan is timely filed and served, then the Holders of Claims will be deemed to have consented to substantive consolidation for the

55951726;1

purpose of this Plan only and the Court may approve substantive consolidation of the Debtors' Estates in the Confirmation Order. If such objection to the substantive consolidation provided for in this Plan is timely filed and served, a hearing with respect to the substantive consolidation of the Estates and the objections thereto shall be scheduled by the Court, which hearing may coincide with the Confirmation Hearing.

## ARTICLE XI

## PROVISIONS REGARDING MEANS OF IMPLEMENTATION, VOTING, DISTRIBUTIONS, AND TREATMENT OF DISPUTED CLAIMS

### A.     Business Operations

The Plan contemplates that the Debtors will continue to manage and operate their businesses in the ordinary course, but with restructured debt obligations. The Debtors propose that this Plan will be funded with the proceeds of the Plan Equity Investment as described in Article IV hereof.  Please refer to the spreadsheet attached as **Exhibit B** for a projection of Debtors' anticipated financial performance during the term of the Plan. For a historical lookback at Debtors' finances, please refer to the profit and loss statements attached hereto as **Composite Exhibits C and D**.

As it pertains to potential Causes of Action, the Debtors will review their financial affairs and determine if there are any viable Causes of Action within ninety (90) days of the Effective Date. Any such identified Cause of Action or potential Cause of Action shall be disclosed to all Claimholders and the Subchapter V Trustee prior to such period of time. The proceeds from any Causes of Action will be used to make Distributions to Allowed General Unsecured Claims.

### B.     Source of Funding

First Choice Healthcare Solutions, Inc. shall fund distributions under the Plan, pursuant to a capital raise in an amount of up to $2.5 million with an overallotment amount of an additional $500,000 for an aggregate of $3 million dollars through the insurance of Notes and Warrants.

First Choice Healthcare Solutions, Inc. will issue secured convertible promissory notes (each, a "**Note**") with a principal amount reflective of the amount loaned to First Choice Healthcare Solutions, Inc. and an original issue discount as specified below.  Each Noteholder (an "**Investor**") will receive 5- Year warrants ("**Warrants**") to purchase shares of the Company's common stock, $0.001 par value per share ("**Common Stock**"), in an amount equal to 50% of the face value of its Note at a strike price of 93.75% of the Conversion Price.  Interest will accrue on the principal balance of each Note at a rate of 10% per annum and will be paid quarterly either in cash or in shares of Common Stock, as determined by First Choice Healthcare Solutions, Inc.

Unless converted as set forth below, principal and accrued interest will be due two years from the date of Note issuance (the "**Maturity Date**"). The principal and accrued interest under the Notes may be prepaid without penalty upon 14 days' notice to the Investors.  The Notes will be issued at an original issue discount of 10%.  First Choice Healthcare Solutions, Inc. will issue

a security agreement granting the Investors a first priority lien on all of First Choice Healthcare Solutions, Inc.'s assets, other than those already subject to first priority liens.

There will be an initial collateral agent. FCHS proposes to use Ewald Auctions as the collateral agent at $2,500 per annum, not including any fees for marshalling and auctioning off assets, appointed to exercise rights under the security agreement. The collateral agent may be replaced from time to time by the Investors holding a majority of the indebtedness under the Notes. The minimum investment amount will be $50,000; provided that First Choice Healthcare Solutions, Inc. may waive such limitation in its sole discretion.

The Investors must be "accredited investors" as such term is defined in Regulation D promulgated under the Securities Act of 1933, as amended. It is contemplated that the Notes and Warrants will only be offered to existing U.S. resident shareholders of First Choice Healthcare Solutions, Inc., but First Choice Healthcare Solutions, Inc. reserves the right to U.S. resident non-shareholders.

One or more closing not later than February 28, 2021, subject to a 30-day extension by the Company.

Offering proceeds of $500,000 which has been approved by the U.S. Bankruptcy Court will be held in escrow by Sichenzia Ross Ference LLP until disbursed pursuant to conditions precedent to a closing. Additional funds that may be placed in escrow are subject to U.S. Bankruptcy Court approval prior to closing and disbursement.

Upon the closing, the proceeds will be available for general operating expenses, including working capital and capital expenditures. Principal and accrued interest shall be converted on or before the Maturity Date into shares of Common Stock issued in First Choice Healthcare Solutions, Inc.'s next offering of Common Stock in an aggregate amount of at least $10,000,000 (not including conversion of the Notes) (the "**Qualified Financing**").

The number of shares of Common Stock issuable upon conversion of each Note in a Qualified Financing shall be equal to (i) the amount of principal and accrued interest, divided by (ii) the lessor of 75% of the price per share of Common Stock paid by other investors for a majority of the Common Stock issued in the Qualified Financing or seventy-five cents ($0.75).

The Warrants will be exercisable upon the consummation of a Qualified Financing. The exercise price of the Warrants will be equal to 93.75% of the per share price of Common Stock sold to third-party investors in the Qualified Financing. The Warrants will have a term of five (5) years and have a cash exercise provision. Holders of Common Stock issued upon conversion of the Notes will be granted customary registration rights, piggyback registration rights.

C.    **Payment of Claims**

The Debtors or Reorganized Debtors shall pay all Allowed Claims as provided for in the Plan.

**D.**    **Voting of Claims**

Each Holder of an Allowed Claim in an Impaired Class of Claims entitled to vote on the Plan shall be entitled to vote to accept or reject the Plan as provided in such order as may be entered by the Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Court.

**E.**    **Distributions**

1.    **Manner of Payment to Allowed Claims**

Any payment made under this Plan may be made either by check drawn on an account of the Reorganized Debtors, by wire transfer, or by automated clearing house transfer from a domestic bank, at the option of the Reorganized Debtors.

In the event the Plan is confirmed pursuant to § 1191(b), the Subchapter V Trustee shall make all payments and Distributions required under the terms of the Plan to Class 3 Claimholders only. Any fees and expenses incurred by the Subchapter V Trustee in connection with the distribution of Plan Payments shall be detailed in quarterly fee applications (the "**Quarterly Fee Reports**") filed with the Court on negative notice. Upon approval of the fees and costs detailed in the Subchapter V Trustee's Quarterly Fee Reports, the approved fee and expense awards shall be deducted from, and charged against, the Distributions made by the Subchapter V Trustee in accordance with the terms of the Plan. The Debtors shall make payments to on account of all Allowed Secured Claims (if any); Allowed Priority Claims (if any); Class 4 Claimholders (if any) and Class 6 Claimholders (if any) directly.  Payments to Class 5 shall be made pursuant to Court order.

Except as specifically provided for in the Plan, no Claims, Allowed or otherwise, shall be entitled, under any circumstances, to receive any interest on a Claim.

2.    **Objections To And Resolution Of Claims**

The Reorganized Debtors shall have the exclusive right to make and to file objections to, or otherwise contest the allowance of all claims. Unless otherwise ordered by the Court, objections to, or other proceedings concerning the allowance of, Administrative Claims and Claims shall be filed and served upon the Holders of the Administrative Claims or Claims as to which the objection is made, or otherwise commenced, as the case may be, as soon as practicable, but in no event later than the Claims Objection Deadline. Objections to Fee Claims shall be filed and served within seventy-five (75) days of the Effective Date (or such longer period as may be allowed by order of the Court).

Objections to, or other proceedings contesting the allowance of, Administrative Claims and Claims may be litigated to judgment, settled or withdrawn, in the sole discretion of the Reorganized Debtors. The Debtors may settle any such objections or proceedings without Court approval or may seek Court approval without notice to any Person.

Unless an order of the Court specifically provides for a later date, any party filing a proof of Claim after the bar date established by the Court for such Claim shall not be entitled to treatment

as a creditor with respect to such Claim for the purposes of voting on and distribution under the Plan unless and until the party filing such Claim either obtains the written consent of the Reorganized Debtors to file such Claim late or obtains an order of the Court upon written motion on notice to the Reorganized Debtors that permits the filing of the Claim. In the event any proof of Claim is permitted to be filed after the Claims Objection Deadline, the Reorganized Debtors shall have ninety (90) days from the date of such order or agreement to object to such Claim, which deadline may be extended by the Court on motion of the Reorganized Debtors without a hearing or notice to Creditors.

### 3. **Distributions Following Allowance**

Notwithstanding anything to the contrary set forth herein, each Holder of a Disputed Priority Claim that becomes an Allowed Claim subsequent to the applicable Initial Distribution Date shall receive the Distribution to which such Holder of an Allowed Claim is entitled at such time that the Reorganized Debtors make the next subsequent Distributions to Holders of other Allowed/Priority Claims. Nothing set forth herein is intended to, nor shall it, prohibit the Debtors in their discretion, from making a Distribution on account of any Claim at any time after such Claim becomes an Allowed Claim. Each Holder of a Disputed General Unsecured claim that becomes an Allowed Claim subsequent to the Initial Distribution Date shall receive its Distribution within ten (10) Business Days of the order allowing such claim becoming final or within such time as may be agreed to by the claimant and Reorganized Debtors to the same *pro rata* extent as the current Distributions to the balance of the General Unsecured Class.

### F. **Estimation**

The Debtors or Reorganized Debtors may at any time, request that the Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Reorganized Debtors, have previously objected to such Claim. The Court will retain jurisdiction to estimate any Claim at any time, including during proceedings concerning any objection to such Claim. In the event that the Court estimates any Disputed Claim, such estimated amount may constitute either (a) the Allowed amount of such Claim, (b) the amount on which a reserve is to be calculated for purposes of any reserve requirement to the Plan, or (c) a maximum limitation on such Claim, as determined by the Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or the Reorganized Debtors may elect to object to ultimate payment of such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

### G. **Controversy Concerning Impairment**

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Court, after notice and a hearing, shall determine such controversy before the Confirmation Date. If such controversy is not resolved prior to the Effective Date, the applicable Debtor's interpretation of the Plan shall govern.

### H.    Confirmation Pursuant to §1191(b) "Cramdown"

Debtors reserve their rights to confirm using cramdown procedures set forth under 11 U.S.C. § 1191(b) in the event one or more – or even all – classes have not accepted the Plan. The procedures of § 1191(b) provide as follows:

(b)    Notwithstanding section 510(a) of the Bankruptcy Code, if all of the applicable requirements of section 1129(a) of the Bankruptcy Code, other than paragraphs (8), (10) and (15) of that section, are met with respect to a plan, the court, on request of the debtor, shall confirm the plan notwithstanding the requirements of such paragraphs if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is Impaired under, and has not accepted, the plan.

(c)    Rule of Construction. For purposes of section 1191(b), the condition that a plan be fair and equitable with respect to each class of claims or interests includes the following requirements:

(1)    With respect to a class of secured claims, the plan meets the requirements of section 1129(b)(2)(A) of the Bankruptcy Code;

(2)    As of the effective date of the plan –
(A)    the plan provides that all of the projected disposable income of the debtor to be received in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date that the first payment is due under the plan will be applied to make payments under the plan; or
(B)    the value of property to be distributed under the plan in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date on which the first distribution is due under the plan is not less than the projected disposable income of the debtor.

### I.    Intercompany Claims

At the option of the Debtors, or the Reorganized Debtors, as applicable, each Intercompany Claim shall be, either (i) reinstated and continued in full or in part, or (ii) eliminated in full or in part by offset, distribution, cancellation, assumption or contribution of such Intercompany Claim or otherwise; provided, however, that no Intercompany Claim shall be Allowed as a General Unsecured Claim.

### J.    Liens

Notwithstanding anything to the contrary contained herein, the substantive consolidation of the Debtors for distribution purposes pursuant to Article X of this Plan shall not affect the extent or validity of any Lien.

Upon the treatment or other satisfaction of any secured Claims in accordance with the Plan, the Liens securing such secured Claim shall be deemed released, terminated and extinguished, in

each case without further notice to or order of the Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

### K.    **Enforcement of Subordination**

The classification and manner of satisfying all Claims and the respective Distributions and treatments under the Plan take into account or conform to the relative priority and rights of the Claims in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether under general principles of equitable subordination, section 510(b) of the Bankruptcy Code or otherwise, and any and all such rights are settled, compromised and released pursuant to the Plan. The Confirmation Order shall enjoin, effective as of the Effective Date, all persons and entities from enforcing or attempting to enforce any such contractual, legal and/or equitable rights so satisfied, compromised and settled.

## ARTICLE XII

## PROCEEDS OF AVOIDANCE ACTIONS

The Reorganized Debtors are retaining all Avoidance Actions, but shall be under no obligation to pursue any such action.  In the event the Reorganized Debtors in their sole discretion determine to pursue an Avoidance Action and in the event of an affirmative recovery on any Avoidance Action, the net proceeds above the cost (including professional fees and expert witness fees) recovered by the Reorganized Debtors shall be distributed *pro rata* to Allowed General Unsecured Creditors.

## ARTICLE XIII

## EFFECT OF CONFIRMATION OF THE PLAN

### A.    **Continued Corporate Existence**

The Debtors, as Reorganized Debtors, shall continue to exist after the Effective Date with all powers of a corporation or limited liability company, as the case may be, under the laws of the respective states governing their formation and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under such applicable state law, except as such rights may be limited and conditioned by the Plan and the documents and instruments executed and delivered in connection therewith. In addition, the Reorganized Debtors may operate their business free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Rules or by the Court, subject only to the terms and conditions of the Plan as well as the documents and instruments executed and delivered in connection therewith. The Reorganized Debtors shall be responsible for filing required post-confirmation reports and each Reorganized Debtor shall pay quarterly fees of such Debtor due to the Office of the United States Trustee until such time as a final decree is entered closing the applicable Chapter 11 Case or the Bankruptcy Code orders otherwise.

55951726;1

B.      **Settlement of Treatment of General Unsecured Claims**

Pursuant to Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided under the Plan, the Plan constitutes a good faith compromise and settlement of the rights and claims, if any, that the Holders of Claims may have against the Released Parties. Any Distributions to be made pursuant to the Plan shall be made on account, and in consideration, of the compromise and settlement provided hereunder, which upon the Effective Date shall be binding on the Holders of Claims (whether or not Allowed). The entry of the Confirmation Order shall constitute the Court's approval, as of the Effective Date, of the settlement and the Court's finding that the settlement is in the best interests of the Debtors and their Estates.

C.      **Vesting of Property**

The property of the Debtors' Estates shall be revested in the Reorganized Debtors on the Effective Date.

D.      **Discharge of the Debtors**

**The rights afforded herein and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors, the Debtors in Possession, the Reorganized Debtors or any of their respective assets or properties, arising prior to the Effective Date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtors will not be discharged of any debt:**

**(1) Imposed by this Plan; or**

**(2) to the extent provided in § 1141(d)(6).**

**If the Debtors' Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as other provided in § 1192 of the Code.**

**Except as otherwise expressly specified in the Plan, any Holder of such discharged Claim shall be precluded from asserting against the Debtors, the Reorganized Debtors, or any of their respective assets or properties, any other or further Claim based on any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before the entry of the Confirmation Order.**

E.      **Injunction**

**Except as otherwise expressly provided in the Plan, the Confirmation Order, or a separate order of the Court, all entities who have held, hold, or may hold Claims against the Debtors that arose before or were held as of the Effective Date, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or the Reorganized Debtors, with respect**

55951726;1

to any such Claim, (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtors, the Reorganized Debtors on account of any such Claim, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Reorganized Debtors or against the property or interests in property of the Debtors on account of any such Claim, and (d) asserting any right of setoff, or subrogation of any kind against any obligation due from the Debtors, the Reorganized Debtors or the or against the property or interests in property of the Debtors on account of any such Claim. Such injunction shall extend to successors of the Debtor (including, without limitation, the Reorganized Debtors) and their respective properties and interests in property.

**ANY PARTY WISHING TO PRESERVE ITS SETOFF RIGHT, MUST FILE, PRIOR TO THE CONFIRMATION DATE, A MOTION FOR RELIEF FROM THE AUTOMATIC STAY SEEKING THE AUTHORITY TO EFFECTUATE SUCH A SETOFF RIGHT OR HAVE TIMELY FILED A PROOF OF CLAIM WITH THE COURT PRESERVING SUCH SETOFF RIGHT IN SUCH PROOF OF CLAIM OR AMENDMENT THERETO**.

### F.    Preservation of Causes of Action

The Reorganized Debtors shall retain all Causes of Action and Avoidance Actions. Except as expressly provided in the Plan or the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any such Causes of Action or Avoidance Actions. Nothing contained in the Plan or the Confirmation Order shall be deemed a waiver or relinquishment of any Claim, Causes of Action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the Petition Date that is not specifically waived, released or relinquished by the Plan. The Reorganized Debtors shall have, retain, reserve and be entitled to assert all such Claims, Causes of Action, rights of setoff and other legal or equitable defenses that the Debtors had immediately prior to the Petition Date as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights respecting any Claim that are not specifically waived or relinquished by the Plan may be asserted after the Effective Date by the Reorganized Debtors to the same extent as if the Chapter 11 Cases had not been commenced.

### G.    Votes Solicited in Good Faith

The Debtors have, and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

### H.    Administrative Claims Incurred After the Effective Date

Obligations incurred by the Reorganized Debtors after the Effective Date including (without limitation) Claims for Professionals' fees and expenses incurred after such date, may be paid by the Reorganized Debtors in the ordinary course of business and without application for or Court approval, subject to any agreements with any claim Holders.

### I.      Releases by the Debtors

On the Effective Date, the Debtors and the Reorganized Debtors, on behalf of themselves and their Estates, shall be deemed to release unconditionally all of their respective *current* officers, *current* directors, *current* employees, *current* partners, *current* advisors, *current* attorneys, *current* financial advisors, *current* accountants, and other *current* professionals, and as to each their respective officers, directors, principals, members employees, partners, subsidiaries, affiliates, advisors, attorneys, financial advisors, accountants, and other professionals (collectively the "Released Parties" and each a "Released Party") from any and all claims, obligations, suits, judgments, damages, rights, Causes of Action and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon actions taken solely in their respective capacities described above or any omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, or the Plan, except that (i) no individual shall be released from any act or omission that constitutes gross negligence or willful misconduct, (ii) the Reorganized Debtors and the shall not relinquish or waive the right to assert any of the foregoing as a legal or equitable defense or right of set off or recoupment against any Claims of any such persons asserted against the Debtors, (iii) the foregoing release shall not apply to any obligations that remain outstanding in respect of loans or advances made to individuals by the Debtors, and (iv) the foregoing release applies to the Released Parties solely in their respective capacities described above.

### J.      Releases by non-Debtors

On the Effective Date, all Persons who (a) directly or indirectly, have held, hold, or may hold Claims, or (b) vote to accept the Plan as set forth on the relevant Ballot, and (c) do not mark their Ballot to indicate their refusal to grant the releases provided in this paragraph, shall be deemed, by virtue of their receipt of Distributions and/or other treatment contemplated under the Plan, to have forever released and covenanted with the Reorganized Debtors and the Released Parties not to (y) sue or otherwise seek recovery from any of the Reorganized Debtors or any Released Party on account of any Claim in any way related to the Debtors or their business and affairs, including but not limited to any Claim based upon tort, breach of contract, violations of federal or state securities laws or otherwise, based upon any act, occurrence, or failure to act from the beginning of time through the Effective Date or (z) assert against any of the Reorganized Debtors or any Released Party any claim, obligation, right, cause of action or liability that any Holder of a Claim or Interest may be entitled to assert, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part on any act or omission, transaction, or occurrence from the beginning of time through the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, or the Plan, provided, however, (i) none of the Released Parties shall be released from any Claim primarily based on any act or omission that constitutes gross negligence or willful misconduct as determined by a court of competent jurisdiction, (ii) the foregoing release shall not apply to obligations arising under the Plan, and (iii) the foregoing release shall not be construed to prohibit a party in interest from seeking to enforce the terms of the Plan.

55951726;1

### K.      Exculpation and Injunction in Respect of Released Parties

#### 1.      Exculpation

**The Debtors, the Reorganized Debtors, and the other Related Parties, shall have no liability whatsoever to any Holder or purported Holder of an Administrative Claim, a Claim, or an Equity Interest for any act or omission in connection with, or arising out of, the Plan, the negotiation of the Plan, the solicitation of votes for confirmation of the Plan, the Chapter 11 Cases, the consummation of the Plan, the administration and implementation of the Plan or the property to be distributed under the Plan, or any transaction contemplated by the Plan or in furtherance thereof except for any act or omission that constitutes willful misconduct or gross negligence as determined by a Final Order. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such Released Parties from liability.**

#### 2.      Injunction

**Pursuant to section 105 of the Bankruptcy Code, no Holder or purported Holder of an Administrative Claim, a Claim or an Equity Interest shall be permitted to commence or continue any action, employment of process, or any act to collect, offset, or recover any Claim against a Released Party that accrued on or prior to the Effective Date and that has been released or waived pursuant to this Plan.**

### L.      Term of Bankruptcy Injunction or Stays

All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### M.      Preservation of Insurance

The Debtors' discharge and release from all Claims as provided herein, except as necessary to be consistent with this Plan, shall not diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtors, the Reorganized Debtors (including, without limitation, its officers and current and former directors) or any other person or entity.

### N.      Indemnification Obligations Owed by the Debtors

Indemnification Obligations owed to directors, officers, and employees of the Debtors (or the Estates of any of the foregoing) who served or were employed by the Debtors as of or after the Petition Date, excluding claims which have been determined by Final Order to have resulted from gross negligence, willful misconduct, breach of fiduciary duty, or intentional tort, shall be deemed to be assumed pursuant to Sections 365 of the Bankruptcy Code under the Plan; provided that the Reorganized Debtors' liabilities in respect of such obligations shall be limited to the extent of available insurance coverage.

All Indemnification Obligations owed to directors, officers, and employees of the Debtors who served or were employed by the Debtors prior to, but not after, the Petition Date shall be

55951726;1

deemed to be, and shall be treated as though they are, executory contracts that are rejected pursuant to Section 365 of the Bankruptcy Code under the Plan.

Indemnification Obligations owed to any Professionals retained pursuant to sections 327 or 328 of the Bankruptcy Code and order of the Court, to the extent that such Indemnification Obligations relate to the period after the Petition Date, shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed pursuant to section 365 of the Bankruptcy Code under the Plan.

## ARTICLE XIV

## RETENTION OF JURISDICTION

The Court shall have exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, section 105(a) and section 1142 of the Bankruptcy Code and for, among other things, the following purposes: (1) to hear and determine motions for the assumption or rejection of executory contracts or unexpired leases pending on the Confirmation Date, and the allowance of Claims resulting therefrom; (2) to determine any other applications, adversary proceedings, and contested matters pending on the Effective Date; (3) to ensure that Distributions to Holders of Allowed Claims are accomplished as provided herein; (4) to resolve disputes as to the ownership of any Claim or Equity Interest; (5) to hear and determine objections to Claims and to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Expense Claim; (6) to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated; (7) to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code; (8) to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Court, including, without limitation, the Confirmation Order; (9) to hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331 and 503(b) of the Bankruptcy Code; (10) to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan; (11) to hear and determine any issue for which the Plan requires a Final Order of the Court; (12) to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code; (13) to hear and determine disputes arising in connection with compensation and reimbursement of expenses of professionals for services rendered during the period commencing on the Petition Date through and including the Effective Date; (14) to hear and determine any Causes of Action, including any Avoidance Action, preserved under the Plan under Bankruptcy Code sections 544, 547, 548, 549, 550, 551, 553, and 1123(b)(3); (15) to hear and determine any matter regarding the existence, nature and scope of the Debtors' discharge; (16) to hear and determine any matter regarding the existence, nature, and scope of the releases and exculpation provided in Article XIII of the Plan; and (17) to enter a final decree closing the Chapter 11 Cases.

# ARTICLE XV

# MISCELLANEOUS PROVISIONS

### A.    Modification of the Plan

Subject to the limitations contained in the Plan: (1) the Debtors reserve the right in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Debtors or the Reorganized Debtors, as the case may be, may upon order of the Court, amend or modify the Plan, in accordance with Section 1127(b) of the Bankruptcy Code.

### B.    Post Confirmation Status Report

Pursuant to the Plan, within 90 days of the entry of the Confirmation Order, the Debtors will file a status report with the Court attaching a detailed accounting of all payments made under the Plan and explaining what progress has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee, the Subchapter V Trustee and those parties who have requested special notice post-confirmation. The Court may schedule subsequent status conferences in its discretion.

### C.    Retention of Professionals

The Reorganized Debtors may retain professionals on such terms as it deems reasonable without Court approval.

### D.    Governing Law

Unless a rule of law or procedure is supplied by Federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Florida (without reference to the conflicts of laws provisions thereof) shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, unless otherwise specified.

### E.    Filing or Execution of Additional Documents

On or before the Effective Date, the Debtors or the Reorganized Debtors, shall file with the Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### F.    Withholding and Reporting Requirements

In connection with the Plan and all instruments issued in connection therewith and Distributions thereon, the Reorganized Debtors, as applicable, shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements.

55951726;1

G.      **Exemption From Transfer Taxes**

Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any security or the making, delivery, or recording of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan or any Plan Document, or any transaction arising out of, contemplated by, or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local government officials or agents shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

H.      **Compliance with Tax Requirements**

In connection with this Plan, to the extent applicable, the Reorganized Debtors in making Distributions shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Reorganized Debtors may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such Holder provides to the Reorganized Debtors, the necessary information to comply with any withholding requirements of any Governmental Unit. Any property so withheld will then be paid by the Reorganized Debtors to the appropriate authority. If the Holder of an Allowed Claim fails to provide to the Reorganized Debtor(s) the information necessary to comply with any withholding requirements of any Governmental Unit within six months after the date of first notification by the Reorganized Debtors to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's Distribution shall be treated as an undeliverable (unclaimed) distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

I.      **Transmittal of Distributions to Parties Entitled Thereto**

All Distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid. All Distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made. All distributions made by automated clearing house from a domestic bank shall be deemed to be made as of the date of the automated clearing is effective. Except as otherwise agreed with the Holder of an Allowed Claim in respect thereof or as provided in this Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the Holder with the provisions of this Plan to (i) its address set forth in its proof of claim, (ii) the latest mailing address filed for the Holder of an Allowed Claim entitled to a distribution, (iii) the latest mailing address filed for a Holder of a filed power of attorney designated by the Holder of such Allowed Claim to receive Distributions, (iv) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Debtors pursuant to Bankruptcy Rule 3001(e), or (v) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtors' books and

records. If any Distribution is returned by mail or otherwise, the Reorganized Debtors may keep said returned Distribution money.

### J.    Unclaimed Property

Except as otherwise provided in this Plan, any property (Cash or otherwise) to be distributed under this Plan that is unclaimed after six months following the relevant distribution date shall be forfeited, and such distribution, together with all interest earned thereon, shall become an Asset to be distributed and conveyed to Holders of Class 3 Claims in accordance with the provisions of this Plan. However, checks issued by the Reorganized Debtors with respect to Allowed Class 3 Claims will be null and void if not cashed within sixty days of the date of issuance and such unclaimed distribution shall vest with the Reorganized Debtors. Requests for re-issuance of any such check shall be made in writing to the Reorganized Debtors by the Holder of the Claim with respect to the check originally issued.

### K.    Waiver of Federal Rule of Civil Procedure 62(a)

The Debtors may request that the Confirmation Order include (a) a finding that Fed. R. Civ. P. 62(a) shall not apply to the Confirmation Order, and (b) authorization for the Debtors to consummate the Plan immediately after entry of the Confirmation Order.

### L.    Exhibits/Schedules

All Exhibits and schedules to the Plan are incorporated into and constitute a part of the Plan as if set forth herein.

### M.    Default and Remedies of Allowed Claimholders

In the event any Allowed Claimholder is not timely paid in accordance with the Plan, such Allowed Claimholder shall provide the Debtors, Counsel to the Debtors and the Subchapter V Trustee with written notice of said payment default (the "**Default**"). The Debtors shall have fourteen (14) days from receipt of the Default notice to cure the Default. If the Debtors fail to timely cure the Default, the Allowed Claimholder may seek relief from the Court to enforce this Plan, file for such relief related to the Plan in any state court of competent jurisdiction or such further relief that may be available to such Allowed Claimholder under Federal or applicable state law.

### N.    Notices

All notices, requests, and demands hereunder to be effective shall be in writing and unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Counsel to the Debtors:

Esther McKean, Esq.
Akerman LLP

420 S. Orange Ave.
Suite 1200
Orlando, FL 32801

Debtors:

Attn: Lance Friedman, CEO
709 S. Harbor City Blvd.
Suite 530
Melbourne, FL 32901

United States Trustee:

George C. Young Federal Building
400 West Washington Street, Suite 1100
Orlando, Florida 32801

Subchapter V Trustee:

Aaron R. Cohen
P.O. Box 4218
Jacksonville, FL 32201-4218

## ARTICLE XVI

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.  Assumption and Rejection of Executory Contracts and Unexpired Leases

To the extent not (i) assumed in the Chapter 11 Cases prior to the Confirmation Date, (ii) rejected in the Chapter 11 Cases prior to the Confirmation Date, (iii) subject of a separate motion or subject to the expedited procedures approved by the Court to assume or reject under section 365 of the Bankruptcy Code pending on the Effective Date, or (iv) specifically assumed pursuant to this Plan, each executory contract and unexpired lease that exists between Debtors and any Person is specifically rejected by the Debtors that is a party to such executory contract or unexpired lease as of and subject to the Effective Date pursuant to the Plan.

The following executory contracts and unexpired leases are rejected:

> (i)       executory contacts or unexpired non-residential leases that were rejected before the Confirmation Date; and

> (ii)      all real estate leases that have been rejected pursuant to a court order during these bankruptcy cases;

> (iii)     Stock Purchase Agreement with Steward Health Care System LLC; and

(iv)　　　all contracts identified on **Exhibit E**.

The following executory contracts and unexpired leases are assumed:

(i)　　　all existing insurance policies that have not expired, been rejected or are subject to a motion to reject as of the Confirmation Date; and

(ii)　　　all real property leases with the Debtors as of December 31, 2020.

### B.　　　Limited Extension of Time to Assume or Reject

The Debtors shall have until the completion of the hearing on Confirmation to assume or reject any unexpired lease or executory contract. In the event any such unexpired lease or executory contract is not assumed (or subject to a pending motion to assume) by such date, such unexpired lease or executory contract shall be deemed rejected as of the Confirmation Date. The Debtors' position is that the executory contracts listed on the Schedule of Executory Contracts filed pursuant to Rule 1007 are the only executory contracts to which the Debtors were a party as of the Petition Date.

In the event of a dispute as to whether a contract or lease is executory or unexpired, the right of the Debtors or Reorganized Debtors to move to assume or reject such contract or lease, either by motion or pursuant to such expedited procedures as have been approved by the Court, shall be extended until the date that is thirty (30) days after the entry of a Final Order by the Court determining that the contract or lease is executory or unexpired. The deemed assumptions and rejections provided for in this Article XVI of the Plan shall not apply to such contract or lease.

In the event the Debtors or the Reorganized Debtors become aware after the Effective Date of the existence of an executory contract or unexpired lease that was not included in the Schedules or on the Schedule of Additional Assumed Leases, the right of the Reorganized Debtors to move to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after the date on which the Debtors or the Reorganized Debtors become aware of the existence of such contract or lease. The deemed assumptions and rejections provided for in this Article XVI.A. of the Plan shall not apply to any such contract or lease.

### C.　　　Cure

The applicable Reorganized Debtor, except as otherwise agreed by the parties, will cure any and all undisputed defaults under any executory contract or unexpired lease that is assumed by such Reorganized Debtor pursuant to the Plan in accordance with section 365 of the Bankruptcy Code within five (5) Business Days after the Effective Date.  Notwithstanding Article (XVI)(A) or XVI(B), in the event there is a dispute as of the Effective Date regarding the amount required to cure defaults under any executory contract or unexpired lease that the Reorganized Debtors propose to assume, the Reorganized Debtors shall have until thirty (30) days after entry of a Final Order determining the amount, if any, of the applicable Debtor or Reorganized Debtor's liability with respect thereto, or as may otherwise be agreed by the parties, to determine whether to assume or reject the related executory contract or unexpired lease.  In the event the applicable Reorganized Debtor determines to assume the applicable executory contract or unexpired lease related to the disputed cure, such disputes shall be cured within five (5) Business Days of the Order determining

55951726;1

the amount, if any, of the applicable Debtor or the applicable Reorganized Debtor's liability with respect thereto, becoming a Final Order or as may otherwise be agreed to by the parties.

**D.      Rejection Damage Claims**

All Claims for damages arising from the rejection of executory contracts or unexpired leases must be filed with the Court in accordance with the terms of the order authorizing such rejection and any applicable bar dates established during the case, but in no event later than thirty (30) days after the Effective Date (unless rejected at a later date as a result of a disputed cure amount as set forth in Article XVI.C. herein). Any Claims not filed within such time will be forever barred from assertion against the Debtors, their respective Estates and the Reorganized Debtors. All Allowed Claims arising from the rejection of executory contracts or unexpired leases shall be treated as General Unsecured Claims.

**E.      Guaranties**

All guarantees of assumed leases and contracts shall remain in full force and effect after the Effective Date.

**ARTICLE XVII**

**BENEFIT PLANS**

As of and subject to the Effective Date, all employee compensation and benefit plans, policies, and programs of the Debtors applicable generally to their employees, as in effect on the Effective Date, including, without limitation, all savings plans, retirement plans, health care plans, disability plans, incentive plans, and life, accidental death, and dismemberment insurance plans, but excluding any employment and severance agreements, plans or policies (unless, with the consent of the Requisite Consenting Parties, such employment and severance agreements, plans or policies are assumed by the Debtors pursuant to Court order), shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed under the Plan, and the Debtors' obligations under such agreements and programs shall survive the Effective Date of the Plan, without prejudice to the Reorganized Debtors' rights under applicable non -bankruptcy law to modify, amend, or terminate the foregoing arrangements, except for (i) such executory contracts or plans specifically rejected pursuant to the Plan, including on the Schedule of Additional Rejected Contracts and Leases (to the extent such rejection does not violate section 1114 of the Bankruptcy Code), and (ii) such executory contracts or plans as have previously been terminated, or rejected, pursuant to a Final Order, or specifically waived by the beneficiaries of such plans, contracts, or programs.

**ARTICLE XVIII**

**LIQUIDATION ALTERNATIVE**

If the Plan is ***not*** confirmed and consummated, the Debtors believe the most likely alternative is a liquidation of the Debtors under Chapter 7 of the Code. In a Chapter 7 liquidation, a Chapter 7 trustee would incur additional Administrative Claims that would be paid before any distribution to creditors and would result in no additional value to claimholders. The Debtors

therefore believe that liquidation of its property in a Chapter 7 cases would dramatically reduce the total amount available to Creditors as compared to reorganization under this Plan. Thus, the Debtors recommends that Holders of Claims and Interests vote to accept the Plan. Please refer to the liquidation analysis attached as **Exhibit F** for an overview of potential distributions to creditors in a Chapter 7 liquidation.

Dated: January 7, 2021

**First Choice Healthcare Solutions, Inc.**

By: _____
Name:    Lance Friedman
Title:    Chief Executive Officer

**First Choice Medical Group of Brevard, LLC**

By: _____
Name:    Lance Friedman
Title:    Chief Executive Officer

**FCID Medical, Inc.**

By: _____
Name:    Lance Friedman
Title:    Chief Executive Officer

**Marina Towers, LLC**

By: _____
Name:    Lance Friedman
Title:    Chief Executive Officer

55951726;1