UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:   Case No. 6:20-bk-03355-KSJ
         Chapter 11
First Choice Healthcare Solutions, Inc., *et al.*,
         (Jointly Administered)
         Debtors.
_____/

**OBJECTION BY SYKES CREEK
PROFESSIONAL CENTER, LLC TO DEBTOR'S PLAN**

Sykes Creek Professional Center, LLC ("Sykes") objects to Debtors' plan (Doc. No. 306) (the "Plan").

A.   Background.

1.   Chapter 11 Case. On June 15, 2020, cases were filed under Subchapter V of Chapter 11, by Debtors: (a) First Choice Medical Group of Brevard, LLC ("Brevard"); (b) First Choice Healthcare Solutions, Inc. ("Solutions"); (c) FCID Medical, Inc.; and (d) Marina Towers, LLC. According to Debtors, the Debtors have total aggregate debts in the approximate amount of $3.8 million. *See* case management summary (Doc. No. 2).[1]

2.   Sykes' Claims. Brevard, as tenant, and Sykes, as landlord, entered into a lease of non-residential real property (the "Lease"). Solutions guaranteed (the "Guaranty") the obligations of Brevard under the Lease. Brevard rejected the Lease. *See* Doc. Nos. 88 (motion) and 159 (order). Sykes filed proofs of claim in the amount of $118,380.48, in: (a) the Brevard case (Claim No. 12), based on the Lease; and (b) Solutions case (Claim No. 11), based on the Guaranty.

3.   Plan. On January 7, 2021, Debtors filed the Plan. The Plan provides in relevant part:

**Class 3 – General Unsecured Claims**

---

[1] According to schedules filed by Debtors, the total amount of claims of nonpriority creditors is: (a) $410,400.91 for Solutions; and (b) $2,471,051.74 for Brevard (Doc. Nos. 184 and 185).

> . . . each Holder of an Allowed General Unsecured Claim shall receive Distributions equal to their *Pro Rata* share of $500,000 . . . payable within ninety (90) days from the Effective Date.
>
> **Class 7 – Equity Interests**
>
> Existing equity interests in Debtors shall be retained in the same proportion existing as of the Petition Date. . . . Class 6 is unimpaired and deemed to accept the Plan.
>
> **CONSOLIDATION OF THE**
> **DEBTORS FOR DISTRIBUTION PURPOSES**
>
> ***Solely in connection with Distributions*** to be made to the Holders of Allowed Claims, the Plan is predicated upon, and it is a condition precedent to confirmation of the Plan, that the Court provide in the Confirmation Order for the substantive consolidation of the Estates of the Debtors into a single Estate for purposes of Distributions under the Plan.
>
> Pursuant to the Confirmation Order, upon the Effective Date and without further order of the Court, . . . , (i) all liabilities of the substantively consolidated Debtors will be deemed to be merged *solely for purposes of this Plan and Distributions to be made hereunder*, . . . , and (vi) <u>all guarantees of the Debtors of the obligations of any other Debtors shall be deemed eliminated</u> so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the substantively consolidated Debtors.[2]

Underlining supplied.

B.    <u>Legal Authority and Argument</u>.

Bankruptcy Code § 1191(a) provides that: "The court shall confirm a plan under this subchapter only if all of the requirements of section 1129(a) . . . of this title are met."[3]

1.    <u>Plan Compliance and Substantive Consolidation</u>.    Bankruptcy Code § 1129(a)(1) provides that the court shall confirm a plan only if, among other requirements: "The plan complies with the applicable provisions of this title." The Plan does not comply.

---

[2] The Plan discriminates regarding the treatment of lease guarantees. Specifically, at p. 50, the Plan provides: "All guarantees of assumed leases and contracts shall remain in full force and effect after the Effective Date."

[3] Confirmation requirements are to be applied to each Debtor. *See In re Tribune*, 464 B.R. 126 (Bankr. D. Del. 2011).

The Plan contemplates: (i) "substantive consolidation of the Estates of the Debtors into a single Estate for purposes of Distributions under the Plan"; and (ii) "all guarantees of the Debtors of the obligations of any other Debtors shall be deemed eliminated".

There is no statutory authority specifically authorizing substantive consolidation.[4] Indeed, because substantive consolidation is an equitable remedy with no analogue in equity practice at the formation of the country, it has been argued that the decision of the Supreme Court in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc*., 527 U.S. 308 (1999), deprives the bankruptcy court of authority to substantively consolidate different bankruptcy estates. *See* J. Tucker, "Grupo Mexicano and the Death of Substantive Consolidation," 8 Am.Bankr. Inst. L. Rev. 427 (2000). *But see In re Owens Corning*, 419 F.3d 195, 208 n. 4 (3d Cir. 2005). Courts permitting substantive consolidation have generally found the source of the equitable power to substantively consolidate in Bankruptcy Code § 105. *See Eastgroup Properties v. Southern Motel Assocs. Ltd*., 935 F.2d 245 (11th Cir. 1991); *In re Reider*, 31 F.3d 1102, 1105 (11th Cir. 1994). Because of the potential harm to creditors, the power to consolidate should be used sparingly. *In re Owens Corning*, 419 F.3d 195, 205-6 (3rd Cir. 2005).

In *Eastgroup Properties v. Southern Motel Assocs. Ltd*., 935 F.2d 245, 249 (11th Cir. 1991), the court established a two part test that must be satisfied by the proponent of consolidation to establish a prima facie case for substantive consolidation: (i) there is a substantial identity of the entities to be consolidated; and (ii) consolidation is necessary to avoid some harm or to realize some benefit. If the proponent makes a prima facie showing, then the burden shifts to an objecting party "to show that (1) it has relied on the separate credit of one of the entities to be consolidated; and (2) it will be prejudiced by substantive consolidation." *Id.* at 249.

---

[4] On June 19, 2020, this Court entered an order (Doc. No. 32) providing in relevant part: "Nothing contained in this Order shall be construed as directing or otherwise effecting a substantive consolidation of the bankruptcy cases of the Debtors; it is the *Court's intention to jointly administer the bankruptcy cases of the Debtors for procedural purposes only*." Italics in original.

*In re Republic Airways Holdings Inc.*, 17-3442 (S.D.N.Y. March 28, 2018), involved a holding company and an airline subsidiary that confirmed a joint plan that provided for substantive consolidation. The appealing creditor was an aircraft lessor who had a lease claim against the airline and a guarantee claim against the holding company parent arising from rejection of an aircraft lease. Effectuating substantive consolidation, the plan eliminated all guarantee claims, but to obviate objections, the plan allowed creditors to opt out of consolidation. By opting out, a creditor would retain both its lease and guarantee claims and would receive payments as though substantive consolidation had not occurred. The bankruptcy court approved the plan and the creditor appealed. The district court considered the appeal under the standard announced in *In re Augie/Restivo Baking Co.*, 860 F.2d 515 (2d Cir. 1988),[5] and affirmed confirmation of the substantive consolidation plan because, based on the opt-out provision, no harm was suffered by the lessor.

Assuming this Court has continuing authority to approving substantive consolidation, such authority does not extend to substantive consolidation in this case where: (i) the Plan offers no "opt out" option to Sykes to avoid the significant harm of substantive consolidation; (ii) the proposed consolidation will expressly extinguish the Guaranty that was bargained for by Sykes; (iii) Debtors have carefully maintained their separate identities; and (iv) Sykes expressly relied on the separate credit of the Debtors as demonstrated in the Guaranty.[6]

There is no basis for substantive consolidation or elimination of the Guaranty. The Plan fails to comply with the applicable provisions of the Bankruptcy Code.

---

[5] In *In re Augie/Restivo Baking Co.*, 860 F.2d 515 (2d Cir. 1988), the court determined that the bankruptcy court had authority to approve substantive consolidation, but said that substantive consolidation must be used "sparingly" and cannot harm creditors, although there is no requirement that it benefit creditors. The court provided the following test for approval of substantive consolidation: (1) creditors dealt with affiliates as a single economic unit and did not rely on their separate corporate entities; and (2) the debtors' affairs are so entwined that consolidation will benefit all creditors.

[6] The Plan provides that lease guarantees will be honored only with respect to leases that are assumed. *See* Plan at p. 50.

2. <u>Best Interests of Creditors and Liquidation Analysis</u>. Bankruptcy Code § 1129(a)(7) provides:

> With respect to each impaired class of claims or interests—
>
> (A) each holder of a claim or interest of such class—
>   (i) has accepted the plan; or
>   (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date;
> . . .

Sykes filed proofs of claim in the amount of $118,380.48, in: (a) the Brevard case (Claim No. 12), based on the Lease; and (b) Solutions case (Claim No. 11), based on the Guaranty. Sykes is a holder of claims in Class 3 in the aggregate amount of $236,760.96. Sykes has rejected the Plan in the Solutions case and Brevard case. Under the Plan, Class 3 is projected to receive "their *Pro Rata* share of $500,000 . . . ." In addition, as a result of the proposed elimination of the Guaranty, the Plan contemplates the claims of Sykes will be further discounted by 50%. There is no way to determine from the Plan even a range of the anticipated distribution on account of claims in Class 3, but assuming the accuracy of Debtor's schedules and pleadings and elimination of the claim based on the Guaranty, Sykes will receive a distribution of approximately $15,576.37 on account of claims in the amount of $236,760.96, representing approximately 6% of the claims of Sykes.[7] Of course, if Debtors have understated the amount of allowed unsecured claims, then the distribution percentage will decline further.

Assuming the accuracy of Debtors' schedules: (a) Solutions owns property valued at $1,020,395.56, and has total debts in the amount of $628,946.72; and (b) Brevard owns property valued at $301,146.53, and has total debts in the amount of $2,663,759.12. *See* Doc. Nos. 184 and 185. The Debtors' liquidation analysis suggests the amount unsecured creditors would receive if

---

[7] Distribution amount / total claims per Debtors: 500,000 / 3,800,000 = 0.13. Distribution percentage x Sykes' claim (less claim based on Guaranty): .13 x 118,380.48 = 15,389.46. Distribution to Sykes / total claims of Sykes: 15,389.46 / 236,760.96 = .065

Debtors were liquidated on the Effective Date would be less than the pennies unsecured creditors will receive under the Plan, but, putting aside the deep liquidation discounts proposed by Debtors, the liquidation analysis: (a) fails to even acknowledge over $3 million from the capital raise that will be available to Debtors before the Effective Date (*see* Plan at p. 33); and (b) assumes almost $1.4 million in "Professional Fees & Admin Expenses" in a case that was filed with total debts in the approximate amount of $3.8 million. Assuming the accuracy of Debtors' schedules and projections, and professional fees in a reasonable amount, unsecured creditors, including Sykes, would receive a far greater distribution in a liquidation.

3. <u>Class Vote</u>. Bankruptcy Code § 1129(a)(8) provides: "With respect to each class of claims or interests – (A) such class has accepted the plan; or (B) such class is not impaired under the plan." According to the Plan, Class 3 is impaired. Sykes has voted to reject the Plan in the Solutions case and Brevard case.

4. <u>Impaired Class</u>. Bankruptcy Code § 1129(a)(10) provides: "If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan . . . ." According to the Plan, Class 3 is impaired. Sykes has voted to reject the Plan.

5. <u>Non Consensual Confirmation</u>. Bankruptcy Code § 1191 provides:

> (b) . . . , if all of the applicable requirements of section 1129(a) of this title, other than paragraphs (8), (10), . . . of that section, are met with respect to a plan, the court, on request of the debtor, shall confirm the plan notwithstanding the requirements of such paragraphs if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.
>
> (c) For purposes of this section, the condition that a plan be fair and equitable with respect to each class of claims or interests includes the following requirements:
>    (1) . . . .
>    (2) As of the effective date of the plan—
>      (A) the plan provides that all of the projected disposable income of the debtor to be received in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on

the date that the first payment is due under the plan will be applied to make payments under the plan; . . .
    (3) (A) (i) The debtor will be able to make all payments under the plan; or
        (ii) there is a reasonable likelihood that the debtor will be able to make all payments under the plan; and
    (B) the plan provides appropriate remedies, which may include the liquidation of nonexempt assets, to protect the holders of claims or interests in the event that the payments are not made.

(d) For purposes of this section, the term "disposable income" means the income that is received by the debtor and that is not reasonably necessary to be expended—
    (1) . . .
    (2) for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor.

    a.    <u>Disposable Income</u>. Debtors do not propose to devote all "disposable income" to the Plan. Assuming the validity of Debtors' projections, including $2 million in "capital expenditures" (*see* Plan – Five Year Summary), Debtors will have net disposable income ("Ending Cash Balance") in the amount of $976,066, plus $500,000 Debtors propose to distribute pro rata to holders of unsecured claims. Under the Plan, Debtors propose to distribute on account of unsecured claims approximately one-third of Debtors' disposable income.

    b.    <u>Fair and Equitable</u>. The Plan is not fair or equitable. The requirement that the Plan be "fair and equitable" <u>includes</u>, but is not limited to (*see* section 102(3)) the express requirements in section 1191. Under the Plan, Debtors project a cash balance at the end of the five years in the amount of $976,066, after $2 million in "capital expenditures." Thus, at the end of five years, unimpaired stockholders will own the Debtors, debt free, with: (a) $2 million of recent capital expenditures; (b) annual EBITDA in excess of $4 million; and (c) approximately $1 million cash on hand. On the other hand, under the Plan: (a) Sykes will receive no distribution on account of the unsecured claim in the Solutions case; and (b) unsecured creditors in Class 3 are projected to receive a pro rata share of $500,000, constituting pennies on the dollar. A "fair and equitable" plan cannot:

7

(a) impair unsecured creditors; (b) eliminate guaranty claims; and (c) create a windfall to the unimpaired class of holders of equity.

Therefore, Sykes requests the order of this Court denying confirmation of the Plan and granting such further relief as may be appropriate.

C.     Certificate of Service. I certify that a copy of this objection has been served on January 15, 2021: (1) on all "filing users" through the CM/ECF filing system; and (2) by first class mail, postage prepaid, to Debtors: (a) First Choice Healthcare Solutions, Inc., Attn: Phillip J. Keller, 709 S. Harbor City Blvd., Suite 530, Melbourne, FL 32901; (b) FCID Medical, Inc., Attn: Phillip J. Keller, 709 S. Harbor City Blvd., Suite 530, Melbourne, FL 32901; (c) First Choice Medical Group of Brevard, LLC, Attn: Phillip J. Keller, 709 S. Harbor City Blvd., Suite 100, Melbourne, FL 32901; and (d) Marina Towers LLC, Attn: Phillip J. Keller, 709 S. Harbor City Blvd., Suite 530, Melbourne, FL 32901.

/s/ David R. McFarlin
David R. McFarlin
Florida Bar No. 328855
Fisher Rushmer, P.A.
390 N. Orange Avenue, Suite 2200
Post Office Box 3753
Orlando, FL 32801
Telephone (407) 843-2111
Facsimile (407) 422-1080
dmcfarlin@fisherlawfirm.com
Attorneys for Sykes Creek Professional Center, LLC