UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In Re: | Chapter 11 |
| FIRST CHOICE HEALTHCARE SOLUTIONS, INC., et al., | Case No.: 6:20-BK-03355-KSJ |
| | (Jointly Administered) |
| Debtors. / | |

### MOTION FOR TURNOVER OF LEASED EQUIPMENT DUE TO DEBTORS' FAILURE TO MAKE PLAN PAYMENTS
### (U.S. BANK NATIONAL ASSOCIATION)

U.S. BANK NATIONAL ASSOCIATION d/b/a U.S. BANK EQUIPMENT FINANCE, ("Creditor" or "U.S. BANK") by and through its undersigned counsel, respectfully moves this Court for an Order requiring the Debtors to turn-over the subject leased equipment to U.S. BANK as a result of the Debtors' failing to make payment as required under the Plan of Reorganization, and in support of its Motion states as follows:

### BACKGROUND

1. That on or about June 15, 2020, FIRST CHOICE HEALTHCARE SOLUTIONS, INC., *et al* filed for relief under Chapter 11 of the United States Bankruptcy Code. This case is / was Jointly Administered with FIRST CHOICE MEDICAL GROUP OF BREVARD COUNTY LLC.

2. That on or about July 5, 2018, the Jointly Administered Debtor, FIRST CHOICE MEDICAL GROUP OF BREVARD COUNTY LLC and U.S. BANK entered into that certain *Lease Agreement*, whereby the said Debtor agreed to pay sixty (60) consecutive monthly payments of $2,112.00 for the financing of the following equipment:

- One (1)-XPORTE ULTRASOUND KIOSK SYSTEM AND STAND
- One (1)-SONOSITE S II ULTRASOUND SYSTEM
- One (1)-STEEP NEEDLE PROFILING TECH
- One (1)-DICOM
- One (1)-HFL50X/15-6MHZ TRANSDUCER BIOPSY COMP
- One (1)-RC60XI/5-2 MHZ TRANSDUCER BIOPSY COMP
- One (1)-SII STAND
- One (1)-SONOSITE S II ULTRASOUND SYSTEM
- One (1)-STEEP NEEDLE PROFILING TECHNOLOGY
- One (1)-DICOM
- One (1)-HFL50X/15-6 MHZ TRANSDUCER BIOPSY COMP
- One (1)-RC60XI/5-2MHZ TRANSDUCER BIOPSY COMP
- One (1)-SII STAND
- One (1)-WIRELESS DATA MANAGEMENT

(Herein "Leased Equipment")

3. In connection with the *Lease Agreement*, Joint Administered Debtor, FIRST CHOICE HEALTHCARE SOLUTIONS, INC., executed that certain Guaranty, guaranteeing the obligations of FIRST CHOICE MEDICAL GROUP OF BREVARD COUNTY LLC thereunder. A true and correct copy of the *Lease Agreement* and related documents, including said Guaranty, is attached hereto and incorporated herein by reference as **Exhibit "A"**,

4. As additional security under the *Lease Agreement*, U.S. Bank filed a UCC Financing Statement. A true and correct copy of the UCC Financial Statement is attached hereto and incorporated herein by reference as **Exhibit "B"**.

5. U.S. BANK, is the owner and holder of the *Lease Agreement*, including the Guaranty.

6. In this Bankruptcy case, Debtors, FIRST CHOICE MEDICAL GROUP OF BREVARD COUNTY LLC and FIRST CHOICE HEALTHCARE SOLUTIONS, INC., assumed the *Lease Agreement* pursuant to the confirmed Debtor's Amended Joint Plan of Reorganizational of Reorganization [Doc. No. 306], as modified by the Debtors' Notice of Filing Modification to Debtors' Plan of Reorganization dated February 2, 2021 [Doc. No. 349], and most

*Motion For Turnover*
*Case No.: 6:20-BK-03355-KSJ*

notably, ¶ 8 of the Order Confirming Debtors' Amended Joint Plan of Reorganization [Doc. No. 405] (all collectively the "Plan").

7. Pursuant to the Confirmation Order, ¶ 8 [Doc. No. 405]:

Executory Contracts. The Plan's assumption of any identified unexpired leases and executory contracts pursuant to 11 U.S.C. §§ 365 and 1123(b) is approved. The rejection of all or other executory contracts and unexpired leases is approved under the Plan. **For avoidance of doubt, the Debtor First Choice Medical Group of Brevard, LLC assumes the lease with U. S. Bank Equipment Finance. More specifically (as to U.S. Bank), and to remove any doubt, the Debtor, First Choice Medical Group of Brevard, LLC, assumes the lease with U.S. Bank d/b/a U.S. Bank Equipment Finance (*to wit:* that certain Lease Agreement, by and between U.S. Bank and First Choice Medical Group of Brevard LLC, dated July 5, 2018, and guaranteed by First Choice Healthcare Solutions Inc., and related documents) and that the parties are bound by the terms of the Lease Agreement (including all default provisions) without further Court Order.**

## GROUNDS FOR RELIEF

8. Debtors, FIRST CHOICE MEDICAL GROUP OF BREVARD COUNTY LLC and FIRST CHOICE HEALTHCARE SOLUTIONS, INC., defaulted under the terms of the Plan by failing to make the monthly payments due on July 5, 2022 and all subsequent payments.[1]

9. Therefore, U.S. BANK requests that this honorable court require the Debtor to turn-over the leased equipment, as a result of its material and continuing default under the Plan (as to U.S. BANK), and do so within seven (7) days, in a cooperative manner, and retain jurisdiction to enforce such turnover, and grant any other relief to ensure turnover of the leased equipment.

---

[1] On May 20th, June 16th, and June 29th, 2022, Counsel for U.S. BANK contacted Debtor's counsel, Thomas Adam Esq., advising him of the default(s) that then existed for the May and June 2022 payments; and, pursuant to Mr. Adam's July 1, 2022 email, Plaintiff's counsel also directly contacted the CFO of the Debtor on that date regarding same. Counsel has also contacted debtor's counsel (and Debtor directly, as authorized by Debtor's counsel) on 9-22-22 regarding the current past due payments.

*Motion For Turnover*
*Case No.: 6:20-BK-03355-KSJ*

10. U.S. BANK, has employed the firm of Emanuel & Zwiebel, PLLC to represent it in this action and has obligated itself to pay a fee. Debtors have agreed to pay such fees pursuant to the terms of the *Lease Agreement*.

11. U.S. BANK Requests that the Court waive the requirement of Bankruptcy Rule 4001(a)(3), thereby allowing an Order to be effective upon this Honorable Court's execution thereof.

WHEREFORE, Creditor, U.S. BANK NATIONAL ASSOCIATION d/b/a U.S. BANK EQUIPMENT FINANCE, prays for the entry of an Order as set forth herein, including requiring the Debtor to turn over the leased equipment within seven (7) days, in a cooperative manner, and retain jurisdiction to enforce the Order for turnover; and requests waiver of the requirement of Bankruptcy Rule 4001(a)(3) so that such Order will be effective upon the Court's signature, and grant any such other and further relief that this Honorable Court deems just and equitable.

## VERIFICATION / AFFIDAVIT

I, Glenda A. Werkman, of U.S. BANK NATIONAL ASSOCIATION d/b/a U.S. BANK EQUIPMENT FINANCE ("Creditor" or "U.S. BANK), hereby deposes and says:

1. I am a Senior Loss Mitigation Specialist at U.S. BANK, and I am authorized to execute this Verification / Affidavit on behalf thereof.

2. I have read the foregoing *Motion For Turnover of Leased Equipment Due To Debtors' Failure To Make Plan Payments* (hereinafter "Motion"), in this matter, and I have personal knowledge of the facts set forth therein, or of these facts as they appear in the business records, reports, memoranda, and data compilations of U.S. BANK, made at or near the time of the events described by, or from information transmitted by, a person(s) with knowledge of the events described, whose regular practice it was to make and keep such records in the ordinary course of the regularly conducted business activities of U.S. BANK; that I am one of the persons with custody of such records; that I am familiar with the methods, preparation, and identity of such records; and that I routinely rely on such records in the usual course of my business and the business of U.S. BANK.

*Motion For Turnover*
*Case No.: 6:20-BK-03355-KSJ*

3. The *Lease Agreement* which is the subject of the Amended Motion is in default for failure to make the July 5, 2022 payment and all subsequent payments.

(continued)

FURTHER AFFIANT SAYETH NAUGHT.

_____
Glenda A. Werkman
Senior Loss Mitigation Specialist
U.S. Bank National Association
d/b/a U.S. Bank Equipment Finance
Dated: 9-27-2022

STATE OF MINNESOTA )
COUNTY OF Lyon )

BEFORE ME, the undersigned authority, duly qualified and authorized to administer oaths in the State of Minnesota, personally appeared **Glenda A. Werkman**, as Senior Loss Mitigation Specialist, U.S. BANK, who having been duly sworn, deposes and says that the statements set forth in the foregoing are true. She is personally known to me or has produced _____ as identification.

SWORN to and SUBSCRIBED before me this 27 day of September, 2022, in Lyon County, Minnesota.

NOTARY PUBLIC, STATE OF MINNESOTA
Print: Danielle Ormberg
Sign: _____
My Commission Expires: 1-31-27

DANIELLE RENEE ORMBERG
Notary Public
Minnesota
My Commission Expires
Jan 31, 2027

## CERTIFICATE OF SERVICE

Creditor, U.S. Bank National Association, d/b/a U.S. Bank Equipment Finance, by and through its undersigned counsel, hereby certifies that on the __28th__ day of September, 2022, a true and correct copy of the forgoing Motion was served electronically via CM/ECF, or by regular United Stated Mail, to all parties on the Service List, and to all Rule 1007-2 Parties in interest on the attached matrix.

**EMANUEL & ZWIEBEL, PLLC**
Attorneys for Creditor:
*U.S. Bank National Association*
*d/b/a U.S. Bank Equipment Finance*
7900 Peters Road
Executive Court at Jacaranda
Building B, Suite 100
Plantation, Florida 33324
(954) 472-7500 Phone

By: */s/ Ronald M. Emanuel*
Ronald M. Emanuel, Esq.
Florida Bar No.: 746932
ron.emanuel@emzwlaw.com

**Via CM/ECF on** 9/28/2022
Thomas C. Adam, Esq.
Aaron R. Cohen, Trustee
United States Trustee - ORL
Miriam G. Suarez - Office of the US Trustee

**Via U.S. Mail** on 9/28/2022

First Choice Healthcare Solutions, Inc.
95 Bulldog Blvd., Suite 202
Melbourne, FL 32901
Attn: Lance Friedman, CEO

First Choice Healthcare Solutions, Inc.
c/o Julie L. Hardesty, Registered Agent
95 Bulldog Blvd., Suite 202
Melbourne, FL 32901

*Motion For Turnover*
*Case No.: 6:20-BK-03355-KSJ*

First Choice Medical Group Of Brevard County LLC
95 Bulldog Blvd., Suite 202
Melbourne, FL 32901
Attn: Lance Friedman, Manager

First Choice Medical Group of Brevard County LLC
c/o FCID Medical, Inc., Registered Agent of First Choice Medical Group of Brevard County LLC
95 Bulldog Blvd., Suite 202
Melbourne, FL 32901
Attn: Lance Friedman, CEO of FCID Medical Inc.

FCID Medical, Inc., Registered Agent of First Choice Medical Group of Brevard County LLC
95 Bulldog Blvd., Suite 202
Melbourne, FL 32901
Attn: Julie L. Hardesty, Registered Agent of FCID Medical Inc.

First Choice Healthcare Solutions, Inc.
Attn: Lance Friedman
709 S. Harbor City Blvd., Suite 530
Melbourne, FL 32901
BREVARD-FL

All parties on the attached matrix not designated to receive notice via CM/ECF.



**Lease Agreement**



**AGREEMENT NO.**
▮▮▮▮4051

## EQUIPMENT FINANCE

Send Account Inquiries to: 1310 Madrid Street · Marshall, MN 56258
Send Payments to: PO Box 790448 · St. Louis MO 63179-0448

The words "**Lessee**," "**you**" and "**your**" refer to Customer. The words "**Lessor**," "**we**," "**us**" and "**our**" refer to U.S. Bank Equipment Finance, a division of U.S. Bank National Association ("U.S. Bank Equipment Finance").

### CUSTOMER INFORMATION

| FULL LEGAL NAME | | | STREET ADDRESS | | |
|---|---|---|---|---|---|
| FIRST CHOICE MEDICAL GROUP OF BREVARD LLC | | | 709 S HARBOR CITY BLVD | | |
| CITY | STATE | ZIP | PHONE | | FAX |
| MELBOURNE, FL 32901 | | | (321) 725-0090 | | |
| EQUIPMENT LOCATION (IF DIFFERENT FROM ABOVE) | | | E-MAIL | | |
| 709 S HARBOR CITY BLVD, MELBOURNE, FL 32901 | | | | | |
| BILLING STREET ADDRESS (IF DIFFERENT FROM CUSTOMER ADDRESS ABOVE) | | | CITY | STATE | ZIP |
| 709 S HARBOR CITY BLVD | | | MELBOURNE, FL 32901 | | |

### EQUIPMENT DESCRIPTION

See Schedule A

together with all replacements, parts, repairs, additions, and accessions incorporated therein or attached thereto and any and all proceeds of the foregoing, including, without limitation, insurance recoveries.

☒ See attached Schedule A

### PAYMENT & TERM INFORMATION

Advance Payment: **$0.00**
*(plus applicable taxes)*
If you are exempt from sales tax, attach your certificate.

**60** Payments of **$2,112.00**
*(plus applicable taxes)*
The payment ("Payment") period is monthly unless otherwise indicated

### END OF TERM OPTIONS

You may choose one of the following options, which you may exercise at the end of the term, provided that no event of default under this Agreement has occurred and is continuing. If no box is checked, Fair Market Value will be your end of term option. Fair Market Value means the value of the Equipment in continued use.

☐ Purchase all of the Equipment for its Fair Market Value, renew this Agreement or return the Equipment.

☒ Purchase all of the Equipment for ___$1.00___. At the end of the term, title to the Equipment will automatically transfer to you, AS IS, WHERE IS, with no warranties of any kind.

**Upon acceptance of the Equipment, THIS AGREEMENT IS NONCANCELABLE, IRREVOCABLE AND CANNOT BE TERMINATED.**

1. **AGREEMENT:** You agree to lease from us the goods ("Equipment") and, if applicable, finance certain software, software license(s), software components and/or professional services in connection with software (collectively, the "Financed Items," which are included in the word "Equipment" unless separately stated) from software licensor(s) and/or supplier(s) (collectively, the "Supplier"), all as described in this Agreement and in any attached schedule, addendum or amendment hereto ("Agreement"). You represent and warrant that you will use the Equipment for business purposes only. You agree to all of the terms and conditions contained in this Agreement, which, with the acceptance certification, is the entire agreement between you and us regarding the Equipment and which supersedes any purchase order, invoice, request for proposal, response or other related document. This Agreement becomes valid upon execution by us. The term shall start on the date we pay Supplier. If no advance payment is required, the first Payment is due __30__ days after the start of this Agreement and each Payment thereafter shall be due on the same day of each month (the "Scheduled Due Date") unless a different due date is mutually agreed to by us and you. If the parties agree to adjust the Payment due date (an "Adjusted Due Date"), in addition to all Payments and other amounts due hereunder, you will pay an interim payment in an amount equal to 1/30th of the Payment, multiplied by the number of days between the Scheduled Due Date and the Adjusted Due Date. If any provision of this Agreement is declared unenforceable, the other provisions herein shall remain in full force and effect to the fullest extent permitted by law.

2. **OWNERSHIP; PAYMENTS; TAXES AND FEES:** We own the Equipment, excluding any Financed Items. Ownership of any Financed Items shall remain with Supplier thereof. You will pay all Payments, as adjusted, when due, without notice or demand and without abatement, set-off, counterclaim or deduction of any amount whatsoever. If any part of a Payment is more than 5 days late, you agree to pay a late charge of 10% of the Payment which is late or, if less, the maximum charge allowed by law. The Payment may be adjusted proportionately upward or downward: (i) by up to 10% to accommodate changes in the Equipment cost; (ii) if the shipping charges or taxes differ from the estimate given to you; (iii) to comply with the tax laws of the state in which the Equipment is located; and/or (iv) if a down payment or deposit is deducted. You shall pay all applicable taxes, assessments and penalties related to this Agreement, whether levied or assessed on this Agreement, on us (except on our income) or you, or on the Equipment, its lease, sale, ownership, possession, use or operation. If we pay any taxes or other expenses that are owed hereunder, you agree to reimburse us when we request. You agree to pay us a yearly processing fee of up to $50 for personal property taxes we pay related to the Equipment. You agree to pay us a fee of up to $50 for filing, searching and/or titling costs required under the Uniform Commercial Code ("UCC") or other laws. You agree to pay us an origination fee of $159.00 for all closing costs. We may apply all sums received from you to any amounts due and owed to us under the terms of this Agreement. If for any reason your check is returned for insufficient funds, you will pay us a service charge of $30 or, if less, the maximum charge allowed by law. We may make a profit on any fees, estimated tax payments and other charges paid under this Agreement.

### CUSTOMER ACCEPTANCE

BY SIGNING BELOW OR AUTHENTICATING AN ELECTRONIC RECORD HEREOF, YOU CERTIFY THAT YOU HAVE REVIEWED AND DO AGREE TO ALL TERMS AND CONDITIONS OF THIS AGREEMENT ON THIS PAGE AND ON PAGE 2 ATTACHED HERETO.

| FIRST CHOICE MEDICAL GROUP OF BREVARD LLC | X *[signature]* | CFO |
|---|---|---|
| CUSTOMER (AS REFERENCED ABOVE) | SIGNATURE | TITLE |
| ▮▮▮▮6287 | Phillip J. Kelley | 5/31/18 |
| FEDERAL TAX IDENTIFICATION NUMBER | PRINT NAME | DATED |

### LESSOR ACCEPTANCE

| U.S. Bank Equipment Finance | *[signature]* | Authorized Signatory | 7/5/18 |
|---|---|---|---|
| LESSOR | SIGNATURE | TITLE | DATED |

10227 (2017) REV 11/17      Page 1 of 2

**Exhibit "A"**

3. **EQUIPMENT; SECURITY INTEREST:** At your expense, you shall keep the Equipment: (i) in good repair, condition and working order, in compliance with applicable laws, ordinances and manufacturers' and regulatory standards; (ii) free and clear of all liens and claims; and (iii) at your address shown on page 1, and you agree not to move it unless we agree in writing. You grant us a security interest in the Equipment to secure all amounts you owe us under this Agreement or any other agreement with us ("Other Agreements"), except amounts under Other Agreements which are secured by land and/or buildings. You authorize and ratify our filing of any financing statement(s) and the naming of us on any vehicle title(s) to show our interest. You will not change your name, state of organization, headquarters or residence without providing prior written notice to us. You will notify us within 30 days if your state of organization revokes or terminates your existence.

4. **INSURANCE; COLLATERAL PROTECTION; INDEMNITY; LOSS OR DAMAGE:** You agree to keep the Equipment fully insured against all risk, with us named as lender's loss payee, in an amount not less than the full replacement value of the Equipment until this Agreement is terminated. You also agree to maintain commercial general liability insurance with such coverage and from such insurance carrier as shall be satisfactory to us and to include us as an additional insured on the policy. You will provide written notice to us within 10 days of any modification or cancellation of your insurance policy(s). You agree to provide us certificates or other evidence of insurance acceptable to us. If you do not provide us with acceptable evidence of property insurance within 30 days after the start of this Agreement, we may, at our sole discretion, charge you a monthly property damage surcharge of up to .0035 of the Equipment cost as a result of our credit risk and administrative and other costs, as would be further described on a letter from us to you. We may make a profit on this program. NOTHING IN THIS PARAGRAPH WILL RELIEVE YOU OF RESPONSIBILITY FOR LIABILITY INSURANCE ON THE EQUIPMENT. We are not responsible for, and you agree to hold us harmless and reimburse us for and to defend on our behalf against, any claim for any loss, expense, liability or injury caused by or in any way related to delivery, installation, possession, ownership, leasing, manufacture, use, condition, inspection, removal, return or storage of the Equipment. All indemnities will survive the expiration or termination of this Agreement. You are responsible for any loss, theft, destruction or damage to the Equipment ("Loss"), regardless of cause, whether or not insured. You agree to promptly notify us in writing of any Loss. If a Loss occurs and we have not otherwise agreed in writing, you will promptly pay to us the unpaid balance of this Agreement, including any future Payments to the end of the term plus the anticipated residual value of the Equipment, both discounted to present value at 2%. Any proceeds of insurance will be paid to us and credited against the Loss. You authorize us to sign on your behalf and appoint us as your attorney-in-fact to endorse in your name any insurance drafts or checks issued due to a Loss.

5. **ASSIGNMENT:** YOU SHALL NOT SELL, TRANSFER, ASSIGN, ENCUMBER, PLEDGE OR SUBLEASE THE EQUIPMENT OR THIS AGREEMENT, without our prior written consent. You shall not consolidate or merge with or into any other entity, distribute, sell or dispose of all or any substantial portion of your assets other than in the ordinary course of business, without our prior written consent, and the surviving, or successor entity or the transferee of such assets, as the case may be, shall assume all of your obligations under the Agreement by a written instrument acceptable to us. No event shall occur which causes or results in a transfer of majority ownership of you while any obligations are outstanding hereunder. We may sell, assign, or transfer this Agreement without notice to or consent from you. You agree that if we sell, assign or transfer this Agreement, our assignee will have the same rights and benefits that we have now and will not have to perform any of our obligations. You agree that our assignee will not be subject to any claims, defenses, or offsets that you may have against us. This Agreement shall be binding on and inure to the benefit of the parties hereto and their respective successors and assigns.

6. **DEFAULT AND REMEDIES:** You will be in default if: (i) you do not pay any Payment or other sum due to us or you fail to perform in accordance with the covenants, terms and conditions of this Agreement or any other agreement with us or any of our affiliates or fail to perform or pay under any material agreement with any other entity; (ii) you make or have made any false statement or misrepresentation to us; (iii) you or any guarantor dies, dissolves, liquidates, terminates existence or is in bankruptcy; (iv) you or any guarantor suffers a material adverse change in its financial, business or operating condition; or (v) any guarantor defaults under any guaranty for this Agreement. If you are ever in default, at our option, we can cancel this Agreement and require that you pay the unpaid balance of this Agreement, including any future Payments to the end of term plus the anticipated residual value of the Equipment, both discounted to present value at 2%. We may recover default interest on any unpaid amount at the rate of 12% per year. Concurrently and cumulatively, we may also use any remedies available to us under the UCC and any other law and we may require that you immediately stop using any Financed Items. If we take possession of the Equipment, you agree to pay the costs of repossession, moving, storage, repair and sale. The net proceeds of the sale of any Equipment will be credited against what you owe us under this Agreement and you will be responsible for any deficiency. In the event of any dispute or enforcement of our rights under this Agreement or any related agreement, you agree to pay our reasonable attorneys' fees (including any incurred before or at trial, on appeal or in any other proceeding), actual court costs and any other collection costs, including any collection agency fees. WE SHALL NOT BE RESPONSIBLE TO PAY YOU ANY CONSEQUENTIAL, INDIRECT OR INCIDENTAL DAMAGES FOR ANY DEFAULT, ACT OR OMISSION BY ANYONE. Any delay or failure to enforce our rights under this Agreement will not prevent us from enforcing our rights at a later time. You agree that this Agreement is a "Finance Lease" as defined by Article 2A of the UCC and your rights and remedies are governed exclusively by this Agreement. You waive all rights under sections 2A-508 through 522 of the UCC. If interest is charged or collected in excess of the maximum lawful rate, we will refund such excess to you, which will be your sole remedy.

7. **INSPECTIONS AND REPORTS:** We have the right, at any reasonable time, to inspect the Equipment and any documents relating to its installation, use, maintenance and repair. Within 30 days after our request (or such longer period as provided herein), you will deliver all requested information (including tax returns) which we deem reasonably necessary to determine your current financial condition and faithful performance of the terms hereof. This may include: (i) compiled, reviewed or audited annual financial statements (including, without limitation, a balance sheet, a statement of income, a statement of cash flow, a statement of changes in equity and notes to financial statements) within 120 days after your fiscal year end; and (ii) management-prepared interim financial statements within 45 days after the requested reporting period(s). Annual statements shall set forth the corresponding figures for the prior fiscal year in comparative form, all in reasonable detail without any qualification or exception deemed material by us. Unless otherwise accepted by us, each financial statement shall be prepared in accordance with generally accepted accounting principles consistently applied and shall fairly and accurately present your financial condition and results of operations for the period to which it pertains. You authorize us to obtain credit bureau reports for credit and collection purposes and to share them with our affiliates and agents.

8. **END OF TERM:** Unless the purchase option is $1.00, at the end of the initial term, this Agreement shall renew for successive 3-month renewal term(s) under the same terms hereof unless you send us written notice between 90 and 150 days before the end of the initial term or at least 30 days before the end of any renewal term that you want to purchase or return the Equipment, and you timely purchase or return the Equipment. You shall continue making Payments and paying all other amounts due until the Equipment is purchased or returned. As long as you have given us the required written notice, if you do not purchase the Equipment, you will return all of the Equipment and all related manuals and use and maintenance records to a location we specify, at your expense, in retail re-saleable condition, full working order and complete repair. YOU ARE SOLELY RESPONSIBLE FOR REMOVING ANY DATA THAT MAY RESIDE IN THE EQUIPMENT, INCLUDING BUT NOT LIMITED TO HARD DRIVES, DISK DRIVES OR ANY OTHER FORM OF MEMORY.

9. **USA PATRIOT ACT NOTICE; ANTI-TERRORISM AND ANTI-CORRUPTION COMPLIANCE:** To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify, and record information that identifies each customer who opens an account. When you enter into a transaction with us, we ask for your business name, address and other information that will allow us to identify you. We may also ask to see other documents that substantiate your business identity. You and any other person who you control, own a controlling interest in, or who owns a controlling interest in or otherwise controls you in any manner ("Representatives") are and will remain in full compliance with all laws, regulations and government guidance concerning foreign asset control, trade sanctions, embargoes, and the prevention and detection of money laundering, bribery, corruption, and terrorism, and neither you nor any of your Representatives is or will be listed in any Sanctions-related list of designated persons maintained by the U.S. Department of Treasury's Office of Foreign Assets Control or successor or the U.S. Department of State. You shall, and shall cause any Representative to, provide such information and take such actions as are reasonably requested by us in order to assist us in maintaining compliance with anti-money laundering laws and regulations.

10. **MISCELLANEOUS:** Unless otherwise stated in an addendum hereto, the parties agree that: (i) this Agreement and any related documents hereto may be authenticated by electronic means; (ii) the "original" of this Agreement shall be the copy that bears your manual, facsimile, scanned or electronic signature and that also bears our manually or electronically signed signature and is held or controlled by us; and (iii) to the extent this Agreement constitutes chattel paper (as defined by the UCC), a security interest may only be created in the original. You agree not to raise as a defense to the enforcement of this Agreement or any related documents that you or we executed or authenticated such documents by electronic or digital means or that you used facsimile or other electronic means to transmit your signature on such documents. Notwithstanding anything to the contrary herein, we reserve the right to require you to sign this Agreement or any related documents hereto manually and to send to us the manually signed, duly executed documents via overnight courier on the same day that you send us the facsimile, scanned or electronic transmission of the documents. You agree to execute any further documents that we may request to carry out the intents and purposes of this Agreement. Whenever our consent is required, we may withhold or condition such consent in our sole discretion, except as otherwise expressly stated herein. From time to time, Supplier may extend to us payment terms for Equipment financed under this Agreement that are more favorable than what has been quoted to you or the general public, and we may provide Supplier information regarding this Agreement if Supplier has assigned or referred it to us. All notices shall be mailed or delivered by facsimile transmission or overnight courier to the respective parties at the addresses shown on this Agreement or such other address as a party may provide in writing from time to time. By providing us with a telephone number for a cellular phone or other wireless device, including a number that you later convert to a cellular number, you are expressly consenting to receiving communications, including but not limited to prerecorded or artificial voice message calls, text messages, and calls made by an automatic telephone dialing system, from us and our affiliates and agents at that number. This express consent applies to each such telephone number that you provide to us now or in the future and permits such calls for non-marketing purposes. Calls and messages may incur access fees from your cellular provider. You authorize us to make non-material amendments (including completing and conforming the description of the Equipment) on any document in connection with this Agreement. Unless stated otherwise herein, all other modifications to this Agreement must be in writing and signed by each party or in a duly authenticated electronic record. This Agreement may not be modified by course of performance.

11. **WARRANTY DISCLAIMERS:** WE ARE LEASING THE EQUIPMENT TO YOU "AS-IS." YOU HAVE SELECTED SUPPLIER AND THE EQUIPMENT BASED UPON YOUR OWN JUDGMENT. WE DO NOT TAKE RESPONSIBILITY FOR THE INSTALLATION OR PERFORMANCE OF THE EQUIPMENT. SUPPLIER IS NOT AN AGENT OF OURS AND WE ARE NOT AN AGENT OF SUPPLIER, AND NOTHING SUPPLIER STATES OR DOES CAN AFFECT YOUR OBLIGATIONS HEREUNDER. YOU WILL MAKE ALL PAYMENTS UNDER THIS AGREEMENT REGARDLESS OF ANY CLAIM OR COMPLAINT AGAINST ANY SUPPLIER, LICENSOR OR MANUFACTURER, AND ANY FAILURE OF A SERVICE PROVIDER TO PROVIDE SERVICES WILL NOT EXCUSE YOUR OBLIGATIONS TO US UNDER THIS AGREEMENT. WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, OF, AND TAKE ABSOLUTELY NO RESPONSIBILITY FOR, MERCHANTABILITY, FITNESS FOR ANY PARTICULAR PURPOSE, CONDITION, QUALITY, ADEQUACY, TITLE, DATA ACCURACY, SYSTEM INTEGRATION, FUNCTION, DEFECTS, INFRINGEMENT OR ANY OTHER ISSUE IN REGARD TO THE EQUIPMENT, ANY ASSOCIATED SOFTWARE AND ANY FINANCED ITEMS. SO LONG AS YOU ARE NOT IN DEFAULT UNDER THIS AGREEMENT, WE ASSIGN TO YOU ANY WARRANTIES IN THE EQUIPMENT GIVEN TO US.

12. **LAW; JURY WAIVER:** This Agreement will be governed by and construed in accordance with Minnesota law. You consent to jurisdiction and venue of any state or federal court in Minnesota and waive the defense of inconvenient forum. For any action arising out of or relating to this Agreement or the Equipment, BOTH PARTIES **WAIVE ALL RIGHTS TO A TRIAL BY JURY.**

X CUSTOMER INITIALS: ___



**EQUIPMENT FINANCE**

**GUARANTY**
**(By a Business Organization)**
**AGREEMENT #**

▉4051

Customer: FIRST CHOICE MEDICAL GROUP OF BREVARD LLC

The words Lessor/Secured Party, we, us and our refer to U.S. Bank Equipment Finance, a division of U.S. Bank National Association ("USBEF"). The words you, your and Guarantor refer to the undersigned Guarantor.

As additional inducement for us to enter into the above-referenced Agreement (the "Agreement"), the undersigned ("you") unconditionally and absolutely, jointly and severally, guarantees the full and prompt payment, performance and discharge of each and every obligation of the above-named Customer required under the Agreement and any addenda, schedules and supplements thereto. This is a continuing Guaranty and shall not be revoked by your dissolution, merger, bankruptcy, incompetency or insolvency. You may not terminate or revoke this Guaranty without written notice to us, and this Guaranty shall continue in full force and effect with regard to all of Customer's obligations arising prior to the date of such notice. You agree that we may make changes, including compromise or settlement, with the Customer, and you waive all defenses and notice of those changes and you will remain irrevocably responsible for the payment and obligations of the Agreement. We do not have to notify you if the Customer is in default. If the Customer defaults, you will immediately pay all sums due and will perform all the obligations under the terms of the Agreement. It is not necessary for us to proceed first against the Customer or any collateral before enforcing this Guaranty. Your obligations will not be subject to any abatement, setoff, defense or counterclaim for any reason. You certify that the financial information you have given us is true, complete and accurate in all material respects. Within thirty (30) days of our request, you will deliver to us all requested information in order for us to determine your current financial condition. You warrant that you are authorized by law and by your formation documents to execute this Guaranty, and the officer, manager or partner signing the same warrants that he/she is authorized to so sign. Without our prior written consent, you will not transfer or allow your owners to transfer your obligations under this Guaranty or all or substantially all your assets or ownership interests to any person or entity. This Guaranty shall be binding upon and inure to the benefit of the parties' successors and assigns. We may assign this Guaranty without notice to you. You expressly consent to the laws and jurisdiction of the courts in Minnesota and agree to pay all costs, including attorneys' fees (including any before or at trial, on any appeal and in any other proceeding), incurred in any dispute regarding or enforcement of this Guaranty and the Agreement.

USA PATRIOT ACT NOTICE. IMPORTANT INFORMATION ABOUT PROCEDURES: To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. We will ask for each person in a financial transaction their name, address and other information that will allow us to identify such person. We may also ask to see other documents that substantiate a person's identity.

By providing us with a telephone number for a cellular phone or other wireless device, including a number that you later convert to a cellular number, you are expressly consenting to receiving communications, including but not limited to prerecorded or artificial voice message calls, text messages, and calls made by an automatic telephone dialing system, from us and our affiliates and agents at that number. This express consent applies to each such telephone number that you provide to us now or in the future and permits such calls for non-marketing purposes. Calls and messages may incur access fees from your cellular provider. A fax or scanned copy of this Guaranty with authorized signatures will be considered the original and will be binding on all parties for all purposes.

**YOU AND WE IRREVOCABLY WAIVE ALL RIGHTS TO A TRIAL BY JURY IN ANY LITIGATION RELATED TO THIS GUARANTY.**

This Guaranty is duly executed and delivered as of ___31 May___, 20 18 ✗

GUARANTOR: FIRST CHOICE HEALTHCARE SOLUTIONS INC
By: ✗ _Barry g 1600_
Print Name: _Phillip J. Keller_
Title: _CFO_

ADDRESSES FOR ALL NOTICES TO LESSOR/SECURED PARTY:
1310 Madrid Street
Marshall, MN 56258

NOTE: CAPITALIZED TERMS IN THIS DOCUMENT ARE DEFINED AS IN THE AGREEMENT, UNLESS SPECIFICALLY STATED OTHERWISE.
10585 REV 04/16



**SCHEDULE "A"**

**AGREEMENT #** ▮4051

**EQUIPMENT FINANCE**

This Schedule "A" is to be attached to and become part of Agreement # ▮4051 dated _____ by and between the undersigned as Customer and U.S. Bank Equipment Finance, a division of U.S. Bank National Association ("U.S. Bank Equipment Finance") as Lessor/Secured Party.

| SUPPLIER - EQUIPMENT DESCRIPTION | MODEL NO | SERIAL NO |
|---|---|---|
| SUPPLIER: FUJIFILM SONOSITE INC<br>21919 30TH DR SE<br>BOTHELL, WA 98021 | | |
| 1-XPORTE ULTRASOUND KIOSK SYSTEM AND STAND | | |
| 1-SONOSITE S II ULTRASOUND SYSTEM | | |
| 1-STEEP NEEDLE PROFILING TECH | | |
| 1-DICOM | | |
| 1-HFL50X/15-6MHZ TRANSDUCER BIOPSY COMP | | |
| 1-RC60XI/5-2 MHZ TRANSDUCER BIOPSY COMP | | |
| 1-SII STAND | | |
| 1-SONOSITE S II ULTRASOUND SYSTEM | | |
| 1-STEEP NEEDLE PROFILING TECHNOLOGY | | |
| 1-DICOM | | |
| 1-HFL50X/15-6 MHZ TRANSDUCER BIOPSY COMP | | |
| 1-RC60XI/5-2MHZ TRANSDUCER BIOPSY COMP | | |
| 1-SII STAND | | |
| 1-WIRELESS DATA MANAGEMENT | | |

together with all replacements, parts, repairs, additions, and accessions incorporated therein or attached thereto and any and all proceeds of the foregoing, including, without limitation, insurance recoveries.

**CUSTOMER ACCEPTANCE**

This Schedule "A" is hereby verified as correct by the undersigned Customer, who agrees to the terms hereof.

| FIRST CHOICE MEDICAL GROUP OF BREVARD LLC | X _Pamp & Koo_ | CFO | 5/31/18 |
|---|---|---|---|
| CUSTOMER | SIGNATURE | TITLE | DATED |

NOTE: SIGNER OF THIS DOCUMENT MUST BE SAME AS ON THE AGREEMENT. A FACSIMILE OF THIS DOCUMENT WITH SIGNATURE SHALL BE CONSIDERED TO BE AN ORIGINAL. CAPITALIZED TERMS IN THIS DOCUMENT ARE DEFINED AS IN THE AGREEMENT, UNLESS SPECIFICALLY STATED OTHERWISE.

SCHA REV10/11



**ACCEPTANCE CERTIFICATE
[AS IS - WHERE IS]
AGREEMENT #**

▇4051

EQUIPMENT FINANCE

This Acceptance Certificate is delivered to and for the benefit of Lessor/Secured Party and pertains to the below-described Equipment and/or Financed Items which are the subject of the above-referenced Agreement between U.S. Bank Equipment Finance, a division of U.S. Bank National Association as Lessor/Secured Party and the undersigned as Customer. The words you and your refer to Customer. The words we, us and our refer to Lessor/Secured Party.

You acknowledge and agree that although the Equipment and/or Financed Items have not been delivered and/or installed, you hereby accept such Equipment and/or Financed Items on an "AS-IS, WHERE-IS" basis for all purposes as of the date hereof. In the event you are not satisfied with the Equipment and/or Financed Items, you will only look to persons other than us, such as the manufacturer, installer, carrier or Supplier, and you will not assert against us any claim or defense you may have with reference to the Equipment and/or Financed Items, its delivery, non-delivery, installation, inadequacy or failure to operate satisfactorily.

Upon you signing below, your promises herein and in the Agreement will be non-cancelable, irrevocable and unconditional in all respects and your obligation to commence payments under the Agreement will begin immediately and shall be due continuously thereafter. In reliance on your promise to pay, we will pay for the purchase of the Equipment and/or Financed Items from Supplier, which you hereby authorize. You may contact Supplier for your warranty rights, which, if the Agreement is a lease, we transfer to you for the term of the Agreement (or until you default).

| Supplier: | Equipment and/or Financed Items Description |
|---|---|
| FUJIFILM SONOSITE INC | See Schedule A |
|  |  |
|  |  |
|  |  |
|  |  |

*together with all replacements, parts, repairs, additions, and accessions incorporated therein or attached thereto and any and all proceeds of the foregoing, including, without limitation, insurance recoveries.*

FIRST CHOICE MEDICAL GROUP OF BREVARD LLC
Customer

X _(signature)_
Signature

Title: CFO           Date: 5/31/18

NOTE: A FACSIMILE OF THIS DOCUMENT WITH SIGNATURE SHALL BE CONSIDERED TO BE AN ORIGINAL. CAPITALIZED TERMS IN THIS DOCUMENT ARE DEFINED AS IN THE AGREEMENT, UNLESS SPECIFICALLY STATED OTHERWISE.

10353 REV 10/15



**PAYMENT MODIFICATION AMENDMENT**
**(COVID-19)**

**EQUIPMENT FINANCE**

Payment Modification Amendment ("Amendment") to Agreement No(s). ███████ 8100-███ ("Agreement(s)"), between FIRST CHOICE MEDICAL GROUP OF BREVARD LLC, as Customer and U.S. Bank Equipment Finance, a division of U.S. Bank National Association ("U.S. Bank Equipment Finance"), as Lessor/Secured Party. The words "you" and "your" refer to Customer. The words "we," "us" and "our" refer to Lessor/Secured Party. The word "Payment" refers to the periodic base payment owed by you pursuant to the terms and conditions of each respective Agreement(s).

As a result of disruption caused to your business by the COVID-19 pandemic in the United States, you have requested that certain Payments due under the Agreement(s) be deferred for a period of three (3) months (the "Deferral Period") and that the term of the Agreement(s) be extended by three (3) months with such deferred Payments becoming due and payable successively after the current expiration of the Agreement(s) on the same due date(s) and in the same periodic manner as specified in the Agreement(s) until all Payments and amounts owed under the Agreement(s) have been paid in full. Accordingly, the parties have agreed as follows:

Effective 04/05/2020 (the "Deferral Effective Date"), all Payment(s) and charges owed pursuant to the Agreement(s) that become due and payable between the Deferral Effective Date and the date which is three (3) months following the Deferral Effective Date (the "Payment Resumption Date") shall be deferred for a period of three (3) months and shall become due and payable under the Agreement(s) after the last Payment due date currently scheduled under the respective Agreement(s) (the "Last Scheduled Due Date"). You acknowledge and agree that: (i) the deferred Payment(s) are not waived and shall become due and payable successively after the Last Scheduled Due Date on the same due date(s) and in the same periodic manner as specified in each respective Agreement until all deferred Payment(s) and amounts owed under the Agreement(s) shall be paid in full; and (ii) the deferral of such Payment(s) and charges shall result in an extension of the term of the Agreement(s) by three (3) months (the "Term Extension"). Additional charges including but not limited to, property tax, sales tax, late fees, collection fees and legal fees, shall be billed as they arise. Such continuation and Term Extension shall be effective for all intents and purposes (including, without limitation, in the case of a lease, for purposes of exercising any purchase option provision in regard to any leased Equipment). If the Agreement(s) include any prepayment or early purchase option, you acknowledge and agree that the amount payable by you upon exercise of such option may be recalculated by us to reflect the Term Extension and modification of Payments granted herein.

If the Payments under the Agreement(s) include amounts owing pursuant to a separate maintenance and supplies agreement (the "Arrangement") and you will use the Equipment and require maintenance and supplies during the Deferral Period, please discuss with the named supplier under the Arrangement ("Supplier") an appropriate solution with respect to maintenance and supplies during the Deferral Period (in which case, amounts payable for maintenance and supplies during the Deferral Period will be billed by Supplier). Regardless of whether you continue to receive some or all of the maintenance and supplies during the Deferral Period, the Payment deferral granted herein shall result in the Term Extension applying to both the Agreement and the Arrangement.

By signing this Amendment, Customer acknowledges and agrees to the above changes to the Agreement(s). In the event of any conflict between this Amendment and the Agreement(s), this Amendment shall prevail. In all other respects, the terms and conditions of the Agreement(s) remain in full force and effect and remain binding on Customer. The parties agree that: this Amendment may be authenticated by electronic means. You agree not to raise as a defense to the enforcement of this Amendment that you or we executed or authenticated such document by electronic or digital means or that you used facsimile or other electronic means to transmit your signature on such document. Notwithstanding anything to the contrary herein, we reserve the right to require you to manually sign this Amendment.

| U.S. Bank Equipment Finance | FIRST CHOICE MEDICAL GROUP OF BREVARD LLC |
|---|---|
| Lessor/Secured Party | Customer |
| Signature: *Chris Bartley* | X Signature: *Philip J Koller* |
| Title: *Leasing Coordinator*   Date: 05/06/2020 | Title: *President & CEO*   Date: 05/05/20 |

NOTE: CAPITALIZED TERMS IN THIS DOCUMENT ARE DEFINED AS IN THE AGREEMENT, UNLESS SPECIFICALLY STATED OTHERWISE.

A569 REV 04/20

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
LIEN SOLUTIONS 800-331-3282

B. E-MAIL CONTACT AT FILER (optional)
UCCFILINGRETURN@WOLTERSKLUWER.COM

C. SEND ACKNOWLEDGMENT TO: (Name and Address)
P.O. BOX 29071
GLENDALE, CA 91209-9071
US

Delaware Department of State
U.C.C. Filing Section
Filed: 03:32 PM 05/31/2018
U.C.C. Initial Filing No: 2018 3701030

Service Request No: 20184747192

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME

1a. ORGANIZATION'S NAME: FIRST CHOICE MEDICAL GROUP OF BREVARD, LLC

1c. MAILING ADDRESS: 709 S HARBOR CITY BLVD | CITY: MELBOURNE | STATE: FL | POSTAL CODE: 32901 | COUNTRY: US

2. DEBTOR'S NAME

3. SECURED PARTY'S NAME

3a. ORGANIZATION'S NAME: U.S. BANK EQUIPMENT FINANCE, A DIVISION OF U.S. BANK NATIONAL ASSOCIATION

3c. MAILING ADDRESS: 1310 MADRID STREET | CITY: MARSHALL | STATE: MN | POSTAL CODE: 56258 | COUNTRY: US

4. COLLATERAL:
1-XPORTE ULTRASOUND KIOSK SYSTEM AND STAND 1-SONOSITE S II ULTRASOUND SYSTEM 1-STEEP NEEDLE PROFILING TECH 1-DICOM 1-HFL50X/15-6MHZ TRANSDUCER BIOPSY COMP 1-RC60XI/5-2 MHZ TRANSDUCER BIOPSY COMP 1-SII STAND 1-SONOSITE S II ULTRASOUND SYSTEM 1-STEEP NEEDLE PROFILING TECHNOLOGY 1-DICOM 1-HFL50X/15-6 MHZ TRANSDUCER BIOPSY COMP 1-RC60XI/5-2MHZ TRANSDUCER BIOPSY COMP 1-SII STAND 1-WIRELESS DATA MANAGEMENT TOGETHER WITH ALL REPLACEMENTS, PARTS, REPAIRS, ADDITIONS, ACCESSIONS AND ACCESSORIES INCORPORATED THEREIN OR AFFIXED OR ATTACHED THERETO AND ANY AND ALL PROCEEDS OF THE FOREGOING, INCLUDING, WITHOUT LIMITATION, INSURANCE RECOVERIES.

8. OPTIONAL FILER REFERENCE DATA:
669

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Exhibit "B"